1  CLARK S. STONE (SBN 202123)
   STEVEN M. LEVITAN (SBN 148716)
2  INCHAN A. KWON (SBN 247614)
   **MacPHERSON KWOK CHEN & HEID LLP**
3  2033 Gateway Place, Suite 400
   San Jose, California 95110
4  Phone:  (408) 392-9250
   Facsimile: (408) 392-9262
5  email:
   cstone@macpherson-kwok.com
6  slevitan@macpherson-kwok.com
   ikwon@macpherson-kwok.com
7
8  EDWARD J. MCINTYRE (SBN 80402)
   WILLIAM N. KAMMER (SBN 53848)
9  **SOLOMON WARD SEIDENWURM & SMITH, LLP**
   401 B Street, Suite 1200
10 San Diego, California 92101
   Phone: (619) 231-0303
11 Facsimile: (619) 231-4755
   email:
12 emcintyre@swsslaw.com
   wkammer@swsslaw.com
13
   Attorneys for Plaintiff
14 LANDMARK SCREENS, LLC

15

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18                       SAN JOSE DIVISION

19

20 LANDMARK SCREENS, LLC, a Delaware      Case No: 5:08-cv-2581 HRL
   Limited Liability Company,
21                                        **FIRST AMENDED COMPLAINT
                    Plaintiff,            FOR LEGAL MALPRACTICE,
22                                        NEGLIGENCE, BREACH OF
          v.                              FIDUCIARY DUTY, BREACH OF
23                                        CONTRACT, AND FRAUD**

24 MORGAN, LEWIS & BOCKIUS LLP, a limited  **DEMAND FOR JURY TRIAL**
   liability partnership and THOMAS D. KOHLER,
25 an individual,

                    Defendants.
26

27

28

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,     1
BREACH OF CONTRACT, AND FRAUD—Case No. 5:08-cv-2581 HRL

For its First Amended Complaint, Plaintiff Landmark Screens, LLC alleges as follows:

## THE PARTIES

1.    Plaintiff LANDMARK SCREENS, LLC ("Plaintiff" or "Landmark") is a Delaware limited liability company with its principal place of business at 1068 East Meadow Circle, Palo Alto, Santa Clara County, California, 94303.

2.    Landmark is informed and believes, and thereon alleges, that Defendant MORGAN, LEWIS & BOCKIUS LLP ("Morgan Lewis") is a limited liability partnership with law offices throughout the United States and California, including offices at 2 Palo Alto Square, 3000 El Camino Real, Suite 700, Palo Alto, Santa Clara County, California, 94306. Morgan Lewis is organized and existing under the laws of the State of Pennsylvania and lists its principal executive office at 1701 Market Street, Philadelphia, Pennsylvania, 19103. At all times alleged herein, Morgan Lewis held itself out as having specialized knowledge and skill in patent prosecution and filing.

3.    Landmark is informed and believes, and thereon alleges, that Defendant THOMAS D. KOHLER ("Kohler") is an individual currently practicing law as a partner of Defendant Morgan Lewis at One Market, Spear Street Tower, San Francisco, California, 94105. Landmark is further informed and believes, and thereon alleges, that, during a substantial portion of the times alleged herein, Kohler was a partner of the law firm of Pennie & Edmonds LLP and engaged in the practice of law at Pennie & Edmond's offices located at 3300 Hillview Avenue in Palo Alto, Santa Clara County, California and also practiced law for Morgan Lewis in Palo Alto, Santa Clara County, California during at least a portion of 2004. At all times alleged herein, Kohler held himself out as having specialized knowledge and skill in patent prosecution and filing.

## JURISDICTION

4.    This is an action for legal malpractice, negligence, breach of fiduciary duty, breach of implied-in-fact contract, and fraud in connection with legal services provided in an effort to procure a United States patent. This Court has jurisdiction pursuant to 28 U.S.C. §§

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND FRAUD—Case No. 5:08-cv-2581 HRL

2

1331 and 1338, in that Landmark's claims arise under federal patent law and require resolution by this Court of a substantial contested question of federal patent law.

**VENUE**

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that both defendants Morgan Lewis and Kohler reside in this judicial district and a substantial part of the events or omissions giving rise to Landmark's claims occurred in this district.

