| | |
|---|---|
| 1 | KEKER & VAN NEST, LLP |
| | ELLIOT R. PETERS - #158708 |
| 2 | WENDY J. THURM - #163558 |
| | STEVEN P. RAGLAND - #221076 |
| 3 | COURTNEY TOWLE - #221698 |
| | 710 Sansome Street |
| 4 | San Francisco, CA  94111-1704 |
| | Telephone:     (415) 391-5400 |
| 5 | Facsimile:      (415) 397-7188 |
| | epeters@kvn.com |
| 6 | wthurm@kvn.com |
| | sragland@kvn.com |
| 7 | ctowle@kvn.com |

Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
and THOMAS D. KOHLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company, | Case No. 5:08-cv-2581 JF |
| Plaintiff, | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership; and THOMAS D. KOHLER, an individual, | Date:         September 26, 2008<br>Time:         9:00 a.m.<br>Judge:       Honorable Jeremy Fogel<br>Courtroom 3, 5th Floor |
| Defendants. | Date Comp. Filed:    May 21, 2008 |
| | Trial Date: None set |

---

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 5:08-cv-2581 JF

422607.01

1    Defendants Morgan, Lewis & Bockius LLP and Thomas D. Kohler ask this Court to
2 consider the document attached to this Request for Judicial Notice in connection with
3 Defendants' Motion to Dismiss plaintiff Landmark Screens, LLC's First Amended Complaint
4 ("FAC"), without converting that motion into a motion for summary judgment.

5    Documents "are considered part of the pleadings if they are referred to in the plaintiff's
6 complaint and are central to [its] claim." *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp.
7 746, 758 (N.D. Cal. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d
8 429, 431 (7th Cir. 1993)).  Moreover, even where the plaintiff's complaint does not explicitly
9 refer to a document, it may be attached to the defendant's Fed. R. Civ. P. 12(b)(6) motion
10 without converting that motion to one for summary judgment if its authenticity is not contested
11 and it is a document on which the plaintiff's complaint relies.  *Parrino v. FHP, Inc.*, 146 F.3d
12 699, 705-06 (9th Cir. 1998).  If courts were prohibited from considering such material,
13 complaints that are ultimately doomed to failure could survive a motion to dismiss simply by
14 artful pleading.  "Foreclosing resort to such documents might lead to complaints filed solely to
15 extract nuisance settlements."  *In re Silicon Graphics*, 970 F. Supp. at 758 (quoting *Kramer v.
16 Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

17    Here, Defendants ask the Court to take judicial notice of a prior complaint this Plaintiff
18 filed in the Superior Court of California in December 2005 in the case *Landmark Screens, LLC v.
19 Pennie & Edmonds, LLP, et al.*, Case No. 1-05-CV-053568, which alleged substantially the same
20 course of conduct and harms as those alleged here.  Landmark's First Amended Complaint in
21 this Court specifically refers to its 2005 lawsuit against Defendants (and others) "in Santa Clara
22 Superior Court, Case No. 1-05-CV-053568, alleging legal malpractice and related claims…."
23 FAC ¶ 44.  At least eight paragraphs of the First Amended Complaint here refer to the state court
24 litigation and related arbitration.  *See* FAC ¶¶ 44-51.  And, Landmark not only discusses Morgan
25 Lewis and Kohler's successful demurrer to its first amended (state court) complaint, but claims
26 that Defendants' litigation of that attack on the complaint somehow "further prevented
27 [Landmark] from pursuing its claims."  FAC ¶ 50.  Landmark's First Amended Complaint here,
28 therefore, both refers to and relies on its 2005 first amended (state court) complaint.  This Court,

1

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 5:08-cv-2581 JF

422607.01

1  therefore, can consider Landmark's state court complaint in connection with its consideration of
2  Defendants' Motion to Dismiss.
3      Defendants, therefore, respectfully ask the Court to take judicial notice of Landmark's
4  first amended (state court) complaint, attached hereto as Exhibit A, without converting
5  Defendants' Motion to Dismiss into a motion for summary judgment.

