CLARK S. STONE (SBN 202123)
STEVEN M. LEVITAN (SBN 148716)
INCHAN A. KWON (SBN 247614)
**MacPHERSON KWOK CHEN & HEID LLP**
2033 Gateway Place, Suite 400
San Jose, California 95110
Phone:  (408) 392-9250
Facsimile: (408) 392-9262
email:
cstone@macpherson-kwok.com
slevitan@macpherson-kwok.com
ikwon@macpherson-kwok.com

EDWARD J. MCINTYRE (SBN 80402)
WILLIAM N. KAMMER (SBN 53848)
**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 B Street, Suite 1200
San Diego, California 92101
Phone: (619) 231-0303
Facsimile: (619) 231-4755
email:
emcintyre@swsslaw.com
wkammer@swsslaw.com

Attorneys for Plaintiff
LANDMARK SCREENS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership and THOMAS D. KOHLER, an individual,<br><br>Defendants. | Case No: 5:08-cv-2581 JF<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**<br><br>Date: September 26, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>    Courtroom 3, 5th Floor<br>Date Action Filed: May 21, 2008<br>Trial Date: Not set |

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 3

      A.    Defendants' Concealment And Deceptive Course Of Conduct ........... 4

      B.    The State Court Action ................................................................ 4

III.  ARGUMENT ..................................................................................... 6

      A.    Defendants' Rule 12(b)(6) Motion Should Be Denied ........................... 6

            1.    Rule 12(b)(6) Legal Standard ........................................ 6

            2.    Landmark Can Establish That Its Non-Fraud Claims
                  Are Timely ...................................................................... 7

                  a.    The Statute Of Limitations For Landmark's
                        Non-Fraud Claims Was Tolled From
                        November 30, 2005 Through May 20, 2008 Due
                        To Legal Disabilities That Restricted
                        Landmark's Ability To Pursue Its Claims In
                        Federal Court ....................................................... 7

                        i.    Landmark Was Under A Legal
                              Disability From November 30, 2005
                              Through May 20, 2008 Because Of
                              Controlling Authority Mandating That
                              A State Court Has Subject Matter
                              Jurisdiction Over Landmark's Claims ............... 9

                        ii.   Landmark Was Under A Legal
                              Disability From September 26, 2006 To
                              At Least April 14, 2008 Because Of A
                              Stay Due To Pennie's Contractual Right
                              To Arbitrate ..................................................... 11

                  b.    Because Defendants' Failure Over 2 ½ Years
                        To Assert A Subject Matter Jurisdiction
                        Defense Induced Landmark Not To File In
                        Federal Court, Defendants Should Be
                        Equitably Estopped From Now Asserting That
                        Landmark's Claims Are Time Barred ......................... 13

                  c.    On Notice Of Landmark's Claims For Nearly
                        Three Years, Defendants Would Not Be
                        Prejudiced If Landmark's Claims Survive; But
                        Dismissal Would Be Unfair To Landmark And
                        Would Defeat The Purpose Of The Statute Of
                        Limitations ....................................................... 15

3.       **Landmark's First Amended Complaint States A Claim For Fraud Under California Law, And Complies With Federal Rule 9(b)** .......................................................................... 16

       a.     **Landmark's First Amended Complaint Adequately Alleges Fraudulent Concealment And Landmark's Reliance Thereon** ............................... 17

       b.     **Landmark's First Amended Complaint Adequately Alleges The Existence Of Damage, And Need Not Allege The Amount Of Damage** ............ 19

       c.     **Landmark's Fraud Claim Complies With Rule 9(b)** ............................................................................ 21

B.     **Defendants' Rule 12(f) Motion Should Be Denied** ................................ 22

     1.     **Rule 12(f) Legal Standard** ........................................................ 22

     2.     **The Litigation Privilege Does Not Apply Because Landmark Does Not Premise Any Direct Liability On Defendants' Litigation Conduct** .................................... 23

IV.    **CONCLUSION** ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page No(s).**

### Cases

*Abbot v. Stevens*,

33 Cal. App. 2d 242 (Cal. Ct. App. 1955)..................................................................20

*Adams v. Super. Ct.*,

2 Cal. App. 4th 521 (Cal. Ct. App. 1992) .................................................................23

*Adkins v. Lear, Inc.*,

67 Cal. 2d 882 (Cal. 1967) ........................................................................................10

*Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld*,

504 F.3d 1262 (Fed. Cir. 2007)............................................................................passim

*Alkayali v. Geni, Inc.*,

No. SA CV 06-1002 DOC (ANx),

2007 U.S. Dist. LEXIS 61950 (C.D. Cal. Apr. 11, 2007)........................................21

*Ateeq v. Najor*,

15 Cal. App. 4th 1351 (Cal. Ct. App. 1993) ....................................................13, 15

*Bledstein v. Super. Ct.*,

162 Cal. App. 3d 152 (Cal. Ct. App. 1984)....................................................8, 9, 11

*Burnett v. N.Y. Cent. RR. Co.*,

380 U.S. 424 (1965) ....................................................................................................15

*Christianson v. Colt Indus. Operating Corp.*,

486 U.S. 800 (1988) ....................................................................................................10

*City Solutions v. Clear Channel Commc'ns, Inc.*,

365 F.3d 835 (9th Cir. 2004)......................................................................................20

*Clark v. State Farm Mut. Auto. Ins. Co.*,

231 F.R.D. 405 (C.D. Cal. 2005) ...............................................................................20

*Colo. River Water Conservation Dist. v. United States*,

424 U.S. 800 (1976) ....................................................................................................12

*Conley v. Gibson,*
    355 U.S. 41 (1957) ...................................................................................7

*Consol. World Housewares, Inc. v. Finkle,*
    831 F.2d 261 (Fed. Cir. 1987) ..............................................................10

*Coscia v. McKenna & Cuneo,*
    25 Cal. 4th 1194 (Cal. 2001) ..................................................................9

*Gilligan v. Jamco Dev. Corp.,*
    108 F.3d 246 (9th Cir. 1997) ........................................................6, 7, 19

*H.J. Heinz Co. v. Super. Ct.,*
    42 Cal. 2d 164 (Cal. 1954) ....................................................................10

*Hall v. City of Santa Barbara,*
    833 F.2d 1270 (9th Cir. 1986) .................................................................6

*Hart v. Gaioni,*
    354 F. Supp. 2d 1127 (C.D. Cal. 2005) .................................................19

*Hous. Rights Ctr., Inc. v. Moskowitz,*
    No. CV 04-2266 PA,
    2004 U.S. Dist. LEXIS 28885 (C.D. Cal. Sept. 20, 2004) .....................22

*Immunocept, LLC v. Fulbright & Jaworski, LLP,*
    504 F.3d 1281 (Fed. Cir. 2007) .......................................................passim

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980) ...............................................................6, 7

*Kleinecke v. Montecito Water Dist.,*
    147 Cal. App. 3d 240 (Cal. Ct. App. 1983) ...........................................15

*Kolar v. Donahue, McIntosh & Hammerton,*
    145 Cal. App. 4th 1532 (Cal. Ct. App. 2006) ........................................23

*Kruse v. Bank of Am.,*
    202 Cal. App. 3d 38 (Cal. Ct. App. 1988) .............................................20

*Lantzy v. Centex Homes,*

1     31 Cal. 4th 363 (Cal. 2003) ...................................................................................13

2  *Lazar v. Super. Ct.*,

3     12 Cal. 4th 631 (Cal. 1996) .................................................................................20

4  *Leasequip, Inc. v. Dapeer*,

5     103 Cal. App. 4th 394 (Cal. Ct. App. 2002) ......................................................13

6  *LeDuc v. Ky. Cent. Life Ins. Co.*,

7     814 F. Supp. 820 (N.D. Cal. 1992) ....................................................................22

8  *Lerner v. Ehrlich*,

9     222 Cal. App. 2d 168 (Cal. Ct. App. 1963)........................................................19

10  *Linear Tech. Corp. v. Applied Materials, Inc.*,

11     152 Cal. App. 4th 115 (Cal. Ct. App. 2007) ................................................10, 11

12  *Lucas v. Dep't of Corr.*,

13     66 F.3d 245 (9th Cir. 1995)................................................................................14

14  *MGA Entm't, Inc. v. Mattell, Inc.*,

15     No. CV 05-2727,

16     2005 U.S. Dist. LEXIS 18594 (C.D. Cal. Aug. 25, 2005) .................................23