**INTRADISTRICT ASSIGNMENT**

6.    Pursuant to Civil L.R. 3-2(c), assignment of this case to the San Jose Division is proper because this action arises in Santa Clara County, California, and a substantial part of the errors or omissions which give rise to Landmark's claims occurred in Santa Clara County, California.

**FACTS COMMON TO ALL CAUSES OF ACTION**

7.    Since 2000, Landmark has been in the business of conducting pioneering development and implementation of a two-sided, electronically-controlled, outdoor light emitting diode ("LED") display, or electronic billboard.

8.    Landmark's revolutionary electronic billboard consists of a high-resolution LED display screen, measuring 34 feet wide and 19 feet high, and associated proprietary control systems and software, including "smart" technology for automatically adjusting for all lighting conditions, maximizing clarity and visibility.  With its capability to display 36,600 discernibly different colors in a single image, Landmark's electronic billboard can display extremely high quality images and graphics, at color ranges and contrasts that exceed high definition television ("HDTV") quality and brilliance.

9.    Landmark's revolutionary electronic billboard has been in operation along U.S. Highway 101 in San Carlos, California since December, 2000.  Mounted 40 feet above the ground, Landmark's electronic billboard is visible to both directions of traffic at distances between one-half to two-thirds of a mile, and is seen by an estimated seven million viewers per month.  Companies placing advertisements on Landmark's electronic billboard include Sun Microsystems, Intel, Disney, and United Airlines.

10.   Landmark's electronic billboard is a pioneering invention that is revolutionizing the outdoor advertising industry.  Its large size and high quality images, combined with the ability to display different images up to ten times per minute, make it a highly noticed and effective method for display advertising as compared to traditional static print billboards.  A Harris Interactive study concluded that Landmark's electronic billboard was six times more effective as an advertising medium than conventional static billboards, with the majority of the survey respondents stating that they noticed Landmark's electronic bulletin board every time they drive by.

11.   In addition to its high-quality and effective LED display, Landmark's electronic billboard provides significant advantages for advertisers over traditional static print billboards.  Content for the electronic billboard is provided by advertisers in digital format, thus significantly reducing time-to-market and eliminating the printing, shipping, and additional production costs associated with conventional billboards.  Additionally, Landmark's unique online management of the electronic billboard content allows for fast changes of advertising materials based on changing business conditions, as well as providing the means for multiple advertisers to share the same advertising space, or for a single advertiser to place multiple images, each with varying display times, on the highly visible LED screen.

12.   The use of high-definition electronic displays in place of conventional static print billboards is projected to capture a significant portion of the future spending in the outdoor advertising market, a market currently estimated at greater than $5.5 billion.  In order to compete in this lucrative and rapidly-developing marketplace, Landmark took steps to procure both United States and international patent protection on the unique and valuable aspects of Landmark's pioneering electronic billboard, as to allow Landmark to become a key player in the development, sales, and marketing of electronic billboards and related advertising and services.

13.   In connection with patenting its pioneering development work, on or about November 17, 2000 at Palo Alto, Santa Clara County, California, Landmark retained and employed the law firm of Pennie & Edmonds LLP and Kohler to represent Landmark as

Landmark's attorneys at law in connection with all appropriate patent and intellectual property filings worldwide in order to patent Landmark's inventions conceived in connection with development of the electronic billboard.  At such time and place, Pennie & Edmonds and Kohler accepted such employment and agreed to perform such services for Landmark.

14.   As patent counsel to Landmark, Pennie & Edmonds and Kohler owed Landmark duties of care commensurate with the specialized standards of legal practice within this area.  In the course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed trust and confidence on Pennie & Edmonds and Kohler.  Pennie & Edmonds and Kohler accepted and acknowledged this fiduciary responsibility to Landmark regarding these matters.

15.   Landmark is informed and believes and thereon alleges that in connection with this representation, on or about January 9, 2002, Pennie & Edmonds and Kohler filed a patent application with the United States Patent and Trademark Office ("PTO") on Landmark's pioneering electronic billboard, said application including 72 claims directed to different aspects of Landmark's invention.  This application was assigned Application No. 10/045,096 ("the '096 application"), and has since issued as U.S. Patent No. 6,639,574 ("the '574 patent").