Dated:  August 8, 2008                      KEKER & VAN NEST, LLP

                                       By: */s/ Steven P. Ragland*
                                             STEVEN P. RAGLAND
                                             Attorneys for Defendants
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             and THOMAS D. KOHLER

2
DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 5:08-cv-2581 JF

422607.01

# EXHIBIT A

CLARK S. STONE (SBN 202123)
STEVEN M. LEVITAN (SBN 148716)
**MacPHERSON KWOK CHEN & HEID LLP**
1762 Technology Drive, Suite 226
San Jose, California 95110
Phone: (408) 392-9250
Facsimile: (408) 392-9262

Attorneys for Plaintiff
LANDMARK SCREENS, LLC

ENDORSED

2005 DEC -7 P 5: 56

[stamp: Clerk of the Superior Court, County of Santa Clara, California, Deputy Clerk]

Shanon Cullen

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>PENNIE & EDMONDS LLP, a limited liability partnership; MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership; THOMAS D. KOHLER, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 1-05-CV-053568<br><br>**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY**<br><br>Amount demanded exceeds $25,000 |

Plaintiff Landmark Screens, LLC alleges as follows:

## THE PARTIES

1. Plaintiff LANDMARK SCREENS, LLC ("Plaintiff" or "Landmark") is a Delaware limited liability company with its principal place of business at 1068 East Meadow Circle, Palo Alto, California.

2. Landmark is informed and believes, and thereon alleges, that Defendant PENNIE & EDMONDS LLP ("Pennie & Edmonds") is a limited liability partnership that during at least a portion of the times alleged herein had law offices throughout the United States

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY    1

1 and California, including an office at 3300 Hillview Avenue, Palo Alto, Santa Clara County,
2 California, 94304. Pennie & Edmonds currently is organized and existing under the laws of the
3 State of New York, and lists its principal executive office at 1155 Avenue of the Americas,
4 New York, New York, 10036. At all times alleged herein, Pennie & Edmonds held itself out as
5 having specialized knowledge and skill in patent prosecution and filing.

  3. Landmark is informed and believes, and thereon alleges, that Defendant MORGAN, LEWIS & BOCKIUS LLP ("Morgan Lewis") is a limited liability partnership with law offices throughout the United States and California, including an office 2 Palo Alto Square, 3000 El Camino Real, Suite 700, Palo Alto, Santa Clara County, California, 94306. Morgan Lewis is organized and existing under the laws of the State of Pennsylvania and lists its principal executive office at 1701 Market Street, Philadelphia, Pennsylvania, 19103. At all times alleged herein, Morgan Lewis held itself out as having specialized knowledge and skill in patent prosecution and filing.

  4. Landmark is informed and believes, and thereon alleges, that Defendant THOMAS D. KOHLER ("Kohler") is an individual currently practicing law as a partner of Defendant Morgan Lewis at One Market, Spear Street Tower, San Francisco, California, 94105. Landmark is further informed and believes, and thereon alleges, that, during at least a portion of the times alleged herein, that Kohler was a partner of Defendant Pennie & Edmonds and engaged in the practice of law at Pennie & Edmond's offices in Palo Alto, Santa Clara County, California. At all times alleged herein, Kohler held himself out as having specialized knowledge and skill in patent prosecution and filing.

  5. Landmark is ignorant of the true names and capacities of the persons sued as DOES 1 through 100 and therefore sue these persons by such fictitious names. Landmark is informed and believes and on this basis alleges, that each of these fictitiously named persons is responsible in some manner for the acts and omissions herein alleged, including being responsible for the liabilities of Pennie & Edmonds under its partnership agreement or under applicable law. Landmark will seek leave to amend this complaint to allege their true names and capacities when ascertained.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. Since 2000, Landmark has been in the business of conducting pioneering development and implementation of a two-sided, electronically-controlled, outdoor light emitting diode ("LED") display, or electronic billboard.

7. Landmark's revolutionary electronic billboard consists of a high-resolution LED display screen, measuring 34 feet wide and 19 feet high, and associated proprietary control systems and software, including "smart" technology for automatically adjusting for all lighting conditions, maximizing clarity and visibility. With its capability to display 36,600 discernibly different colors in a single image, Landmark's electronic billboard can display extremely high quality images and graphics, at color ranges and contrasts that exceed high definition television ("HDTV") quality and brilliance.