17  *N.Y. Cent. & Hudson River R.R. Co. v. Kinney*

18     260 U.S. 340 (1922) ...........................................................................................15

19  *Nagy v. Nagy*,

20     210 Cal. App. 3d 1262 (Cal. Ct. App. 1989)........................................19, 20, 21

21  *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,

22     6 Cal. 3d 176 (Cal. 1971) .............................................................................16, 17

23  *Neville v. Chudacoff*,

24     160 Cal. App. 4th 1255 (Cal. Ct. App. 2008) ....................................................23

25  *Oltman v. Holland Am. Line, Inc.*,

26     No. 07-35135, 2008 U.S. App. LEXIS 17632 (9th Cir. Aug. 19, 2008)................15

27  *Pendleton v. Ferguson*,

28     15 Cal. 2d 319 (Cal. 1940) ................................................................................10

*Pesnell v. Arsenault*,

531 F.3d 993 (9th Cir. 2008) ..................................................................................7

*Rubin v. Green*,

4 Cal. 4th 1187 (Cal. 1993) ..................................................................................23

*Silberg v. Anderson*,

50 Cal. 3d 205 (Cal. 1990) ..................................................................................23

*Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.*,

No. C-06-1361 MMC,

2006 U.S. Dist. LEXIS 90773 (N.D. Cal. Dec. 1, 2006) ......................................12

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,

No. C 07-00554 JSW,

2007 U.S. Dist. LEXIS 84751 (N.D. Cal. Oct. 30, 2007) ........................................6

*Speedco, Inc. v. Estes*,

853 F.2d 909 (Fed. Cir. 1988) ..............................................................................10

*Spreckels v. Gorrill*,

152 Cal. 383 (Cal. 1907) ......................................................................................19

*Stoll v. Super. Ct.*,

9 Cal. App. 4th 1362 (Cal. Ct. App. 1992) ............................................................8

*Supermail Cargo, Inc. v. United States*,

68 F.3d 1204 (9th Cir. 1995) ..............................................................................6, 7

*Toscano v. Ameriquest Mortgage Co.*,

No. CIV-F-07-0957, 2007 U.S. Dist. LEXIS 81884 (E.D. Cal. Oct. 24, 2007) ....................20

*Towantic Energy, L.L.C. v. Gen. Elec. Co.*,

No. C 04-00446 JF, 2004 U.S. Dist. LEXIS 15385 (N.D. Cal. Aug. 2, 2004) ......................14

*United States v. City of Redwood City*,

640 F.2d 963 (9th Cir. 1981) ..................................................................................7

*Valenzuela v. Kraft, Inc.*,

801 F.2d 1170 (9th Cir. 1986) ..............................................................................11

*Vu v. Prudential Prop. & Cas. Ins. Co.*,

   26 Cal. 4th 1142 (Cal. 2001) ............................................................................................13

*Ward v. Allstate Ins. Co.*,

   964 F. Supp. 307 (C.D. Cal. 1997).....................................................................................13

## **Statutes**

28 U.S.C. § 1338(a).............................................................................................................11, 15

California Civil Code § 1710 .....................................................................................................17

California Code of Civil Procedure § 338..................................................................................19

California Code of Civil Procedure § 340.6......................................................................7, 8, 19

California Code of Civil Procedure § 356..................................................................................11

California Evidence Code § 623 .................................................................................................13

## **Rules**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................passim

Federal Rule of Civil Procedure 12(f)...................................................................................2, 22

Federal Rule of Civil Procedure 8(a) ...........................................................................................6

Federal Rule of Civil Procedure 9(b) ................................................................................passim

1    Plaintiff, Landmark Screens, LLC ("Landmark"), hereby opposes the Motion to Dismiss

2    First Amended Complaint ("FAC") Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss")

3    and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) ("Motion to Strike") of Defendants,

4    Morgan Lewis & Bockius LLP ("MLB") and Thomas D. Kohler ("Kohler," or collectively with

5    MLB, "Defendants").[1]

6                              **I.        INTRODUCTION**

7         In or about June 2004, Defendants received a notice (the "Notice") from the U.S.

8    Patent and Trademark Office ("PTO") notifying Defendants that Kohler had committed

9    malpractice in connection with filing Landmark's patent application in August 2003 while he

10   was a partner at Pennie & Edmonds LLP ("Pennie").  Rather than promptly inform their client

11   Landmark of the Notice and the impact of the malpractice on Landmark's valuable patent

12   rights, as required by their fiduciary duties of loyalty and client communication, Defendants

13   embarked on a course of action calculated to conceal the malpractice from Landmark.

14   Defendants' concealment ultimately resulted in the loss of Landmark's pioneering patent rights

15   covering networked digital light-emitting diode ("LED") billboards, and resulted in Landmark

16   filing a lawsuit against Defendants and Pennie in Santa Clara County Superior Court on

17   November 30, 2005.

18        For almost three years, Defendants have avoided answering for their wrongful and self-

19   serving actions taken in violation of their duties as Landmark's attorneys and fiduciaries.  In the

20   meantime, the patent rights lost by Landmark have become an integral part of the booming

21   networked LED billboard industry, which is expected to capture a significant portion of the

22   more than $5.5 billion outdoor advertising industry.  After representing to the Superior Court

23   that Landmark's claims fall under exclusive federal jurisdiction based on two recent Federal

24   Circuit decisions and that Landmark could pursue its claims in federal court, Defendants seek

25   again to avoid answering for their wrongful actions by obtaining dismissal of Landmark's

26

27   _____

[1] Defendants' Memorandum of Points and Authorities in support thereof is referred to herein as

28   "Defs.' Mem."

1   claims in this Court.  They argue that this case should be dismissed by the very court that they

2   successfully argued in state court has exclusive jurisdiction over Landmark's claims.

3   Defendants' procedural maneuvering would leave Landmark without a remedy in any court if

4   the state court dismissal is affirmed on appeal.

5       Defendants fail to meet the high standard under Rule 12(b)(6) for obtaining dismissal of

6   Landmark's claims.  Defendants' Motion to Dismiss should therefore be denied in its entirety

7   for the reasons set forth in further detail below.

8       First, Landmark can establish that its non-fraud claims are timely.  The FAC sets forth

9   facts that would establish that Landmark's non-fraud claims were tolled under California law

10  because of the following legal disabilities: (1) controlling authority at the time Landmark filed

11  its state court action mandating that a state court, not a federal court, has subject matter

12  jurisdiction over Landmark's claims; and (2) a stay of the court proceeding because of Pennie's

13  contractual right to arbitrate.  Further, even if these legal disabilities did not toll the limitations

14  statute, Defendants' calculated 2 ½-year delay in asserting a subject matter jurisdiction defense

15  prevented the issue from being timely resolved, and Defendants should be equitably estopped

16  from asserting that Landmark's claims are now time barred.  Moreover, the interests of justice

17  and principles of fairness counsel against dismissal because Defendants have been on notice of

18  Landmark's claims for almost three years through the state court action.

19      Second, the FAC sets forth facts that would entitle Landmark to relief on its fraud

20  claim.  Specifically, the FAC alleges fraudulent concealment by Defendants as fiduciaries and

21  Landmark's reliance thereon.  Moreover, because federal rules of pleading apply to a state-law

22  claim brought in federal court, Landmark is not required to plead a precise amount of fraud

23  damages.

24      Defendants also fail to meet the high standard under Rule 12(f) to compel the Court to

25  strike paragraphs 45, 47, and 50 of the FAC.  These paragraphs contain background facts

26  pertinent to the timeliness of Landmark's claims.  As a result, Defendants' Motion to Strike

27  should also be denied in its entirety for the reasons set forth in further detail below.

28

2

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

1

## II.    STATEMENT OF FACTS

2    This case involves legal malpractice, negligence, breach of fiduciary duty, breach of

3 implied contract, and fraud arising from Defendants' concealment and deception in connection

4 with their unsuccessful attempt to patent Landmark's revolutionary electronic billboard.  (FAC

5 ¶¶ 4-43.)  Kohler's legal malpractice occurred while he was a partner at two law firms:  Before

6 January 1, 2004, Kohler was a partner at Pennie; since January 1, 2004, Kohler has been a

7 partner at MLB.  (*Id.* ¶ 21.)