16.   Landmark is informed and believes and thereon alleges that, on or about May 6, 2003, in response to a restriction requirement by the PTO, Pennie & Edmonds and Kohler elected to pursue claims 26-31 and 56-72 covering Landmark's invention in the '096 application, and cancelled the remaining claims, with patent protection on the remaining claims to be obtained through a "divisional application" claiming the same filing date as the '096 application.

17.   On July 10, 2003, the PTO published the '096 application in full.  Landmark is informed and believes and thereon alleges that at all relevant times Pennie & Edmonds, Morgan Lewis and Kohler were aware of this fact.

18.   Landmark is informed and believes and thereon alleges that, on or about August 13, 2003, Pennie & Edmonds and Kohler filed a divisional application with the PTO on Landmark's invention, including in this divisional application those novel and valuable claims covering Landmark's invention that had earlier been cancelled in response to the PTO's

restriction requirement on the '096 application. This application was assigned Application No. 10/640,916 ("the '916 divisional application").

19. Landmark is informed and believes and thereon alleges that, Pennie & Edmonds and Kohler failed to properly and with due care submit to the PTO the '916 divisional application, which included those claims covering novel and valuable aspects of Landmark's invention, by at least the following negligent errors and/or omissions: (a) failing to include a copy of the specification and drawings with the '916 divisional application, as required by the PTO, thus rendering Landmark's divisional application incomplete; (b) submitting an obsolete and out of date transmittal letter with the '916 divisional application that failed to contain an incorporation by reference statement concerning the specifications and drawings filed with the '096 application, thus rendering Landmark's divisional application incomplete; and (c) failing to utilize a "postcard receipt," method by which the PTO could have notified Pennie & Edmonds, Morgan Lewis, and Kohler in a timely manner of the missing portions of the '916 divisional application.

20. On or about October 28, 2003, the earlier-filed '096 application was issued as the '574 patent by the PTO.

21. Landmark is informed and believes and thereon alleges that, on or about January 1, 2004, the Pennie & Edmonds partnership entered dissolution and Kohler ceased practicing law as a partner of Pennie & Edmonds and joined the law firm of Morgan Lewis, working out of Pennie's offices in Palo Alto, California for at least a portion of 2004.

22. Landmark is informed and believes and thereon alleges that, on or about April 13, 2004, Landmark executed a Revocation and Power of Attorney with the PTO  appointing Morgan Lewis as Landmark's attorney in connection with the '574 patent and the '916 divisional application, resulting in the creation of an attorney-client relationship between Landmark and Morgan Lewis, and continuing Landmark's attorney-client relationship with Kohler, to represent Landmark as Landmark's attorneys at law in connection with all appropriate patent and intellectual property filings worldwide in order to patent any and all inventions conceived in connection with development of Landmark's electronic billboard. At

1  such time and place, Morgan Lewis and Kohler accepted such employment and agreed to
2  perform such services for Landmark.

3      23.    As patent counsel to Landmark, Morgan Lewis and Kohler owed Landmark duties
4  of care commensurate with the specialized standards of legal practice within this area.  In the
5  course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed
6  trust and confidence on Morgan Lewis and Kohler.  Morgan Lewis and Kohler accepted and
7  acknowledged this fiduciary responsibility to Landmark regarding these matters.

8      24.    Landmark is informed and believes and thereon alleges that, on or about June 22,
9  2004, by letter addressed to Pennie & Edmonds at their business address in Palo Alto,
10  California, the PTO notified Pennie & Edmonds, Morgan Lewis, and Kohler of the incomplete
11  nature of the August 13, 2003 '916 divisional application that Pennie & Edmonds and Kohler
12  had submitted to the PTO.

13      25.    Commencing on or about June 22, 2004, at least Morgan Lewis partners Kohler
14  and Michael J. Lyons ("Lyons") were aware of Kohler's malpractice in connection with the
15  August 13, 2003 filing of Landmark's '916 divisional application and the June 22, 2004 notice
16  from the PTO, yet each failed to promptly and fully inform their current client, Landmark, of
17  this significant and material development affecting Landmark's valuable patent rights as
18  required by at least their duty to keep the client informed and duty of loyalty to a client,
19  resulting in further harm to Landmark.