8. Landmark's revolutionary electronic billboard has been in operation along U.S. Highway 101 in San Carlos, California since December, 2000. Mounted 40 feet above the ground, Landmark's electronic billboard is visible to both directions of traffic at distances between one-half to two-thirds of a mile, and is seen by an estimated seven million viewers per month. Companies placing advertisements on Landmark's electronic billboard include Sun Microsystems, Intel, Disney, and United Airlines.

9. Landmark's electronic billboard is a pioneering invention that is revolutionizing the outdoor advertising industry. Its large size and high quality images, combined with the ability to display different images up to ten times per minute, make it a highly noticed and effective method for display advertising as compared to traditional static print billboards. A recent Harris Interactive study concluded that Landmark's electronic billboard was six times more effective as an advertising medium than conventional static billboards, with the majority of the survey respondents stating that they noticed Landmark's electronic bulletin board every time they drive by.

10. In addition to its high-quality and effective LED display, Landmark's electronic billboard provides significant advantages for advertisers over traditional static print billboards. Content for the electronic billboard is provided by advertisers in digital format, thus

1  significantly reducing time-to-market and eliminating the printing, shipping, and additional
2  production costs associated with conventional billboards. Additionally, Landmark's unique
3  online management of the electronic billboard content allows for fast changes of advertising
4  materials based on changing business conditions, as well as providing the means for multiple
5  advertisers to share the same advertising space, or for a single advertiser to place multiple
6  images, each with varying display times, on the highly visible LED screen.

7   11.   The use of high-definition electronic displays in place of conventional static print
8  billboards is projected to capture a significant portion of the future spending in the outdoor
9  advertising market, a market currently estimated at greater than $5.5 billion. In order to
10 compete in this lucrative and rapidly-developing marketplace, Landmark took steps to procure
11 both United States and international patent protection on the unique and valuable aspects of
12 Landmark's pioneering electronic billboard, as to allow Landmark to become a key player in the
13 development, sales, and marketing of electronic billboards and related advertising and services.

14   12.   In connection with patenting its pioneering development work, on or about
15 November 17, 2000 at Palo Alto, Santa Clara County, California, Landmark retained and
16 employed Pennie & Edmonds and Kohler to represent Landmark as Landmark's attorneys at
17 law in connection with all appropriate patent and intellectual property filings worldwide in
18 order to patent Landmark's inventions conceived in connection with development of the
19 electronic billboard. At such time and place, Pennie & Edmonds and Kohler accepted such
20 employment and agreed to perform such services for Landmark.

21   13.   As patent counsel to Landmark, Pennie & Edmonds and Kohler owed Landmark
22 duties of care commensurate with the specialized standards of legal practice within this area. In
23 the course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed
24 trust and confidence on Pennie & Edmonds and Kohler. Pennie & Edmonds and Kohler
25 accepted and acknowledged this fiduciary responsibility to Landmark regarding these matters.

26   14.   Landmark is informed and believes and thereon alleges that in connection with this
27 representation, on or about January 9, 2002, Pennie & Edmonds and Kohler filed a patent
28 application with the United States Patent and Trademark Office ("PTO") on Landmark's