8    Landmark's revolutionary electronic billboard consists of a high-resolution LED display

9 screen.  (FAC ¶ 8.)  With its capability to display 36,600 discernibly different colors in a single

10 image, Landmark's electronic billboard can display extremely high quality images and graphics

11 at color ranges and contrasts that exceed high definition television quality and brilliance.  (*Id.*)

12 Landmark's revolutionary electronic billboard has been in operation along U.S. Highway 101

13 in San Carlos, California since December 2000.  (*Id.* ¶ 9.)  Landmark's electronic billboard is

14 revolutionizing the outdoor advertising industry.  (*Id.* ¶ 10.)  The use of high-definition

15 electronic displays in place of conventional static print billboards is projected to capture a

16 significant portion of the future spending in the outdoor advertising market, a market currently

17 estimated at greater than $5.5 billion.  (*Id.* ¶ 12.)  In order to compete in the lucrative and

18 rapidly developing electronic billboard market, Landmark retained Pennie[2] and Kohler to

19 patent Landmark's inventions conceived in connection with development of its electronic

20 billboard.  (*Id.* ¶¶ 12-13.)

21    Landmark and Pennie eventually settled all claims concerning the acts and omissions of

22 Pennie and Kohler, while a partner at Pennie, in an arbitration ordered by the state court.  (FAC

23 ¶ 46, 48.)  This case concerns the acts and omission of MLB and Kohler, while a partner at

24 MLB.  (*Id.* ¶ 49.)  After Kohler moved to MLB, Kohler and MLB concealed materials facts

25

---

26 [2] Landmark engaged Pennie because in 1996 Pennie entered into a 15-year lease (into 2012)
and became the sole tenant in a Palo Alto office building owned by a partnership that included

27 Landmark members Michael Wilson and John Mozart.  When the Pennie partnership entered
dissolution on or about January 1, 2004 (FAC ¶ 21), Pennie still had a $13 million lease

28 obligation with Landmark members Michael Wilson and John Mozart.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

from Landmark and proceeded on a deceptive course of conduct that deprived Landmark of the ability to take steps that would have prevented the loss of Landmark's patent application.  (*Id.* ¶¶ 24-42.)

**A.    Defendants' Concealment And Deceptive Course Of Conduct**

In or about June 2004, Defendants failed to notify Landmark of a significant and material development concerning Landmark's patent application.  (FAC ¶ 25.)  Thereafter, Defendants took additional steps to conceal their actions, thereby causing Landmark further harm.  (*Id.* ¶¶ 28, 31, 35-42.)  More specifically, Defendants (1) failed to notify Landmark of a notice from the PTO concerning the improper filing of Landmark's patent application and (2) fraudulently concealed their malpractice from Landmark, including concealing knowledge of the rejection by the PTO of the patent application and the specific efforts being undertaken by MLB to address this problem.  Defendants' acts and omissions prevented Landmark from immediately seeking other counsel who might have been able to properly address the problem, and preventing Landmark from providing informed consent to MLB's strategy and tactics in attempt to address the problem—tactics which ultimately failed.  (*Id.* ¶¶ 25-42.)

Defendants received the PTO's notice of the incomplete patent application on or about June 22, 2004.  (FAC ¶ 24.)  However, Landmark was not fully advised by Defendants of the incomplete filing and PTO rejection until March 2005—almost nine months after the notice.  (*Id.* ¶ 35.)  Sent in furtherance of Defendants' concealment, the March 2005 letter itself misrepresented several key facts known by Defendants to be untrue.  (*See id.* ¶ 35-36.)

Until on or about November 2, 2005, Defendants continued to represent Landmark in connection with the patent application.  (FAC ¶ 43.)

**B.    The State Court Action**

On or about November 30, 2005, Landmark filed suit against Defendants (and Pennie) in Santa Clara County Superior Court.  (FAC ¶ 44.)  As here, Landmark alleged legal malpractice and related claims arising from Defendants' concealment and deception in unsuccessfully attempting to patent Landmark's revolutionary electronic billboard.  (*Id.*)

4

Since at least May 31, 2006, Landmark has been unable to pursue its claims against Defendants due to MLB's refusal to respond to written discovery. (FAC ¶ 45.) MLB's refusal was based on a Motion to Stay filed by Defendants in state court. (*Id.*)

On or about September 26, 2006, on Defendants' motion the state court stayed Landmark's case against Defendants pending the outcome of an arbitration between Landmark and Pennie. (FAC ¶¶ 46-47.) The stay further prevented Landmark from pursuing its claims against Defendants. (*Id.* ¶ 47.)

The arbitration between Landmark and Pennie concluded in March 2008. (FAC ¶ 48.) While the state court never formally lifted the stay, proceedings in the state court resumed in April 2008. (*See* Pl.'s Req. for Judicial Notice, Exs. A (State Court Docket) at 6, B (Defs.' Ex Parte Application) at 1,4, C (Defs.' Notice of Dem.) at 2.)

Since at least April 2, 2008, Landmark has been further prevented from pursuing its claims against Defendants because of Defendants' refusal to respond to written discovery requests and deposition notices. (FAC ¶ 50.) Defendants' refusal was based on their filing a demurrer to Landmark's state court complaint for lack of subject matter jurisdiction. (*Id.*) In their Demurrer, Defendants argued that the state court lacked subject matter jurisdiction over Landmark's claims because of two intervening October 15, 2007 decisions by the U.S. Court of Appeals for the Federal Circuit, *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld*, 504 F.3d 1262 (Fed. Cir. 2007) and *Immunocept, LLC v. Fulbright & Jaworski*, LLP, 504 F.3d 1281 (Fed. Cir. 2007). (Pl.'s Req. for Judicial Notice, Exs. D (Defs.' Br. in Supp. of Dem.) at 2, 7-11, E (Defs.' Reply Br. in Supp. of Dem.) at 8-10.)

At the hearing on Defendants' Demurrer, Defendants' counsel stated to the court that "if [Landmark] wants to pursue this case in Federal Court, [it is] free to do so." (Pl.'s Req. for Judicial Notice, Ex. F (Dem. Hr'g Tr.) at 4:5-6.) Apparently assuming that this means there would be no bar to this litigation proceeding in federal court, the state court remarked, "Now, as I take it from what has been said here, and there is nothing in the papers that has said that if

1   it is without leave to amend that [Landmark is] without recourse and [it] couldn't go down the

2   street to our colleagues in the Federal Court presumably."  (*Id.* at 7:26-8:2.)

3       On or about May 20, 2008, the state court sustained Defendants' Demurrer.  (FAC ¶

4   51.)  The court held it lacked subject matter jurisdiction under *Air Measurement Technologies*

5   and *Immunocept* because Landmark's claims required resolution of a substantial question of

6   federal patent law.  (*Id.*; Pl.'s Req. for Judicial Notice, Ex. G (State Court Order Re: Dem. to

7   First Am. Compl.) at 2.)  On August 20, 2008, Landmark filed a Notice of Appeal from the

8   state court's judgment of dismissal after sustaining Defendants' Demurrer.  (*See* Pl.'s Req. for

9   Judicial Notice, Ex. H (Pl.'s Notice of Appeal).)

10                          **III.    ARGUMENT**

11  **A.    Defendants' Rule 12(b)(6) Motion Should Be Denied**

12          **1.    Rule 12(b)(6) Legal Standard**

13      "The federal rules require only a 'short and plain statement of the claim showing that

14  the pleader is entitled to relief.'"  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-249 (9th

15  Cir. 1997) (quoting FED. R. CIV. P. 8(a)).   "The Rule 8 standard contains 'a powerful

16  presumption against rejecting pleadings for failure to state a claim.'"  *Id.* at 249 (citation

17  omitted).  Motions to dismiss are viewed with disfavor and granted rarely.  *Id.* (citing *Hall v.*

18  *City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)).

19      "A statute of limitations defense may be raised by a motion to dismiss if the running of

20  the statute is apparent on the face of the complaint."  *Sonoma Foods, Inc. v. Sonoma Cheese*

21  *Factory, LLC*, No. C 07-00554 JSW, 2007 U.S. Dist. LEXIS 84751, at *12 (N.D. Cal. Oct. 30,

22  2007) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  "A motion to

23  dismiss based on the running of the statute of limitations period may be granted only 'if the

24  assertions of the complaint, read with the required liberality, would not permit the plaintiff to

25  prove that the statute was tolled.'"  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-

26  07 (9th Cir. 1995) (quoting *Jablon*, 614 F.2d at 682).