20      26.    Landmark is informed and believes and thereon alleges that, in violation of the
21  duties of care commensurate with the specialized standards of legal practice within the patent
22  prosecution area, the fiduciary duty to keep the client informed, and their duty of loyalty to a
23  client, Morgan Lewis and Kohler intentionally failed to disclose to Landmark this significant
24  and material development affecting Landmark's valuable patent rights, and instead
25  intentionally and actively embarked on a deceptive course of action by which Morgan Lewis
26  and Kohler, and each of them, actively concealed from Landmark the nature of Pennie &
27  Edmonds' and Kohler's negligent actions in connection with the August 13, 2003 filing of the
28  '916 divisional application.

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,      7
BREACH OF CONTRACT, AND FRAUD—Case No. 5:08-cv-2581 HRL

27.   Up until June 22, 2004, in connection with patent prosecution work for Landmark, Kohler sent copies of all correspondence to and from the PTO to Landmark concerning the '096 application and the '916 divisional application.

28.   However, upon receipt of the June 22, 2004 notice from the PTO concerning the improper filing of the '916 divisional application, in violation of at least the duty of loyalty and duty to keep the client informed of material matters and/or communications from the PTO concerning the representation, as required by both the California and PTO rules of attorney conduct, and in an effort to conceal Kohler's malpractice from Landmark, Kohler and Morgan Lewis ceased sending copies of documents received from, and sent to, the PTO that would have alerted Landmark to the malpractice committed in connection with the filing of the '916 divisional application and Kohler's and Morgan Lewis' subsequent actions.

29.   Landmark is informed and believes and thereon alleges that Morgan Lewis' and Kohler's concealment of the incomplete nature of the '916 divisional application was intended, among other things, to conceal Kohler's malpractice in connection with the improper filing of the '916 divisional application from Landmark.

30.   Morgan Lewis' and Kohler's failure to promptly and fully notify Landmark of the incomplete nature of the '916 divisional application deprived Landmark of the opportunity to take steps that would have prevented the loss of Landmark's valuable and pioneering patent rights.

31.   Landmark is informed and believes and thereon alleges that, in furtherance of their active efforts to conceal from Landmark the negligent actions in connection with August 13, 2003 filing of the'916 divisional application, without Landmark's knowledge or consent and in further violation of their fiduciary duty to keep Landmark informed, on or about August 23, 2004, Morgan Lewis and Kohler filed with the PTO a "Petition to Grant a Filing Date Pursuant to 37 C.F.R. §'s 1.183 and/or 1.53(e)" ("Petition"), by which Morgan Lewis and Kohler attempted to convince the PTO to grant the '916 divisional application the earlier filing date of the '096 application.

32.     Landmark is informed and believes and thereon alleges that, on or about November 30, 2004, the PTO dismissed the Petition, stating unequivocally that the relief requested in the Petition was not warranted due to a "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice."  Citing 35 U.S.C. § 111, the PTO accorded the '916 divisional application a filing date of August 26, 2004, the day Morgan Lewis and Kohler submitted the missing portions of the '916 divisional application to the PTO.

33.     Landmark is informed and believes and thereon alleges that, on or about December 6, 2004, Morgan Lewis and Kohler were informed of the PTO's decision dismissing the Petition.

34.     The concealment of Pennie's and Kohler's improper and incomplete filing of the '916 divisional application by Morgan Lewis and Kohler resulted in the loss of "continuity," as the later-filed '916 divisional application consequently could not claim the January 9, 2002 filing date for the '096 application and was not deemed "filed" prior to issuance of the '574 patent.  Thus, to the extent any of the subject matter claimed in the '916 divisional application was in public use, sold or offered for sale, or disclosed in a printed publication greater than one year prior to the filing date of the '916 divisional application, including disclosure by the '096 application, Landmark could now not obtain patent protection on such novel and valuable subject matter.

35.     On March 29, 2005, in further violation of their fiduciary duty to keep Landmark informed, their duty of loyalty to Landmark, and in furtherance of their efforts to deceive and/or defraud Landmark as to the nature and consequences of the malpractice committed in connection with the '916 divisional application, Morgan Lewis and Kohler sent a letter to Michael Wilson of Landmark concerning the '916 divisional application, a letter that Wilson had requested Morgan Lewis and Kohler provide in December, 2004.