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY   4

1   pioneering electronic billboard, said application including 72 claims directed to different
2   aspects of Landmark's invention. This application was assigned Application No. 10/045,096
3   ("the '096 application"), and has since issued as U.S. Patent No. 6,639,574 ("the '574 patent").
4       15.  Landmark is informed and believes and thereon alleges that, in connection with
5   the filing of the '096 application and in violation of the duties of care commensurate with the
6   specialized standards of legal practice within the patent prosecution area and in violation of
7   their fiduciary duties, Pennie & Edmonds and Kohler failed to properly and with due care draft
8   patent claims sufficient to adequately claim the unique and novel aspects of Landmark's
9   pioneering electronic billboard, resulting in the loss of Landmark's valuable patent rights.
10      16.  Landmark is informed and believes and thereon alleges that, on or about May 6,
11  2003, in response to a restriction requirement by the PTO, Pennie & Edmonds and Kohler
12  elected to pursue claims 26-31 and 56-72 covering Landmark's invention in the '096
13  application, and cancelled the remaining claims, with patent protection on the remaining claims
14  to be obtained through a "divisional application" claiming the same filing date as the '096
15  application.
16      17.  Landmark is informed and believes and thereon alleges that, on or about August
17  13, 2003, Pennie & Edmonds and Kohler filed a divisional application with the PTO on
18  Landmark's invention, including in this divisional application those novel and valuable claims
19  covering Landmark's invention that had earlier been cancelled in response to the PTO's
20  restriction requirement on the '096 application. This application was assigned Application No.
21  10/640,916 ("the '916 divisional application").
22      18.  Landmark is informed and believes and thereon alleges that, in violation of the
23  duties of care commensurate with the specialized standards of legal practice within the patent
24  prosecution area and in violation of their fiduciary duties, Pennie & Edmonds and Kohler failed
25  to properly and with due care submit to the PTO the '916 divisional application, which included
26  those claims covering novel and valuable aspects of Landmark's invention, by at least the
27  following negligent errors and/or omissions: (a) failing to include a copy of the specification
28  and drawings with the '916 divisional application, as required by the PTO, thus rendering

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY    5

1 | Landmark's divisional application incomplete; (b) submitting an obsolete and out of date
2 | transmittal letter with the '916 divisional application that failed to contain an incorporation by
3 | reference statement concerning the specifications and drawings filed with the '096 application,
4 | thus rendering Landmark's divisional application incomplete; and (c) failing to utilize a
5 | "postcard receipt," method by which the PTO could have notified Pennie & Edmonds and
6 | Kohler in a timely manner of the missing portions of the '916 divisional application.

7 |     19. On or about October 28, 2003, the earlier-filed '096 application was issued as the
8 | '574 patent by the PTO.

9 |     20. The improper and incomplete filing of the '916 divisional application for
10 | Landmark's invention by Pennie & Edmonds and Kohler resulted in the loss of "continuity," as
11 | the later-filed divisional application consequently could not claim the January 9, 2002 filing
12 | date for the '574 patent. Thus, to the extent any of the subject matter claimed in the '916
13 | divisional application was in public use, sold or offered for sale, or disclosed in a printed
14 | publication greater than one year prior to the filing date of the '916 divisional application,
15 | including disclosure by the '574 patent, Landmark could now not obtain patent protection on
16 | such novel and valuable subject matter.

17 |     21. Landmark is informed and believes and thereon alleges that, on or about February
18 | 9, 2004, Kohler ceased practicing law as a partner of Pennie & Edmonds and joined the law
19 | firm of Morgan Lewis as a partner in the San Francisco office.

20 |     22. Landmark is informed and believes and thereon alleges that, on or about April 13,
21 | 2004, Landmark executed a Revocation and Power of Attorney with the PTO appointing
22 | Morgan Lewis as Landmark's attorney in connection with the '574 patent and the '916
23 | divisional application, resulting in the creation of an attorney-client relationship between
24 | Landmark and Morgan Lewis, and continuing Landmark's attorney-client relationship with
25 | Kohler, to represent Landmark as Landmark's attorneys at law in connection with all
26 | appropriate patent and intellectual property filings worldwide in order to patent any and all
27 | inventions conceived in connection with development of Landmark's electronic billboard. At
28 |