27

28                                                                                          6

1    On a motion to dismiss, all allegations of material fact in the complaint must be
2  construed in favor of plaintiff. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)
3  (citations omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the
4  plaintiff can prove no set of facts that would establish the timeliness of the claim" or "which
5  would entitle him to relief." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th
6  Cir. 1995) (citing *Jablon*, 614 F.2d at 682); *Gilligan*, 108 F.3d at 248 (citing *Conley v. Gibson*,
7  355 U.S. 41, 45-46 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.
8  1995)). "Under this rule it is only the extraordinary case in which dismissal is proper." *United
9  States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Moreover, because
10  applicability of equitable estoppel "involve[s] determination of factual matters . . . such
11  determination is not ordinarily amenable to resolution under Rule 12(b)(6)." *Pesnell v.
12  Arsenault*, 531 F.3d 993, 997 (9th Cir. 2008).

13         **2.    Landmark Can Establish That Its Non-Fraud Claims Are Timely**

14    The running of the statute of limitations on Landmark's non-fraud claims is not
15  apparent on the face of the FAC. Rather, the FAC sets forth several facts that toll the
16  limitations statute or otherwise allow Landmark's claims to survive. Thus, the Motion to
17  Dismiss should be denied.

18              **a.    The Statute Of Limitations For Landmark's Non-Fraud Claims Was
19                     Tolled From November 30, 2005 Through May 20, 2008 Due To
                      Legal Disabilities That Restricted Landmark's Ability To Pursue Its
20                     Claims In Federal Court**

21    Defendants incorrectly assert that "Landmark claims no disability that would trigger §
22  340.6(a)(4)." (Defs.' Mem. at 9.) Defendants ignore and fail to address allegations in the FAC
23  that Landmark was legally unable to pursue its claims against Defendants in *any* court,
24  including this Court. More specifically, Landmark alleges that from November 30, 2005
25  through May 20, 2008, Landmark was under legal disabilities that restricted Landmark's ability
26  to commence this action. (FAC ¶¶ 44-51.)

27

28                                                                                        7

1    Section 340.6 of the California Code of Civil Procedure provides:

2         An action against an attorney for a wrongful act or omission,
         other than for actual fraud, arising in the performance of
3         professional services, shall be commenced within one year after
         the plaintiff discovers, or through the use of reasonable diligence
4         should have discovered, the facts constituting the wrongful act or
         omission, whichever occurs first.
5

6    With the exception of actual fraud, this statute of limitations applies to all contract and tort

7    claims arising from legal malpractice. *Stoll v. Super. Ct.*, 9 Cal. App. 4th 1362, 1366-69 (Cal.

8    Ct. App. 1992). The statute is tolled when "[t]he attorney continues to represent the plaintiff

9    regarding the specific subject matter in which the alleged wrongful act or omission occurred."

10   CAL. CODE CIV. P. § 340.6, subd. (a)(2).

11        Here, Landmark alleges that it discovered the facts constituting Defendants' wrongful

12   acts and omissions "in or around late summer or fall 2005." (FAC ¶ 42.) However, Landmark

13   also alleges that "[u]ntil on or about November 2, 2005" Defendants continued to represent

14   Landmark regarding the specific subject matter in which Defendants' wrongful acts and

15   omissions occurred. (*Id.* ¶ 43.) Thus, the statute of limitations on Landmark's non-fraud

16   claims did not begin to run until on or around November 3, 2005—only 27 days prior to

17   commencement of Landmark's state court action. (*Id.* ¶ 44.)

18        The statute is also tolled when "[t]he plaintiff is under a legal or physical disability

19   which restricts the plaintiff's ability to commence legal action." CAL. CODE CIV. P. § 340.6,

20   subd. (a)(4). "Legal disability" is not defined in section 340.6. Nonetheless, the California

21   Court of Appeals has found that this "broad" tolling provision was not intended to apply to any

22   particular disability, but rather applies generally to any "circumstances beyond the potential

23   plaintiff's control [that] would pose a legal . . . impediment to bringing suit." *Bledstein v.*

24   *Super. Ct.*, 162 Cal. App. 3d 152, 161-69 (Cal. Ct. App. 1984) (finding in the legislative history

25   no limitation on the ability of a plaintiff to invoke the legal disability tolling provision and

26   holding that the provision may be invoked even where a plaintiff has the legal capacity to sue

27   or where suing is not *prohibited* but is in some way *restricted* (which includes impeding the

28

8

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

progress of)).[3]  *See also Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1210 (Cal. 2001) (stating that "the tolling provision for legal disability" applies where a plaintiff was "prevented by circumstances beyond his control, such as minority, mental illness, or incarceration, from pursuing his legal remedy").  Thus, all circumstances beyond Landmark's control that impeded Landmark's pursuit of its claims toll the limitations statute.

### i.    Landmark Was Under A Legal Disability From November 30, 2005 Through May 20, 2008 Because Of Controlling Authority Mandating That A State Court Has Subject Matter Jurisdiction Over Landmark's Claims

Landmark alleges that that it was under a legal disability that restricted its ability to pursue this case in federal court from November 30, 2005, the day it filed its state court action, through May 20, 2008, the day the state court sustained Defendants' Demurrer for Lack of Subject Matter Jurisdiction.  (*See* FAC ¶¶ 44, 51.)  Defendants try to avoid this point by sleight of hand.  First, they incorrectly assert that as of November 2005 "both federal and state law put Landmark on notice that state law causes of action that raise substantial questions of federal patent law are within the exclusive jurisdiction of the federal courts."  (Defs.' Mem. at 10.) Second, Defendants attempt to mislead the Court by failing to mention the new law[4] that primarily led the state court to sustain Defendants' Demurrer: *Air Measurement Technologies* and *Immunocept*.  (FAC ¶ 51; Pl.'s Req. for Judicial Notice, Ex. G (State Court Order Re: Dem. to First Am. Compl.) at 2.)  Both positions are wholly inconsistent with Defendants' positions in the state court.  In support of their Demurrer, Defendants relied principally on the recent Federal Circuit case law that they now try to minimize.  (*See* Pl.'s Req. for Judicial Notice, Exs. D (Defs.' Br. in Supp. of Dem.) at 2, 7-11, E (Defs.' Reply Br. in Supp. of Dem.) at 8-10.)  The

---

[3] While the issue in *Bledstein* was whether imprisonment tolled the limitations statute, the court's analysis of the legislative history of section 340.6 demonstrates that the "legal disability" tolling provision was intended to capture the tolling provisions in chapter 4 of title 2 of part 2 of the California Code of Civil Procedure and other legal disabilities.

[4] The Federal Circuit acknowledged that it was making new law:  In the first of the cases decided by the court, the court found that the "appeal presents an issue of first impression in this court."  *Air Measurement Techs., Inc.*, 504 F.3d at 1267.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

1    state court agreed that the recent Federal Circuit case law controlled.  (*See* Pl.'s Req. for

2    Judicial Notice, Ex. G (State Court Order Re: Dem. to First Am. Compl.) at 2.)  In fact, in

3    sustaining Defendants' Demurrer, the court cited only these two Federal Circuit cases and a

4    California Court of Appeals case also decided long after Landmark filed the state court

5    action—*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (Cal. Ct. App.