36.     Morgan Lewis and Kohler's March 29, 2005 letter to Michael Wilson of Landmark contained a number of false and deceptive statements, including, but not necessarily limited to:

a. "[T]he ['916 divisional] application was not accorded its original filing date because of a clerical error in filing this divisional application while the matter was still being handled at Pennie & Edmonds. . . . [I]n filing the ['916] divisional application a clerical error was made in not including with the application all of the necessary papers." These statements were false and deceptive because the PTO stated in its November 30, 2004 Decision dismissing Morgan Lewis and Kohler's Petition that attorney errors, not a clerical error, caused the PTO not to accord the '916 divisional application its original filing date. Specifically, the PTO concluded that the '916 divisional application's loss of its filing date resulted from Kohler's "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice" in using an out-of-date transmittal letter that did not contain an incorporation by reference statement, failing to utilize post-card receipt, and failing to file a specification or drawings.

b. "While we do not know for certain, there is the potential that it may not be possible to obtain some or all of the claims in this ['916 divisional] application in view of your own prior use of the screen embodying at least parts of the invention." This statement was false and deceptive because Morgan Lewis and Kohler knew prior to March 29, 2005, and as early as August 2004 based on research conducted prior to filing the Petition, that it was not possible to obtain the claims in the '916 divisional application lost due to Kohler's malpractice. Landmark is informed and believes and thereon alleges that this statement was further false because Kohler and Morgan Lewis "kn[e]w for certain" that as of March 29, 2005 it was not possible to obtain the claims in the '916 divisional application lost due to Kohler's malpractice.

c. "[B]ecause of the long period of time taken by the Patent Office in acting on the ['916 divisional] application, there was not an opportunity to correct the

filing [of the '916 divisional application]."  This statement was false and deceptive because "the long period of time taken by the Patent Office in acting on the ['916 divisional] application" did not deprive Kohler, Pennie, or Morgan Lewis of "an opportunity to correct the filing."  As the PTO stated in denying the Petition, an applicant (through his counsel) "must be 'vigilant and active' in complying with the conditions for obtaining a patent."  Landmark is informed and believes and thereon alleges that Kohler and Morgan Lewis could have taken steps before or after receiving the notice from the PTO or filing the August 23, 2004 Petition that would have effectively corrected the filing of the '916 divisional application.

    d.   "[I]t is [sic] still may be possible to obtain claims to subject matter that was not used or otherwise disclosed prior to that one year period, i.e [sic], prior to August 23, 2003.  Given that there was a wide variety of subject matter claimed in the ['916] divisional application, it may still be possible to obtain some of those claims."  These statements were false and deceptive because Kohler and Morgan Lewis were aware prior to March 29, 2005, based on research conducted prior to the August 23, 2004 filing of the Petition that it was not possible to obtain any claims of the '916 divisional application because this divisional application was not accorded a filing date prior to the issuance of the '574 patent.

37.   Landmark is informed and believes and thereon alleges that at all relevant times Kohler and Morgan Lewis knew these statements were false and deceptive.

38.   Landmark is informed and believes and thereon alleges that the false and/or deceptive statements in Morgan Lewis' and Kohler's March 29, 2005 letter to Landmark were intended to continue to conceal from Landmark Kohler's malpractice in connection with the improper filing of the '916 divisional application.

39.   In reasonable reliance on Kohler's and Morgan Lewis' false and/or deceptive statements in their March 29, 2005 letter to Landmark, Landmark continued to be deceived

1  about Kohler's malpractice in connection with the improper filing of the '916 divisional
2  application.

3      40.   In or around May 2005, Michael Wilson of Landmark met in person with Kohler
4  at Landmark's offices in Palo Alto, California.  At this meeting, Kohler stated to Wilson that a
5  senior partner at Morgan Lewis was doing everything possible to rectify the situation.  This
6  statement was false and/or misleading because Kohler knew at that time that no "senior partner
7  at Morgan Lewis" was taking any action to correct Kohler's malpractice in connection with the
8  filing of Landmark's '916 divisional application.  Landmark is informed and believes and
9  thereon alleges that Kohler knew this statement was false and/or misleading.  Landmark is
10  informed and believes and thereon alleges that this false statement was intended to continue to
11  conceal from Landmark Kohler's malpractice in connection with the improper filing of the '916
12  divisional application.

13      41.   In reasonable reliance on Kohler's false and/or misleading statement in the May
14  2005 meeting, Landmark continued to be deceived about Kohler's malpractice in connection
15  with the improper filing of the '916 divisional application.