1  such time and place, Morgan Lewis and Kohler accepted such employment and agreed to
2  perform such services for Landmark.
3      23. As patent counsel to Landmark, Morgan Lewis and Kohler owed Landmark duties
4  of care commensurate with the specialized standards of legal practice within this area. In the
5  course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed
6  trust and confidence on Morgan Lewis and Kohler. Morgan Lewis and Kohler accepted and
7  acknowledged this fiduciary responsibility to Landmark regarding these matters.
8      24. Landmark is informed and believes and thereon alleges that, on or about June 22,
9  2004, the PTO notified Morgan Lewis and Kohler of the incomplete nature of the August 13,
10 2003 '916 divisional application that Pennie & Edmonds and Kohler had submitted to the PTO.
11     25. Landmark is informed and believes and thereon alleges that, in violation of the
12 duties of care commensurate with the specialized standards of legal practice within the patent
13 prosecution area, and the fiduciary duty to keep the client informed, Pennie & Edmonds,
14 Morgan Lewis, Kohler, and Does 1 through 100 intentionally failed to disclose to Landmark
15 this significant and material development affecting Landmark's valuable patent rights, and
16 instead intentionally and actively embarked on a deceptive course of action by which Pennie &
17 Edmonds, Morgan Lewis, Kohler, and Does 1 through 100, and each of them, actively
18 concealed from Landmark the nature of Pennie & Edmonds, and Kohler's negligent actions in
19 connection with the August 13, 2003 filing of the '916 divisional application.
20     26. Landmark is informed and believes and thereon alleges that, in furtherance of their
21 active efforts to conceal from Landmark the negligent actions in connection with August 13,
22 2003 filing of the '916 divisional application, without Landmark's knowledge or consent and in
23 further violation of the fiduciary duty to keep the client informed, on or about August 23, 2004,
24 Morgan Lewis and Kohler filed with the PTO a "Petition to Grant a Filing Date Pursuant to 37
25 C.F.R. §'s 1.183 and/or 1.53(e)," ("Petition"), by which Morgan Lewis and Kohler attempted to
26 convince the PTO to grant the earlier incompletely-filed divisional application the earlier filing
27 date of the '574 patent.
28

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY    7

27. Landmark is informed and believes and thereon alleges that, on or about November 30, 2004, the PTO dismissed Morgan Lewis and Kohler's Petition, stating unequivocally that the relief requested in the Petition was not warranted due to "applicants' failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice. ..."

28. Landmark is informed and believes and thereon alleges that, on or about December 6, 2004, Morgan Lewis and Kohler were informed of the PTO's decision dismissing the petition. It was only after this December 6, 2004 dismissal by the PTO of the Petition that Landmark was made aware of Pennie & Edmonds, Morgan Lewis, Kohler, and Does 1 through 100's negligent and/or intentional actions in connection with the incomplete filing of the '916 divisional application, and the unauthorized filing of the Petition with the PTO.

29. By letter dated March 29, 2005, Kohler and Morgan Lewis represented to Landmark that Landmark was not charged for the work related to researching and filing the Petition with the PTO. This representation was false. On or about June 7, 2005, Morgan Lewis requested Landmark pay an outstanding balance for legal services of $7,924.40 for an invoice dated April 30, 2005, for legal fees and costs in connection with researching and filing the Petition with the PTO.

30. Until on or about November 2, 2005, Morgan Lewis and Kohler continued to represent Landmark as Landmark's attorney at law in connection with the invention and all appropriate patent and intellectual property filings worldwide in order to patent, protect and encourage licensing of Landmark's unique and pioneering intellectual property and technology concerning the electronic billboard.

### FIRST CAUSE OF ACTION

### Legal Malpractice - Against All Defendants

31. Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1- 30 above.

32. At all times alleged above, Pennie & Edmonds, Morgan Lewis, Kohler, and Does 1 through 100 (hereinafter referred to collectively as "Defendants"), and each of them, failed to

1  exercise reasonable care, skill and diligence in performing legal services for Landmark, and
2  were negligent.
3       33. Defendants' wrongful actions in the form of failure to properly and with due care
4  draft patent claims sufficient to adequately claim the unique and novel aspects of Landmark's
5  pioneering electronic billboard, the incomplete filing of the '916 divisional application and the
6  failure to take proper steps to correct, or to at least minimize, the harm to Landmark caused by
7  the incomplete filing of the '916 divisional application, the intentional concealment of, and the
8  failure to fully and properly inform Landmark as to the status of, the '916 divisional application
9  and Defendants' Petition to the PTO resulted in the loss of valuable and pioneering patent rights
10 and has damaged Landmark.
11      34. Landmark is informed and believes and thereon alleges that, had Defendants
12 exercised proper care, skill and diligence in the foregoing matter, Landmark's valuable and
13 pioneering divisional patent for the electronic billboard would have been afforded the benefit of
14 the filing date of the application for the '574 patent, thus preserving and providing to Landmark
15 valuable patent rights to the invention.
16      35. As a proximate result of Defendants' negligence described herein, Landmark has
17 been damaged in an amount to be proven at trial, but at least in an amount in excess of the
18 jurisdictional minimum of this Court.