6    2007), a case in which the court found *no federal jurisdiction* even though the case involved

7    patent-law issues.  (*Id.*)

8           Prior to *Air Measurement Technologies* and *Immunocept*, decades of federal and state

9    case law were in accord that a case with patent-law *issues* does not necessarily *arise under*

10   federal patent law, thus invoking exclusive federal jurisdiction.  *See, e.g.*, *Christianson v. Colt*

11   *Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (there is federal jurisdiction only in "those

12   cases in which a well-pleaded complaint establishes either that federal patent law creates the

13   cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

14   substantial question of federal patent law, in that patent law is a necessary element of one of the

15   well-pleaded claims); *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) ( "the statutory

16   limitations on the jurisdiction of [the U.S. Court of Appeals for the Federal Circuit] and the

17   federal district courts, in conjunction with the well-pleaded complaint rule, can and do result in

18   state courts resolving patent issues"); *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261,

19   265 (Fed. Cir. 1987) ("the mere presence of a patent issue cannot of itself create a cause of

20   action arising under the patent laws"); *Adkins v. Lear, Inc.*, 67 Cal. 2d 882, 890-91 (Cal. 1967),

21   *rev'd on other grounds*, *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) (while in a patent license

22   dispute a state court "may pass upon the meaning, scope, validity or infringement of the

23   patent," such a case may not be maintained in federal court) (citations omitted); *Pendleton v.*

24   *Ferguson*, 15 Cal. 2d 319, 326 (Cal. 1940) ("It appears to be the settled rule that that while the

25   federal courts have exclusive jurisdiction of all cases arising under the patent laws, such

26   jurisdiction does not extend to all questions in which a patent may be the subject-matter [sic] of

27   the controversy."); *H.J. Heinz Co. v. Super. Ct.*, 42 Cal. 2d 164, 172 (Cal. 1954) (28 U.S.C. §

28

1   1338(a) "states that the federal district court has exclusive jurisdiction of 'action[s]' arising

2   under federal patent law"; "[i]t does not purport to cover all patent right 'question[s]' [that]

3   may arise in some other kind of an 'action' or 'case' such as one based upon common law or

4   equity; the latter actions manifestly are within the jurisdiction of the state courts"); *Linear Tech.*

5   *Corp.*, 152 Cal. App. 4th at 124 (the state courts are "not deprive[d] . . . of the power to

6   determine questions arising under the patent laws, but only of assuming jurisdiction of 'cases'

7   arising under those laws").

8        Given the change in the legal landscape caused by *Air Measurement Technologies* and

9   *Immunocept*—a circumstance entirely beyond Landmark's control—Landmark was under a

10  legal disability that restricted its ability to pursue its state-law claims in federal court until after

11  the Federal Circuit decisions and the sustaining of the Demurrer by the state court.  Until then,

12  it is likely that a federal court would have found that this case was not within its limited

13  jurisdiction.  As a result, Landmark should not be barred from pursing its claims in this Court.

14  *Cf. Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) (affirming denial of motion

15  to dismiss on statute-of-limitations grounds of case filed in federal court after dismissal in state

16  court for lack of subject matter jurisdiction; finding that "[a]t the time [plaintiff] filed his action

17  in state court it was unclear whether federal courts had exclusive jurisdiction over [plaintiff's

18  claim]" and that "[plaintiff] should not be denied a chance to present his case because he chose

19  the wrong line of precedent").

20        **ii.    Landmark Was Under A Legal Disability From September
            26, 2006 To At Least April 14, 2008 Because Of A Stay Due**
21        **To Pennie's Contractual Right To Arbitrate**

22        Even were Landmark not considered to be under a legal disability from November 30,

23  2005 through May 20, 2008, Landmark was under a legal disability at least during the time the

24  state court action was stayed (from September 26, 2006 to at least April 14, 2008).  *See* CAL.

25  CODE CIV. P. § 356; *Bledstein*, 162 Cal. App. 3d at 161-62 (finding that section 356's tolling of

26  the statute of limitations when an action is stayed by injunction is a legal disability that tolls the

27  statute of limitations for claims founded on legal malpractice).  As discussed above, Landmark

28

1  could not have filed this case in federal court because controlling authority mandated that a

2  state court, not a federal court, has subject matter jurisdiction over Landmark's claims.  Even if

3  Landmark had been able to overcome this jurisdictional defect, a federal court would have

4  stayed a federal action pending resolution of the state court action because of Pennie's

5  contractual right to arbitrate.  (*See* FAC ¶ 46.)  Moreover, a federal action would have been

6  stayed because, as MLB successfully argued in obtaining a stay of the state court action

7  pending the Pennie arbitration, an arbitration judgment in favor of Kohler would have been a

8  bar to any subsequent action against MLB.  (Pl.'s Req. for Judicial Notice, Ex. K (MLB's

9  Mem. in Supp. of Motion to Stay) at 11-12.)  Similarly, under principles of "[wise] judicial

10  administration," such a federal action would likely have been stayed.  *See Sirna Therapeutics,*

11  *Inc. v. Protiva Biotherapeutics, Inc.*, No. C-06-1361 MMC, 2006 U.S. Dist. LEXIS 90773, at

12  *19-33 (N.D. Cal. Dec. 1, 2006) (applying *Colo. River Water Conservation Dist. v. United*

13  *States*, 424 U.S. 800 (1976) and staying federal action in favor of pending state court action

14  because of a "substantial likelihood of duplication of efforts by the federal and state courts," "a

15  danger of inconsistent judgments," and "the desirability of avoiding piecemeal litigation").

16      This means that at the time of filing this action, the statute had only run from November

17  3, 2005 to September 26, 2006 (approximately 10 ¾ months) and from April 14 or April 28,

18  2008, when the stay was effectively lifted[5], to May 21, 2008, the day Landmark filed this

19  action (less than 1 ¼ months).  Thus, even including the other time when Landmark contends it

20  was under a legal disability that restricted its ability to commence this action in federal court,

21  this action was still filed within the one-year statute of limitations.

---

[5] While the state court never formally lifted the stay, proceedings in the state court did not resume until April 14, 2008 or April 28, 2008.  (*See* Pl.'s Req. for Judicial Notice, Exs. A (State Court Docket) at 6, B (Defs.' Ex Parte Application) at 1,4, C (Defs.' Notice of Dem.) at 2.)  On April 14, Defendants submitted an ex parte application to the state court in which Defendants sought to continue a scheduled April 29, 2008 trial setting conference.  (*See id.*, Ex. B.)  On April 28, Defendants filed their Demurrer for Lack of Subject Matter Jurisdiction.  (*See id.*, Ex. C.)

1

2

**b.    Because Defendants' Failure Over 2 ½ Years To Assert A Subject Matter Jurisdiction Defense Induced Landmark Not To File In Federal Court, Defendants Should Be Equitably Estopped From Now Asserting That Landmark's Claims Are Time Barred**

3

4

5

6

7

8

9

10

11

12

13

14

Under the doctrine of equitable estoppel, "[i]t is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations]." *Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1357 (Cal. Ct. App. 1993) (citation omitted).  The doctrine of equitable estoppel, which is distinct from equitable tolling, applies to section 340.6.  *Leasequip, Inc. v. Dapeer*, 103 Cal. App. 4th 394, 406-08 (Cal. Ct. App. 2002).  *See also Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383-384 (Cal. 2003) ("Equitable estoppel is available even where the limitations statute at issue expressly precludes equitable tolling.") (citing *Leasequip, Inc.*, 103 Cal. App. 4th at 405–408).  Equitable estoppel does not toll or extend a limitations period.  *Lantzy*, 31 Cal. 4th at 383.  Rather, it operates "independent[ly]" of the limitations period and "comes into play only after the limitations period has run."  *Id.*  Thus, there can be no question that equitable estoppel may be applied to save time-barred legal malpractice claims.

15

16

17

18

19

20

21

22

23

24

25

26

27

"One aspect of equitable estoppel is codified in [California] Evidence Code section 623, which provides that '[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.'"  *Id.* at 384 (citations omitted).  "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. . . . To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss. . . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.'"  *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1152-53 (Cal. 2001) (citations omitted).  A defendant "cannot be allowed to lull [plaintiff] into sleeping on [its] rights, and then use the limitations period as a sword to cut down [plaintiff's] claims."  *Ward v. Allstate Ins. Co.*, 964 F. Supp. 307, 312 (C.D. Cal. 1997).

28

13

1    Here, until shortly before filing their Demurrer for lack of subject matter jurisdiction,

2    Defendants never raised subject matter jurisdiction as a defense.[6]  Defendants had several

3    opportunities over 2 ½ years to inform Landmark that it intended to raise the issue of subject

4    matter jurisdiction.  For example, Defendants could have asserted lack of subject matter

5    jurisdiction in its January 2006 answers to Landmark's state court complaint.  Defendants did

6    not do so.  (*See* Pl.'s Req. for Judicial Notice, Exs. I, J.)