16      42.   In or around late summer or fall 2005, Landmark discovered the effects of Morgan
17  Lewis' and Kohler's concealment of the June 22, 2004 notice from the PTO, the falsity and/or
18  deceptiveness of statements in the March 29, 2005 letter from Morgan Lewis and Kohler to
19  Landmark, and the falsity and/or deceptiveness of statements made by Kohler to Wilson in or
20  around May 2005.  Prior to in or around late summer or fall 2005, given Morgan Lewis' and
21  Kohler's continued assurances, Landmark's reposing of trust and confidence in Morgan Lewis
22  and Kohler, and Landmark's lack of knowledge of patent law, Landmark could not have
23  discovered through reasonable diligence the effects of Morgan Lewis' and Kohler's
24  concealment of the June 22, 2004 notice from the PTO, the falsity and/or deceptiveness of
25  statements in the March 29, 2005 letter from Morgan Lewis and Kohler to Landmark, and the
26  falsity and/or deceptiveness of statements made by Kohler to Wilson in or around May 2005.

27      43.   Until on or about November 2, 2005, Morgan Lewis and Kohler continued to
28  represent Landmark as Landmark's attorney at law in connection with the invention and all

1  appropriate patent and intellectual property filings worldwide in order to patent, protect and

2  encourage licensing of Landmark's unique and pioneering intellectual property and technology

3  concerning the electronic billboard.

4      44.  On or about November 30, 2005, Landmark filed suit against Pennie & Edmonds,

5  Morgan Lewis, and Kohler in Santa Clara County Superior Court, Case No. 1-05-CV-053568,

6  alleging legal malpractice and related claims in connection with the '096 application and the

7  '916 divisional application.

8      45.  Since at least May 31, 2006, Landmark has been unable to pursue its claims

9  against Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner in the Superior

10 Court due to Morgan Lewis' refusal to respond to written discovery.  Morgan Lewis' refusal

11 was based on a Motion to Stay filed by Morgan Lewis, Pennie, and Kohler in the Superior

12 Court.

13     46.  On or about September 26, 2006, pursuant to the terms of the Legal Services

14 Agreement entered into between Landmark and Pennie, the Santa Clara County Superior Court

15 ordered arbitration as to Landmark's claims against Pennie and Landmark's claims against

16 Kohler arising out of Pennie's representation of Kohler.  The Superior Court did not order

17 arbitration as to Landmark's claims against Morgan Lewis or Landmark's claims against

18 Kohler arising out of Morgan Lewis' representation of Landmark.

19     47.  The Superior Court's September 26, 2006 order stayed Landmark's case against

20 Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner in its entirety pending the

21 outcome of the arbitration proceeding between Landmark and Pennie, thus further preventing

22 Landmark from pursuing its claims against Morgan Lewis and Kohler in his capacity as a

23 Morgan Lewis partner.

24     48.  Landmark's claims against Pennie & Edmonds and Kohler in his capacity as a

25 Pennie partner were the subject of a AAA arbitration proceeding that concluded in March, 2008

26 with a settlement between the parties.  Morgan Lewis was not a party to the AAA arbitration

27 proceeding.

28

49.    In connection with settlement of the AAA arbitration, Landmark provided a full release to Pennie.  However, Landmark's release of Kohler in the AAA arbitration was limited only to Kohler's actions and omissions while a partner at Pennie, and Landmark explicitly reserved its rights to pursue any and all claims arising as a result of conduct after January 1, 2004 against Morgan Lewis and Kohler.

50.    Since at least April 2, 2008, Landmark has been further prevented from pursuing its claims against Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner in the Superior Court due to Morgan Lewis' and Kohler's refusal to respond to written discovery and deposition notices.  Morgan Lewis' and Kohler's refusal was based on their filing a demurrer to Landmark's First Amended Complaint in the Superior Court.

51.    On or about May 20, 2008, the Santa Clara County Superior Court sustained Morgan Lewis' and Kohler's demurrer to Landmark's First Amended Complaint.  The court found it lacked subject matter jurisdiction because Landmark's claims required resolution of a substantial question of federal patent law under two October 15, 2007 decisions from the U.S. Court of Appeals for the Federal Circuit, *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld*, 504 F.3d 1262 (Fed. Cir. 2007) and *Immunocept, LLC v. Fulbright & Jaworski*, LLP, 504 F.3d 1281 (Fed. Cir. 2007).