### SECOND CAUSE OF ACTION
#### Negligence - Against All Defendants

21      36. Landmark realleges and incorporates herein by reference each and every allegation
22 set forth in paragraphs 1-35 above.
23      37. As Landmark's patent counsel, Defendants, and each of them, had a duty to
24 exercise reasonable skill in performing legal and other patent-related services for Defendants.
25      38. In breach of this duty, Defendants, and each of them, among other things, failed to
26 properly and with due care draft patent claims sufficient to adequately claim the unique and
27 novel aspects of Landmark's pioneering electronic billboard, failed to properly file Landmark's
28 '916 divisional application, failed to take proper steps to correct, or to at least minimize, the

FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, AND BREACH OF FIDUCIARY DUTY    9

1 harm to Landmark caused by the incomplete filing of the '916 divisional application, and failed to fully and properly inform Landmark as to the status of the '916 divisional application and Defendants' Petition to the PTO, resulting in the loss of valuable and pioneering patent rights and has damaged Landmark.

39. As a proximate result of Defendants' negligence described herein, Landmark has been damaged in an amount to be proven at trial, but at least in an amount in excess of the jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty - Against All Defendants

40. Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-39 above.

41. An attorney-client relationship is a fiduciary relationship of the very highest character.

42. The scope of an attorney's fiduciary duties to a client are determined as a matter of law based on the California Rules of Professional Conduct together with other statutes and general principles relating to other fiduciary relationships. As a fiduciary, an attorney's obligations include the duty of care and the duty to keep the client informed.

43. By virtue of the attorney-client relationship that existed between Defendants and Landmark, Defendants, and each of them, owed to Landmark a fiduciary duty.

44. By virtue of Landmark having placed confidence and trust in the fidelity and integrity of Defendants, and entrusting Defendants with the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent the invention and protect and make possible licensing of the invention, a confidential relationship existed at all relevant times herein mentioned between one or more of Defendants and Landmark.

45. In spite of having voluntarily accepted the trust and confidence of Landmark with regard to the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent the invention and thus to protect and encourage licensing of the invention, Defendants, and each of them, violated and abused the trust and confidence of

1 Landmark by failing to properly and diligently perform legal services for Landmark and by intentionally concealing and failing to fully and properly inform Landmark of the status of the '916 divisional application and Defendants' Petition to the PTO.

46. The above-described actions by Defendants, and each of them, were contrary to the best interests of Landmark, and were done in the absence of good faith with a reckless disregard for Defendants' fiduciary duties and Landmark's rights and with intent to defraud, under circumstances Defendants knew would damage Landmark.

47. As a proximate result of the acts of Defendants described herein, Landmark has been damaged in the amount to be proven at trial, but at least in an amount in excess of the jurisdictional minimum of this Court.

48. The above-described actions by Defendants, and each of them, were done with bad faith, malice, fraud and oppression and with reckless disregard of the likelihood that the harm would result in substantial damages to Landmark. Accordingly, Landmark seeks an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LANDMARK SCREENS, LLC ("Landmark") prays for the following relief:

A. That Landmark be awarded its attorneys' fees paid to Defendants;

B. That Landmark be awarded its actual damages, in an amount to be proven at trial;

C. That Landmark be awarded its incidental and consequential damages in an amount to be proven at trial;

D. That Landmark be awarded such exemplary and punitive damages as allowed by law;

E. That Landmark be awarded its costs;

F. That Landmark be awarded pre-judgment and post-judgment interest at the maximum legal rate; and

///

1      G.    That Landmark be granted other and further relief as this Court may deem proper.

2 Dated: December 7, 2005          MacPHERSON KWOK CHEN & HEID LLP

By _____/s/ Clark S. Stone_____
CLARK S. STONE
Attorneys for Plaintiff
LANDMARK SCREENS, LLC