7    It appears that Defendants' strategy was to prevail on procedural maneuvering by

8    running out the statute of limitations, obtaining dismissal of Landmark's state court action for

9    lack of subject matter jurisdiction, and thereby preventing Landmark from pursuing its claims

10   in state *or* federal court.  This procedural maneuvering is also demonstrated by Defendants'

11   arguing to the state court that "if [Landmark] wants to pursue this case in Federal Court, [it is]

12   free to do so" (Pl.'s Req. for Judicial Notice, Ex. F (Dem. Hr'g Tr.) at 4:5-6)—an argument the

13   state court relied on (*id.* at 7:26-8:2)—while arguing to this Court that Landmark *may not*

14   pursue this case in federal court because its claims are now time barred.

15   Defendants' 2 ½ year silence on the issue of subject matter jurisdiction actually and

16   reasonably induced Landmark to forbear filing this action in federal court.  Thus, even if the

17   statute of limitations on Landmark's non-fraud claims has run out (it has not), Defendants

18   should be equitably estopped from now asserting that Landmark's claims are time barred, and

19   Defendants' Motion to Dismiss these claims should therefore be denied.[7]

20

21

22   ---

[6] Defendants suggest that their reason for raising subject matter jurisdiction in April 2008 (and

23   not earlier) was that they changed counsel.  (*See* Defs.' Mem. at 5.)  Even if true, this does
     nothing to change the fact that Defendants (through their former counsel) could have but

24   apparently chose not to raise the issue of subject matter jurisdiction years earlier.  Defendants'
     change in counsel is irrelevant to Defendants' Motion to Dismiss.

25
     [7] To the extent the Court finds equitable estoppel may apply but that the FAC does not

26   adequately allege facts forming the basis for equitable estoppel, Landmark respectfully requests
     leave to amend the FAC to include such facts.  *See Towantic Energy, L.L.C. v. Gen. Elec. Co.*,

27   No. C 04-00446 JF, 2004 U.S. Dist. LEXIS 15385, at *6 (N.D. Cal. Aug. 2, 2004) ("Leave to
     amend must be granted unless it is clear that the deficiencies of the complaint cannot be cured

28   by amendment.") (citing *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)).

14

1

2

**c.    On Notice Of Landmark's Claims For Nearly Three Years, Defendants Would Not Be Prejudiced If Landmark's Claims Survive; But Dismissal Would Be Unfair To Landmark And Would Defeat The Purpose Of The Statute Of Limitations**

3    As Defendants correctly recognize, public policy favors "prompt assertion of known

4    claims." (*See* Defs.' Mem. at 9.)  The purpose of a limitation period is to "assure fairness to

5    defendants" and to "promote justice by preventing surprises through the revival of claims that

6    have been allowed to slumber." *Oltman v. Holland Am. Line, Inc.*, No. 07-35135, 2008 U.S.

7    App. LEXIS 17632, at *5 (9th Cir. Aug. 19, 2008) (quoting *Burnett v. N.Y. Cent. RR. Co.*, 380

8    U.S. 424, 428 (1965)).  "Both federal and state jurisdictions have recognized the unfairness of

9    barring a plaintiff's action solely because a prior timely action is dismissed for improper venue

10    after the applicable statute of limitations has run."  *Burnett*, 380 U.S. at 430.  Even the

11    California courts have recognized that a statute of limitations should yield to fairness:

12

13

14

15

16

17

> As Justice Holmes observed, "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." ([*N.Y. Cent. & Hudson River R.R. Co. v. Kinney*, 260 U.S. 340 (1922)].) Further, "statutes of limitations are not so rigid that under certain circumstances principles of equity and justice will not allow them to be extended or tolled." (*Kleinecke v. Montecito Water Dist.*, [147 Cal. App. 3d 240, 247 (Cal. Ct. App. 1983)].)

18    *Ateeq*, 15 Cal. App. 4th at 1356.

19    Here, there is no question that Landmark promptly asserted its claims in state court.

20    Landmark's claims are in this Court because the state court decided that was necessary in light

21    of a recently articulated federal policy of resolving patent attorney malpractice disputes in

22    federal court. *See Air Measurement Techs., Inc.*, 504 F.3d at 1272 (stating that in 28 U.S.C. §

23    1338(a), "Congress considered the federal-state division of labor and struck a balance in favor

24    of [a federal] court's entertaining patent infringement"); *Immunocept, LLC*, 504 F.3d at 1285-

25    86 (referring to "Congress' intent to remove non-uniformity in the patent law, as evidenced by

26    its enactment of the Federal Courts Improvement Act of 1982, Pub. L. No. 97-165, 96 Stat. 25"

27    (an act establishing the Federal Circuit)).  It would be inconsistent with that asserted policy for

28

15

1  this Court to dismiss Landmark's claims.  Dismissal would mean that Landmark would be

2  denied a remedy entirely if the state court judgment of dismissal is affirmed on appeal.  That is

3  so patently unfair as to make no sense in the context of this case.  Whereas Landmark diligently

4  pursued its claims, Defendants delayed the state court action and then—late in the game and in

5  reliance on intervening Federal Circuit cases—caused it to be dismissed while representing to

6  the state court that this Court would be able to hear the claims.  Thus, principles of fairness and

7  the interests of justice counsel against dismissal on statute of limitations grounds.

8       **3.**     **Landmark's First Amended Complaint States A Claim For Fraud Under California Law, And Complies With Federal Rule 9(b)**

9

10       Defendants argue that Landmark's fraud claim fails because Landmark does not allege

11  misrepresentation of a material fact, actual reliance thereon, and the amount of damages

12  suffered.  (Defs.' Mem. at 12-14.)  In addition, Defendants argue that Landmark's fraud claim

13  was not pleaded with the required specificity under Rule 9(b) of the Federal Rules of Civil

14  Procedure.  (*Id.* at 14.)

15       Defendants' arguments fail.  First, given that Defendants were Landmark's fiduciaries,

16  Landmark has stated an actionable fraud claim even if Defendants had not made any

17  affirmative misrepresentation.  As fiduciaries, Defendants had an affirmative obligation to

18  inform Landmark of the failures in prosecuting Landmark's patent application when they

19  received the notice from the PTO in June 2004.  Defendants' failure to inform Landmark is

20  actionable fraud.  *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 188-89

21  (Cal. 1971).  Second, the FAC adequately alleges that Landmark relied on Defendants'

22  concealment by, among other things, not "tak[ing] steps that would have prevented the loss of

23  Landmark's valuable and pioneering patent rights."  (FAC ¶ 30.)  Third, the FAC adequately

24  alleges the fact of damage, and need not allege the amount of damages.  Finally, Defendants fail

25  to establish that Landmark's fraud claim does not meet the heightened pleading requirements of

26  Rule 9(b).

27

28

     16

a.    **Landmark's First Amended Complaint Adequately Alleges Fraudulent Concealment And Landmark's Reliance Thereon**

Defendants acknowledge that Landmark's fraud claim is based in part on "the alleged concealment of the PTO notice," but do not address concealment in their arguments that the FAC fails to state a claim for fraud.  (*See* Defs.' Mem. at 11, 12-13.)  In fact, the crux of Landmark's fraud claim is Defendants' *concealment* of the PTO notice while under a fiduciary duty to disclose to Landmark the notice and its consequences to Landmark's valuable patent rights, which at the time of the concealment had not already been lost.  (*See, e.g.*, FAC ¶¶ 25-30, 42, 75-76, 82-84.)  Under California law, concealment of facts by fiduciaries is actionable fraud.

According to the California Supreme Court, a fiduciary has a duty "to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. 'Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud . . . .'"  *Neel*, 6 Cal. 3d at 188-89 (citation omitted).  Fraud in the form of concealment is defined in section 1710 of the California Civil Code as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

The FAC adequately alleges a duty to disclose, concealment, materiality of the concealed facts, and causation.  Specifically, the FAC alleges (1) the existence of a fiduciary relationship between Defendants and Landmark (FAC ¶¶ 23) (duty to disclose); (2) Defendants' concealment of the June 22, 2004 notice from the PTO (*id.* ¶¶ 25-28, 34, 42, 75, 82-84) (concealment); (3) that "[t]he June 22, 2004 notice from the PTO was material to Landmark's patent rights" (*id.* ¶ 76; *see also id.* ¶¶ 25 (referring to the PTO notice as a "significant and material development affecting Landmark's valuable patent rights"), 26 (same)) (materiality); and (4) that absent the concealment Landmark would have taken steps "that would have prevented the loss of Landmark's valuable and pioneering patent rights" (*id.* ¶ 30) (materiality/causation).