## **FIRST CAUSE OF ACTION**

### **Legal Malpractice - Against All Defendants**

52.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1- 51 above.

53.    At all times alleged above, Morgan Lewis and Kohler (hereafter, "Defendants"), and each of them, failed to exercise reasonable care, skill and diligence in performing legal services for Landmark, and were negligent.

54.    Defendants' wrongful actions in failing to promptly and fully inform Landmark of Pennie and Kohler's incomplete filing of the '916 divisional application and the failure to take proper steps to correct, or to at least minimize, the harm to Landmark caused by the incomplete filing of the '916 divisional application, the intentional concealment of, and the failure to fully

and properly inform Landmark as to the status of, the '916 divisional application and Defendants' Petition to the PTO resulted in the loss of valuable and pioneering patent rights and has damaged Landmark.

55.   Landmark is informed and believes and thereon alleges that, had Defendants exercised proper care, skill and diligence in the foregoing matter, Landmark's valuable and pioneering divisional patent for the electronic billboard would have been afforded the benefit of the filing date of the application for the '574 patent, thus preserving and providing to Landmark valuable patent rights to the invention.

56.   As a proximate result of Defendants' negligence described herein, Landmark has been damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Negligence - Against All Defendants**

57.   Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-56 above.

58.   As Landmark's patent counsel, Defendants, and each of them, had a duty to exercise reasonable skill in performing legal and other patent-related services for Defendants.

59.   In breach of this duty, Defendants, and each of them, failed to take proper steps to correct, or to at least minimize, the harm to Landmark caused by the incomplete filing of the '916 divisional application, and failed to fully and properly inform Landmark as to the status of the '916 divisional application and Defendants' Petition to the PTO, resulting in the loss of valuable and pioneering patent rights and has damaged Landmark.

60.   As a proximate result of Defendants' negligence described herein, Landmark has been damaged in an amount to be proven at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty - Against All Defendants**

61.   Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-60 above.

62.   An attorney-client relationship is a fiduciary relationship of the very highest character.

63.   The scope of an attorney's fiduciary duties to a client are determined as a matter of law based on the California Rules of Professional Conduct together with other statutes and general principles relating to other fiduciary relationships.   As a fiduciary, an attorney's obligations include the duty of care, the duty of loyalty, and the duty to keep the client informed.

64.   By virtue of the attorney-client relationship that existed between Defendants and Landmark, Defendants, and each of them, owed to Landmark a fiduciary duty.

65.   By virtue of Landmark having placed confidence and trust in the fidelity and integrity of Defendants, and entrusting Defendants with the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent the invention and protect and make possible licensing of the invention, a confidential relationship existed at all relevant times herein mentioned between one or more of Defendants and Landmark.

66.   In spite of having voluntarily accepted the trust and confidence of Landmark with regard to the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent the invention and thus to protect and encourage licensing of the invention, Defendants, and each of them, violated and abused the trust and confidence of Landmark by failing to properly and diligently perform legal services for Landmark and by intentionally concealing and failing to fully and properly inform Landmark of the status of the '916 divisional application and Defendants' Petition to the PTO.

67.   The above-described actions by Defendants, and each of them, were contrary to the best interests of Landmark, and were done in the absence of good faith with a reckless

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,    16
BREACH OF CONTRACT, AND FRAUD—Case No. 5:08-cv-2581 HRL

disregard for Defendants' fiduciary duties and Landmark's rights and with intent to defraud, under circumstances Defendants knew would damage Landmark.

68.    As a proximate result of the acts of Defendants described herein, Landmark has been damaged in an amount to be proven at trial.

69.    The above-described actions by Defendants, and each of them, were done with bad faith, malice, fraud and oppression and with reckless disregard of the likelihood that the harm would result in substantial damages to Landmark.    Accordingly, Landmark seeks an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract - Against Morgan, Lewis & Bockius LLP

70.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-69 above.

71.    Since at least as early as April 13, 2004, an implied-in-fact contract existed between Morgan Lewis and Landmark.    Pursuant to this contract, Morgan Lewis agreed to provide legal services to Landmark in connection with the patenting of Landmark's digital billboard invention.

72.    Morgan Lewis failed to timely, properly, and with due care render legal services to Landmark, in breach of its contract with Landmark.