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE—Case No. 5:08-2581 JF**

1   The FAC also adequately alleges reliance.   Specifically, the FAC alleges that had

2   Defendants timely informed Landmark of the June 22, 2004 PTO notice, Landmark would have

3   taken "steps that would have prevented the loss of Landmark's valuable and pioneering patent

4   rights" and that Landmark relied on Defendants' entire pattern of concealment and deception

5   (including concealment of the June 22, 2004 PTO notice) by "continu[ing] to be deceived about

6   Kohler's malpractice in connection with the improper filing of the '916 divisional application"

7   and by continuing to retain Defendants as Landmark's counsel "in connection with the

8   invention and all appropriate patent and intellectual property filings worldwide in order to

9   patent, protect and encourage licensing of Landmark's unique and pioneering intellectual

10  property and technology concerning the electronic billboard."   (FAC ¶¶ 30, 41, 43.)   These

11  allegations of reliance are more than adequate to state a claim for fraud.

12  In addition to fraudulent concealment, Landmark alleges a pattern of affirmative

13  misrepresentations (specifically, in a March 2005 letter and a May 2005 meeting) designed to

14  further perfect Defendants' concealment of the PTO notice (which concealment began in June

15  2004).   (*See* FAC ¶¶ 35-41.)   Defendants argue that these misrepresentations cannot constitute

16  fraud because as of March 2005 "Landmark's patent rights were already 'lost'" and "therefore,

17  Landmark cannot prove it was damaged by Defendants' supposed fraudulent acts in 2005."

18  (Defs.' Mem. at 12.)[8]   As discussed above, at the time of Defendants' fraudulent concealment

19  in 2004, Landmark's patent rights *were not* already lost.   (*See* FAC ¶ 30.)   Thus, Landmark has

20  stated a claim for fraud regardless of whether Landmark can ultimately prove that Defendants'

21  misrepresentations in 2005 constitute fraud in and of themselves.   At a minimum, these

22  allegations have evidentiary value because they are relevant to Defendants' fraudulent intent in

23  concealing the June 2004 PTO notice from Landmark.   Moreover, they explain how Landmark

24  did not discover and could not have discovered the effects of Defendants' concealment and

25  false and deceptive statements until in or around late summer or fall 2005 (*see id.* ¶ 42), and

26

27  [8] By contrast, Defendants do not argue that Landmark cannot prove that it was damaged from
    Defendants' fraudulent concealment.

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE—Case No. 5:08-2581 JF

1   thereby establish that Landmark's fraud claim was brought within the three-year statute of

2   limitations for fraud.  *See* CAL. CODE CIV. P. § 338, subd. (d) ("An action for relief on the

3   ground of fraud . . . is not deemed to have accrued until the discovery, by the aggrieved party,

4   of the facts constituting the fraud or mistake.").  Thus, because Landmark has adequately

5   pleaded a claim of fraudulent concealment, it does not "appear[] beyond doubt that the plaintiff

6   can prove **no set of facts** in support of [its fraud claim] that would entitle [it] to relief."

7   *Gilligan*, 108 F.3d at 248 (emphasis added) (citations omitted).[9]

8
              **b.    Landmark's First Amended Complaint Adequately Alleges The**
9                     **Existence Of Damage, And Need Not Allege The Amount Of Damage**

10      Defendants argue that in order to state a claim for fraud under California law, Landmark

11  is required to state the precise amount of damages that it has suffered.  (Defs.' Mem. at 13.)

12  Defendants contend that a failure to do so mandates dismissal of Landmark's fraud claim.  (*Id.*

13  at 13-14.)

14      Defendants confuse the existence of damage—a required element of fraud under

15  California law—with the amount of damage—a possible pleading requirement in California

16  state court.[10]    Under Rule 9(b) of the Federal Rules of Civil Procedure, which exclusively

17

18  _____

    [9] *See also Hart v. Gaioni*, 354 F. Supp. 2d 1127, 1130 (C.D. Cal. 2005) ("In assessing [a Rule
19  12(b)(6) motion], the court must assume the truth of the facts asserted within the complaint and
    assess whether those facts, and any legitimate inferences drawn from those facts, articulate **any
    basis** for relief.") (emphasis added).

20
    [10] It is unclear whether this is in fact a pleading requirement in California state court.  The
21  California Supreme Court has stated that while "it must be shown that the plaintiff, by reason of
    the fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights, as
22  distinguished from a mere injury to his feelings, . . . it will be sufficient if the facts alleged
    show that material injury will necessarily ensue from the fraud, although the amount of the
23  pecuniary loss is not stated."  *Spreckels v. Gorrill*, 152 Cal. 383, 388 (Cal. 1907).  *See also
    Lerner v. Ehrlich*, 222 Cal. App. 2d 168, 172-73 (Cal. Ct. App. 1963) (finding that a complaint
24  stated a cause of action for fraud even though no amount of damages was specified).  In
    addition, in *Nagy v. Nagy*, 210 Cal. App. 3d 1262 (Cal. Ct. App. 1989), the case Defendants
25  rely on, the primary issue was not that plaintiff failed to allege a definite amount of damage, but
    rather, that plaintiff failed to allege any actionable damage in the first place.  *See Nagy*, 210
26  Cal. App. 3d at 1269 ("Since we conclude that [plaintiff] has not successfully pled prior, or
    indeed any legally recognizable damages, damages for emotional distress alone are not
27  recoverable.").  In *Nagy*, plaintiff only alleged that the fraud caused him to suffer "emotional
    distress."  *Id.* at 1268.  Under California law, "[e]motional distress is not recoverable as an
28  element of damages for fraud."  *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 67 (Cal. Ct. App.

                                                                                          19

1  applies here, Landmark need only plead the fact that it has suffered damage as a result of

2  Defendants' concealment, not the precise amount of damage suffered. The FAC adequately

3  alleges the existence of damage to Landmark's intellectual property rights. (*See* FAC ¶¶ 30,

4  85.) Defendants' Motion to Dismiss Landmark's fraud claim should therefore be denied.

5       An element of fraud under California law is that plaintiff suffered damage resulting

6  from its reliance on defendant's misrepresentations or concealment. *City Solutions v. Clear*

7  *Channel Commc'ns, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004) (citing *Lazar v. Super. Ct.*, 12 Cal.

8  4th 631, 638 (Cal. 1996)). To establish liability for fraud under California law, a plaintiff need

9  only prove by a preponderance of the evidence the fact of damage, not the amount. *Id.*

10  (citations omitted). To the extent that a California state court has dismissed a fraud claim for

11  failure to plead a definite amount of damage, such dismissal was due to California state court

12  pleading requirements. *See Toscano v. Ameriquest Mortgage Co.*, No. CIV-F-07-0957, 2007

13  U.S. Dist. LEXIS 81884, at *17 (E.D. Cal. Oct. 24, 2007) (referring to the statement in *Nagy*

14  that "[a]n allegation of a definite amount of damage is essential to stating a cause of action" as

15  a "California pleading standard"); Defs.' Mem. at 3 (referring to the requirement that a plaintiff

16  state a specific amount of fraud damages as a "state pleading standard[]"). Even if such a

17  pleading requirement exists in California state courts, it does not apply to a fraud claim brought

18  in federal court. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal.

19  2005) ("While California law governs [the substantive state-law claim] the Federal Rules of

20  Civil Procedure govern the . . . claim procedurally with respect to the adequacy of pleadings.").

21       This case is like *Toscano v. Ameriquest Mortgage Co.* In *Toscano, the* plaintiff did not

22  specify the amount of damages resulting from the defendants' fraud. *Toscano*, 2007 U.S. Dist.

23  LEXIS 81884, at *17. The defendants moved under Rule 12(b)(6) to dismiss the plaintiff's

24  fraud claim. *Id.* at *2. The defendants argued that under *Nagy v. Nagy*, "[a] fraud cause of

25

26  1988). *See also Nagy*, 210 Cal. App. 3d at 1269 ("Although damages for emotional distress can be recovered in a fraud cause of action, such damages have been allowed only as an aggravation of other damages."). Likewise, the defect in *Abbot v. Stevens*, 33 Cal. App. 2d 242,

27  247 (Cal. Ct. App. 1955) was that plaintiff had not alleged any "legal injury," not that plaintiff had failed to quantify the injury.