73.    As a proximate result of the acts of Morgan Lewis described herein, Landmark has been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Fraud - Against All Defendants

74.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-73 above.

75.    Defendants concealed from Landmark the June 22, 2004 notice from the PTO.

76.    The June 22, 2004 notice from the PTO was material to Landmark's patent rights.

77.    Defendants' statements in their March 29, 2005 letter to Michael Wilson of Landmark that "the ['916 divisional] application was not accorded its original filing date

because of a clerical error in filing this divisional application while the matter was still being handled at Pennie & Edmonds" and that "in filing the ['916] divisional application a clerical error was made in not including with the application all of the necessary papers" were affirmative misrepresentations of fact material to Landmark's patent rights.  At the time of making these statements, Defendants knew that these statements were false and deceptive.

78.   Defendants' statement in their March 29, 2005 letter to Michael Wilson of Landmark that "[w]hile we do not know for certain, there is the potential that it may not be possible to obtain some or all of the claims in this ['916 divisional] application in view of your own prior use of the screen embodying at least parts of the invention" was an affirmative misrepresentation of fact material to Landmark's patent rights.  At the time of making this statement, Defendants knew that this statement was false and deceptive.

79.   Defendants' statement in their March 29, 2005 letter to Michael Wilson of Landmark that "because of the long period of time taken by the Patent Office in acting on the ['916 divisional] application, there was not an opportunity to correct the filing [of the '916 divisional application]" was an affirmative misrepresentation of fact material to Landmark's patent rights.  At the time of making this statement, Defendants knew that this statement was false and deceptive.

80.   Defendants' statements in their March 29, 2005 letter to Michael Wilson of Landmark that "it is [sic] still may be possible to obtain claims to subject matter that was not used or otherwise disclosed prior to that one year period, i.e [sic], prior to August 23, 2003" and that "[g]iven that there was a wide variety of subject matter claimed in the ['916] divisional application, it may still be possible to obtain some of those claims" were affirmative misrepresentations of fact material to Landmark's patent rights.  At the time of making these statements, Defendants knew that these statements were false and deceptive.

81.   Kohler's statement to Michael Wilson of Landmark in the May 2005 meeting that a senior partner at Morgan Lewis was doing everything possible to rectify the situation was an affirmative misrepresentation of fact material to Landmark's patent rights.  At the time of making this statement, Kohler knew that this statement was false and deceptive.

82.   Defendants' concealment of the June 22, 2004 notice from the PTO, misrepresentations in their March 29, 2005 letter to Landmark, and misrepresentation made during Kohler's May 2005 meeting with Michael Wilson of Landmark were intended to induce reliance by Landmark.

83.   Defendants' concealment of the June 22, 2004 notice from the PTO, misrepresentations in their March 29, 2005 letter to Landmark, and misrepresentation made during Kohler's May 2005 meeting with Michael Wilson of Landmark were intended, among other things, to conceal Kohler's malpractice in connection with the improper filing of the '916 divisional application from Landmark.

84.   Landmark justifiably relied on Defendants' concealment and misrepresentations.

85.   As a proximate result of the acts of Defendants described herein, Landmark has been damaged in an amount to be proven at trial, and is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

   **WHEREFORE**, Plaintiff LANDMARK SCREENS, LLC ("Landmark") prays for the following relief:

A.   That Landmark be awarded its actual damages, in an amount to be proven at trial;

B.   That Landmark be awarded its incidental and consequential damages in an amount to be proven at trial;

C.   That Landmark be awarded such exemplary and punitive damages as allowed by law;

D.   That Landmark be awarded its costs;

///

1    E.    That Landmark be awarded pre-judgment and post-judgment interest at the

2  maximum legal rate; and

3    F.    That Landmark be granted other and further relief as this Court may deem proper.

4

5  Dated:  June 11, 2008                    MacPHERSON KWOK CHEN & HEID LLP

6

7                    By _____/s/ Clark S. Stone_____
                         CLARK S. STONE
                         Attorneys for Plaintiff
8                         LANDMARK SCREENS, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LANDMARK SCREENS, LLC hereby demands a trial by jury on all issues so triable in this action.

DATED:  June 11, 2008                    MacPHERSON KWOK CHEN & HEID LLP


By _____/s/ Clark S. Stone_____
CLARK S. STONE
Attorneys for Plaintiff
LANDMARK SCREENS, LLC