28

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

1   action must specifically allege the amount of damage purportedly caused by the defendant's

2   actual fraud." *Id.* at *17.  Finding that in federal court there was no requirement to plead the

3   specific amount of fraud damages, the court held that it was enough that "[p]laintiff has alleged

4   that he suffered financial damages." *Id.* at *18.  *See also Alkayali v. Geni, Inc.*, No. SA CV 06-

5   1002 DOC (ANx), 2007 U.S. Dist. LEXIS 61950, at *9 (C.D. Cal. Apr. 11, 2007) (denying

6   motion to dismiss fraud claim because fraud claimants "need not now state the precise amount

7   of damages stemming from the alleged fraud").

8          In sum, the FAC adequately alleges pecuniary harm to Landmark's intellectual property

9   rights, and need not allege a precise amount of fraud damages.  (*See* FAC ¶¶ 30, 85.)  As a

10  result, Defendants' Motion to Dismiss Landmark's fraud claim should be denied.[11]

11                    **c.    Landmark's Fraud Claim Complies With Rule 9(b)**

12         Defendants argue in summary fashion that "for all the reasons discussed above in

13  relation to state law requirements, the actual fraud allegations lack the specificity to satisfy the

14  requirements of Rule 9(b)."  (*See* Defs.' Mem. at 14.)  But Defendants' arguments that the FAC

15  fails to allege all the substantive elements of fraud under California law do not implicate the

16  Rule 9(b) heightened pleading requirements.   And, as discussed above, an allegation of a

17  specific amount of fraud damages is not required by Rule 9(b).  Thus, Defendants have failed to

18  establish—indeed, they do not even attempt to establish—that Landmark's fraud claim fails to

19  comply with Rule 9(b).

20         Defendants also contend without explanation that "Landmark does not explain with

21  reasonable particularity 'why or how' the allegedly fraudulent 'statements are false or

22  misleading.'"  (Defs.' Mem. at 14.)  As discussed above, the crux of Landmark's fraud claim is

23  not affirmative false or misleading statements, but rather Defendants' *concealment* of the PTO

24  notice when Defendants had a duty to promptly inform Landmark of the notice.  (*See, e.g.*,

25  FAC ¶¶  25-30, 42, 75-76, 82-84.)  Whether a statement was false and misleading is not

26

27  _____

28  [11] Should the Court determine that Landmark is required to plead a precise amount of damages
    on its fraud claim in federal court, Landmark respectfully requests leave to amend to do so.

                                                                                                    21

1   relevant to Defendants' concealment.  In any event, Landmark's allegations about the pattern of

2   Defendants' false and deceptive statements do in fact set forth how and why those statements

3   are false and deceptive.  (*See id.* ¶¶ 36.a. ("These statements were false and deceptive because .

4   . . ."), 36.b. ("This statement was false and deceptive because . . . ."), 36.c. ("This statement

5   was false and deceptive because . . . ."), 36.d. ("These statements were false and deceptive

6   because . . . ."), 40. ("This statement was false and/or misleading because . . . .").)  Thus, there

7   is no basis under Rule 9(b) to dismiss Landmark's fraud claim.

8   **B.    Defendants' Rule 12(f) Motion Should Be Denied**

9         Defendants fail to establish that the allegations in paragraphs 45, 47, and 50 of the FAC

10  "could have no possible bearing on the subject matter of the litigation" and are "unduly

11  prejudicial" to Defendants.  These allegations establish why Landmark was unable to pursue its

12  claims against Defendants.  They are thus relevant to the timeliness of Landmark's claims in

13  this Court.  Moreover, the litigation privilege does not apply because Landmark does not

14  premise any direct liability on the basis of Defendants' litigation conduct.  As a result,

15  Defendants' Motion to Strike should be denied.

16        **1.    Rule 12(f) Legal Standard**

17        Rule 12(f) authorizes the Court to "order stricken from any pleading any . . . redundant,

18  immaterial, impertinent, or scandalous matter."  "[M]otions to strike are regarded with disfavor

19  because they are often used as delaying tactics, and because of the limited importance of

20  pleadings in federal practice."  *Hous. Rights Ctr., Inc. v. Moskowitz*, No. CV 04-2266 PA, 2004

21  U.S. Dist. LEXIS 28885, at *22 (C.D. Cal. Sept. 20, 2004).  "Motions to strike are generally

22  not granted unless it is clear that the matter to be stricken could have no possible bearing on the

23  subject matter of the litigation."  *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D.

24  Cal. 1992) (citation omitted).  "[A]llegations supplying background or historical material or

25  other matter of an evidentiary nature will not be stricken unless unduly prejudicial to

26  defendant."  *Id.*

27

28                                                                                    22

1

### 2.    The Litigation Privilege Does Not Apply Because Landmark Does Not Premise Any Direct Liability On Defendants' Litigation Conduct

2    Defendants' sole basis for asking the Court to strike the allegations in paragraphs 45,

3    47, and 50 of the FAC is that "Defendants' alleged conduct falls squarely within California's

4    litigation privilege."  (Defs.' Mem. at 15.)

5    Defendants are correct that under certain circumstances a party may be immunized from

6    liability for litigation conduct.  (*See* Defs.' Mem. at 16; *see also Kolar v. Donahue, McIntosh &*

7    *Hammerton*, 145 Cal. App. 4th 1532, 1540 (Cal. Ct. App. 2006) ("The litigation privilege

8    protects attorneys, judges, jurors, witnesses, and other court personnel *from tort liability* for any

9    'publication or broadcast' made '[i]n any ... judicial proceeding.'") (emphasis added) (citations

10    omitted).)

11    Here, the allegations in paragraphs 45, 47, and 50 do not directly impact Defendants'

12    liability for legal malpractice, negligence, breach of fiduciary duty, breach of implied contract,

13    and fraud.  Rather, these paragraphs provide background material pertinent to the timeliness of

14    Landmark's claims.  Specifically, from May 31, 2006 through May 20, 2008, Landmark was

15    unable to pursue its claims against Defendants in state or federal court because of Defendants'

16    Motion to Stay (FAC ¶¶ 45, 47) and Demurrer (FAC ¶ 50) filed in state court.  Unlike here, in

17    all the cases Defendants cite in which the privilege was applied, privileged litigation conduct or

18    statements were being asserted as *the basis* for liability.[12]

19    ## IV.    CONCLUSION

20    For all the foregoing reasons, Landmark respectfully requests that the Court deny

21    Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

22

23    —————————————

[12] *See Silberg v. Anderson*, 50 Cal. 3d 205, 212 (Cal. 1990); *Rubin v. Green*, 4 Cal. 4th 1187

24    (Cal. 1993); *Neville v. Chudacoff*, 160 Cal. App. 4th 1255 (Cal. Ct. App. 2008); *Adams v. Super. Ct.*, 2 Cal. App. 4th 521 (Cal. Ct. App. 1992); *MGA Entm't, Inc. v. Mattell, Inc.*, No. CV

25    05-2727, 2005 U.S. Dist. LEXIS 18594 (C.D. Cal. Aug. 25, 2005).  The court in *MGA Entertainment* distinguishes between litigation conduct that forms the "basis" for plaintiff's

26    claim from that which is merely "evidence" supporting plaintiff's claim. *MGA Entm't, Inc.*, 2005 U.S. Dist. LEXIS 18594, at *37 n.10.  Under California law, the former falls squarely

27    within the privilege while the latter does not.  *Id.* (noting that the "privilege applies where litigation-related conduct is 'the actionable wrong'" or "provide[s] 'the nuclei' for causes of

28    action") (citations omitted).

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE—Case No. 5:08-cv-2581 JF**

and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) in their entirety. Should the Court be inclined to grant Defendants' Motion to Dismiss Landmark's legal malpractice, negligence, breach of fiduciary duty, and breach of implied contract claims for failure to plead facts necessary to toll the limitations statute or to invoke the doctrine of equitable estoppel, Landmark respectfully requests leave to amend. In addition, should the Court be inclined to grant Defendants' Motion to Dismiss Landmark's fraud claim for failure to plead all the required elements of fraud under California law or for failure to comply with Rule 9(b), Landmark respectfully requests leave to amend.

Respectfully submitted,

Dated: August 29, 2008                    MacPHERSON KWOK CHEN & HEID LLP

By _____/Clark S. Stone/_____
CLARK S. STONE
Attorneys for Plaintiff
LANDMARK SCREENS LLC

24