1   CLARK S. STONE (SBN 202123)
    STEVEN M. LEVITAN (SBN 148716)
2   INCHAN A. KWON (SBN 247614)
    **MacPHERSON KWOK CHEN & HEID LLP**
3   2033 Gateway Place, Suite 400
    San Jose, California 95110
4   Phone:  (408) 392-9250
    Facsimile: (408) 392-9262
5   email:
    cstone@macpherson-kwok.com
6   slevitan@macpherson-kwok.com
    ikwon@macpherson-kwok.com
7

8   EDWARD J. MCINTYRE (SBN 80402)
    WILLIAM N. KAMMER (SBN 53848)
9   **SOLOMON WARD SEIDENWURM & SMITH, LLP**
    401 B Street, Suite 1200
10  San Diego, California 92101
    Phone: (619) 231-0303
11  Facsimile: (619) 231-4755
    email:
12  emcintyre@swsslaw.com
    wkammer@swsslaw.com
13

14  Attorneys for Plaintiff
    LANDMARK SCREENS, LLC

15

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                        SAN JOSE DIVISION

19

20  LANDMARK SCREENS, LLC, a Delaware       Case No: 5:08-cv-2581 JF (HRL)
    Limited Liability Company,
21                                          **SECOND AMENDED COMPLAINT**
                    Plaintiff,              **FOR LEGAL MALPRACTICE,**
22                                          **NEGLIGENCE, BREACH OF**
         v.                                 **FIDUCIARY DUTY, BREACH OF**
23                                          **CONTRACT, AND ACTUAL FRAUD**

24  MORGAN, LEWIS & BOCKIUS LLP, a limited  **DEMAND FOR JURY TRIAL**
    liability partnership and THOMAS D. KOHLER,
25  an individual,

26                  Defendants.

27

28

For its Second Amended Complaint, Plaintiff Landmark Screens, LLC alleges as follows:

## THE PARTIES

1.    Plaintiff LANDMARK SCREENS, LLC ("Plaintiff" or "Landmark") is a Delaware limited liability company with its principal place of business at 1068 East Meadow Circle, Palo Alto, Santa Clara County, California 94303.

2.    Landmark is informed and believes, and thereon alleges, that Defendant MORGAN, LEWIS & BOCKIUS LLP ("MLB" or collectively with Kohler, "Defendants") is a limited liability partnership with law offices throughout the United States and California, including offices at 2 Palo Alto Square, 3000 El Camino Real, Suite 700, Palo Alto, Santa Clara County, California 94306.  MLB is organized and existing under the laws of the State of Pennsylvania and lists its principal executive office at 1701 Market Street, Philadelphia, Pennsylvania 19103.  At all times alleged herein, MLB held itself out as having specialized knowledge and skill in patent prosecution and filing.

3.    Landmark is informed and believes, and thereon alleges, that as of the filing date of this action Defendant THOMAS D. KOHLER ("Kohler" or collectively with MLB, "Defendants") was an individual practicing law as a partner of Defendant MLB at One Market, Spear Street Tower, San Francisco, California 94105.  Landmark is further informed and believes, and thereon alleges, that, during a substantial portion of the times alleged herein, Kohler was a partner of the law firm of Pennie & Edmonds LLP ("Pennie") and engaged in the practice of law at Pennie & Edmond's offices located at 3300 Hillview Avenue in Palo Alto, Santa Clara County, California and also practiced law for MLB in Palo Alto, Santa Clara County, California during at least a portion of 2004.  Landmark is further informed and believes, and thereon alleges, that subsequent to the filing of the First Amended Complaint in this action, Kohler became employed by the law firm of Downs Rachlin Martin PLLC at 199 Main Street, Burlington, Vermont 05402.  At all times alleged herein, Kohler held himself out as having specialized knowledge and skill in patent prosecution and filing.

**JURISDICTION**

4.      This is an action for legal malpractice, negligence, breach of fiduciary duty, and breach of implied-in-fact contract in connection with legal services provided in an effort to procure a United States patent and actual fraud in connection with Defendants' intentional concealment of the malpractice.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, in that Landmark's claims arise under federal patent law and require resolution by this Court of a substantial contested question of federal patent law.  *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld*, 504 F.3d 1262 (Fed. Cir. 2007) ("*Air Measurement*") and *Immunocept, LLC v. Fulbright & Jaworski*, *LLP* ("*Immunocept*"), 504 F.3d 1281 (Fed. Cir. 2007).

**VENUE**

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that at the time this action was filed Defendants resided (and MLB continues to reside) in this judicial district and a substantial part of the events or omissions giving rise to Landmark's claims occurred in this district.

**INTRADISTRICT ASSIGNMENT**

6.      Pursuant to Civil L.R. 3-2(c), assignment of this case to the San Jose Division is proper because this action arises in Santa Clara County, California, and a substantial part of the errors or omissions which give rise to Landmark's claims occurred in Santa Clara County, California.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**Landmark's Electronic Billboard**

7.      Since 2000, Landmark has been in the business of conducting pioneering development and implementation of a two-sided, electronically-controlled, outdoor light emitting diode ("LED") display, or electronic billboard.

8.      Landmark's revolutionary electronic billboard consists of a high-resolution LED display screen, measuring 34 feet wide and 19 feet high, and associated proprietary control systems and software, including "smart" technology for automatically adjusting for all lighting

conditions, maximizing clarity and visibility.  With its capability to display 36,600 discernibly different colors in a single image, Landmark's electronic billboard can display extremely high quality images and graphics, at color ranges and contrasts that exceed high definition television ("HDTV") quality and brilliance.

9.    Landmark's revolutionary electronic billboard has been in operation along U.S. Highway 101 in San Carlos, California since December 2000.  Mounted 40 feet above the ground, Landmark's electronic billboard is visible to both directions of traffic at distances between one-half to two-thirds of a mile, and is seen by an estimated seven million viewers per month.  Companies placing advertisements on Landmark's electronic billboard include Sun Microsystems, Intel, Disney, and United Airlines.

10.    Landmark's electronic billboard is a pioneering invention that is revolutionizing the outdoor advertising industry.  Its large size and high quality images, combined with the ability to display different images up to ten times per minute, make it a highly noticed and effective method for display advertising as compared to traditional static print billboards.  A Harris Interactive study concluded that Landmark's electronic billboard was six times more effective as an advertising medium than conventional static billboards, with the majority of the survey respondents stating that they noticed Landmark's electronic bulletin board every time they drive by.

11.    In addition to its high-quality and effective LED display, Landmark's electronic billboard provides significant advantages for advertisers over traditional static print billboards. Content for the electronic billboard is provided by advertisers in digital format, thus significantly reducing time-to-market and eliminating the printing, shipping, and additional production costs associated with conventional billboards.  Additionally, Landmark's unique online management of the electronic billboard content allows for fast changes of advertising materials based on changing business conditions, as well as providing the means for multiple advertisers to share the same advertising space, or for a single advertiser to place multiple images, each with varying display times, on the highly visible LED screen.

12.   The use of high-definition electronic displays in place of conventional static print billboards is projected to capture a significant portion of the future spending in the outdoor advertising market, a market currently estimated at greater than $5.5 billion.  In order to compete in this lucrative and rapidly developing marketplace, Landmark took steps to procure both United States and international patent protection on the unique and valuable aspects of Landmark's pioneering electronic billboard, as to allow Landmark to become a key player in the development, sales, and marketing of electronic billboards and related advertising and services.

### November 2000: Landmark Retains Pennie And Kohler To Patent Landmark's Electronic Billboard

13.   In connection with patenting its pioneering development work, on or about November 17, 2000 at Palo Alto, Santa Clara County, California, Landmark retained and employed the Pennie law firm and Kohler to represent Landmark as Landmark's attorneys at law in connection with all appropriate patent and intellectual property filings worldwide in order to patent Landmark's inventions conceived in connection with development of the electronic billboard.  At such time and place, Pennie & Edmonds and Kohler accepted such employment and agreed to perform such services for Landmark.

14.   As patent counsel to Landmark, Pennie and Kohler owed Landmark duties of care commensurate with the specialized standards of legal practice within this area.  In the course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed trust and confidence on Pennie and Kohler.  Pennie and Kohler accepted and acknowledged this fiduciary responsibility to Landmark regarding these matters.

15.   Landmark is informed and believes and thereon alleges that in connection with this representation, on or about January 9, 2002, Pennie and Kohler filed a patent application with the United States Patent and Trademark Office ("PTO") on Landmark's pioneering electronic billboard, said application including 72 claims directed to different aspects of Landmark's inventions.  This application was assigned Application No. 10/045,096 ("the '096 application"), and has since issued as U.S. Patent No. 6,639,574 ("the '574 patent").

16.    Landmark is informed and believes and thereon alleges that, on or about May 6, 2003, in response to a restriction requirement by the PTO, Pennie and Kohler elected to pursue claims 26-31 and 56-72 covering Landmark's invention in the '096 application, and cancelled the remaining claims, with patent protection on the remaining claims to be obtained through a "divisional application" claiming the same filing date as the '096 application.

17.    On July 10, 2003, the PTO published the '096 application in full.  Landmark is informed and believes and thereon alleges that at all relevant times Pennie and Defendants were aware of this fact.

18.    On or about August 13, 2003, Pennie and Kohler filed a divisional application with the PTO on Landmark's inventions, including in this divisional application those novel and valuable claims covering Landmark's inventions that had earlier been cancelled in response to the PTO's restriction requirement on the '096 application.  This application was assigned Application No. 10/640,916 ("the '916 divisional application").

19.    Pennie and Kohler failed to properly submit to the PTO the '916 divisional application, which included those claims covering novel and valuable aspects of Landmark's inventions, by at least the following negligent errors and/or omissions:  (a) failing to include a copy of the specification and drawings with the '916 divisional application, as required by the PTO, thus rendering Landmark's divisional application incomplete; (b) submitting an obsolete and out of date transmittal letter with the '916 divisional application that failed to contain an incorporation by reference statement concerning the specifications and drawings filed with the '096 application, thus rendering Landmark's divisional application incomplete; and (c) failing to utilize a "postcard receipt," method by which the PTO would have notified Pennie, MLB, and Kohler in a timely manner of the missing portions of the '916 divisional application.

20.    On or about October 28, 2003, the earlier-filed '096 application was issued as the '574 patent by the PTO.

**January 2004: Kohler Moves to MLB**

21.    Landmark is informed and believes and thereon alleges that, on or about January 1, 2004, the Pennie partnership entered dissolution and Kohler ceased practicing law as a partner of Pennie and joined the law firm of MLB, working out of Pennie's offices in Palo Alto, California for at least a portion of 2004.

22.    On or about April 13, 2004, Landmark executed a Revocation and Power of Attorney with the PTO appointing MLB as Landmark's attorney in connection with the '574 patent and the '916 divisional application, resulting in the creation of an attorney-client relationship between Landmark and MLB, and continuing Landmark's attorney-client relationship with Kohler, to represent Landmark as Landmark's attorneys at law in connection with all appropriate patent and intellectual property filings worldwide in order to patent any and all inventions conceived in connection with development of Landmark's electronic billboard. At such time and place, Defendants accepted such employment and agreed to perform such services for Landmark.

23.    As patent counsel to Landmark, Defendants owed Landmark duties of care commensurate with the specialized standards of legal practice within this area.  In the course of the relationship, there existed a fiduciary relationship, wherein Landmark reposed trust and confidence on Defendants.    Defendants accepted and acknowledged this fiduciary responsibility to Landmark regarding these matters.

**June 2004: Defendants Receive The Notice Of Incomplete '916 Divisional Application And Begin Concealing The Notice And The Malpractice From Landmark**

24.    On or about June 22, 2004, by letter, the PTO notified Pennie, MLB, and Kohler of the incomplete nature of the August 13, 2003 '916 divisional application that Pennie and Kohler had submitted to the PTO.

25.    Commencing on or about June 22, 2004, at least MLB partners Kohler and Michael J. Lyons ("Lyons") were aware of Kohler's malpractice in connection with the August 13, 2003 filing of Landmark's '916 divisional application and the June 22, 2004 notice from the PTO, yet each failed to timely and fully inform their current client, Landmark, of this

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

6

significant and material development affecting Landmark's valuable patent rights as required by at least their duty to keep the client informed and duty of loyalty to a client, resulting in further harm to Landmark.

26.   Landmark is informed and believes and thereon alleges that, in violation of the duties of care commensurate with the specialized standards of legal practice within the patent prosecution area, the fiduciary duty to keep the client informed, and their duty of loyalty to a client, Defendants intentionally failed to timely disclose to Landmark this significant and material development affecting Landmark's valuable patent rights, and instead intentionally and actively embarked on a deceptive course of action by which Defendants, and each of them, actively concealed from Landmark the nature of Pennie's and Kohler's negligent actions in connection with the August 13, 2003 filing of the '916 divisional application.

27.   Up until June 22, 2004, in connection with patent prosecution work for Landmark, Kohler timely sent copies of all correspondence to and from the PTO to Landmark concerning the '096 application and the '916 divisional application.

28.   However, upon receipt of the June 22, 2004 notice from the PTO concerning the improper filing of the '916 divisional application, in violation of at least the duty of loyalty and duty to keep the client informed of material matters and/or communications from the PTO concerning the representation, as required by both the California and PTO rules of attorney conduct, and in an effort to conceal the malpractice from Landmark, Defendants ceased sending copies of documents received from and sent to the PTO that would have alerted Landmark to the malpractice committed in connection with the filing of the '916 divisional application and Defendants' subsequent actions, which in and of themselves were also malpractice.

29.   Kohler's practice of timely sending copies of all correspondence to and from the PTO to Landmark prior to June 22, 2004 coupled with Defendants' failure to timely send Landmark a copy of the June 22, 2004 notice evidence Defendants' intent to conceal the malpractice from Landmark and intent to induce Landmark, through reliance on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional

application, to continue to employ Defendants as Landmark's attorneys in connection with patenting Landmark's digital LED billboard inventions.

30.    Landmark is informed and believes and thereon alleges that Defendants' concealment of the incomplete nature of the '916 divisional application was intended, among other things, to conceal Kohler's malpractice in connection with the improper filing of the '916 divisional application from Landmark and to induce Landmark to extend Defendants' implied-in-fact legal services agreement and to continue to retain Defendants as prosecution counsel for the '916 divisional application and related intellectual property matters.

31.    Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application deprived Landmark of the opportunity to take steps that would have prevented the loss of Landmark's valuable and pioneering patent rights, which steps are set forth in more detail in paragraphs 35 to 42 below.  The June 22, 2004 notice from the PTO required that Defendants respond to the notice within two months of the date of the notice, or August 23, 2004 (because August 22, 2004 was a Sunday).

32.    However, rather than timely and fully informing Landmark of the improper filing of the '916 divisional application and the notice from the PTO, and rather than timely submitting the missing portions of the '916 divisional application, Defendants instead embarked on a course of action designed to conceal the errors made in connection with the '916 divisional application, which course of action ultimately caused the loss of Landmark's valuable and pioneering patent rights.

33.    In the June 22, 2004 notice, the PTO stated that in addition to the missing portions of the '916 divisional application, a newly executed oath or declaration by the inventor must be submitted.  On or about July 9, 2004, Kohler drafted a letter to Landmark requesting that the inventor, Dr. Paul Scheibe, sign a new inventor's declaration.  In a further effort to conceal the malpractice from Landmark, Defendants did not send this letter to Landmark or Dr. Scheibe before responding to the June 22, 2004 notice.

**August 2004: On The Last Possible Day To Respond To The June 22, 2004**
**Notice, Defendants File An Adversary Petition In The PTO And Continue**
**To Conceal The Notice And The Malpractice From Landmark**

34.   Landmark is informed and believes and thereon alleges that, in furtherance of their active efforts to conceal from Landmark the negligent actions in connection with the August 13, 2003 filing of the '916 divisional application, without Landmark's knowledge or consent and in further violation of their fiduciary duty to keep Landmark informed, on or about August 23, 2004, Defendants filed with the PTO a "Petition to Grant a Filing Date Pursuant to 37 C.F.R. §'s 1.183 and/or 1.53(e)" ("Petition"), by which Defendants attempted to convince the PTO to grant the '916 divisional application the earlier filing date of the '096 application, and which included the missing portions of the '916 divisional application.

35.   Had Defendants fully and timely notified Landmark of the incomplete nature of the '916 divisional application and the June 22, 2004 notice from the PTO, a number of steps were available to save Landmark's patent rights as claimed or disclosed in the '916 divisional application.

36.   First, the missing portions of the '916 divisional application could have been submitted to the PTO prior to July 10, 2004.

37.   Second, a new patent application covering the patent rights as claimed or disclosed in the '916 divisional application could have been submitted to the PTO prior to July 10, 2004.

38.   Third, prior to July 10, 2004 an effective petition in response to the June 22, 2004 notice could have been submitted to the PTO.  Such a petition would have included the missing portions of the '916 divisional application.

39.   Fourth, on or after July 10, 2004 and on or before August 23, 2004, an effective petition in response to the June 22, 2004 notice could have been submitted to the PTO.

40.   Any of these steps, individually or collectively, would have resulted in the '916 divisional application or the new patent application being granted a filing date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

41.   Had Defendants fully and timely notified Landmark of the incomplete nature of the '916 divisional application and the June 22, 2004 notice from the PTO, Landmark would

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,
BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

9

have immediately consulted other counsel who would have advised Landmark of the steps that must be taken to save Landmark's patent rights as claimed or disclosed in the '916 divisional application.

42.    As a result of such consultation with other counsel, Landmark would have instructed Defendants or other counsel to (a) submit the missing portions of the '916 divisional application to the PTO prior to July 10, 2004, (b) file a new patent application covering the patent rights as claimed or disclosed in the '916 divisional application prior to July 10, 2004, and (c) file prior to July 10, 2004 an effective petition (which included the missing portions of the '916 divisional application) in response to the June 22, 2004 notice or (d) file on or after July 10, 2004 and on or before August 23, 2004, an effective petition in response to the June 22, 2004 notice.  Whether taken by Defendants or other counsel, such steps, individually or collectively, would have resulted in the '916 divisional application or the new patent application being granted a filing date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

43.    Upon information and belief, in failing to timely and fully notify Landmark of the incomplete nature of the '916 divisional application, Defendants intended to induce Landmark to extend Defendants' implied-in-fact legal services agreement, to continue to retain Defendants as prosecution counsel for the '916 divisional application and related intellectual property matters, and not to consult other counsel about the incomplete nature of the '916 divisional application.

44.    Landmark actually and reasonably relied on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application by continuing to employ defendants, by continuing to retain Defendants as prosecution counsel for the '916 divisional application and related intellectual property matters, by not being able to direct Defendants' strategy for responding to the June 22, 2004 notice from the PTO, and by not being able to consult other counsel about how to respond to the June 22, 2004 notice from the PTO, which because of Defendants' concealment Landmark was not even aware of.

45.    Landmark's reliance on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application was justified because of Kohler's practice of timely sending copies of all correspondence to and from the PTO to Landmark prior to June 22, 2004 and because Defendants held themselves out as having specialized knowledge and skill in patent prosecution and filing.

46.    Had they not been lost, Landmark's patent rights would have covered at least the following inventions claimed or disclosed in the '916 divisional application: (a) methods for displaying an image on a four-color LED display; (b) methods for displaying an image on an LED display, including calibrating a workstation display and transferring an image to an LED display over a computer network; (c) a fault-tolerant method for displaying images on an LED display; and (d) a four-color LED display system.

### November 2004: The PTO Dismisses The Petition And Grants The '916 Divisional Application A Filing Date Of August 23, 2004

47.    On or about November 30, 2004, the PTO dismissed the Petition, stating unequivocally that the relief requested in the Petition was not warranted due to a "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice." Citing 35 U.S.C. § 111, the PTO accorded the '916 divisional application a filing date of August 23, 2004, the day Defendants submitted the missing portions of the '916 divisional application to the PTO.

48.    Landmark is informed and believes and thereon alleges that, on or about December 6, 2004, Defendants were informed of the PTO's decision dismissing the Petition.

49.    In or about early December 2006, after Defendants were informed of the PTO's decision dismissing the Petition, Landmark member Michael Wilson contacted Kohler by phone to check on the status of the '916 divisional application. During this conversation, Kohler told Wilson only that the patent had been "lost" without divulging any of the reasons for the loss of the patent, the June 22, 2004 notice from the PTO, or the filing of the Petition with the PTO. In response, Wilson requested that Kohler draft a letter to Landmark fully explaining the loss of the patent and also explaining what steps could be taken to recover the patent.

50.   Defendants' concealment of Pennie's and Kohler's improper and incomplete filing of the '916 divisional application, concealment of the PTO's notice of such improper and incomplete filing, and failure to correct the improper and incomplete filing resulted in the loss of Landmark's patent rights as claimed or disclosed in the '916 divisional application, as the '916 divisional application consequently could not claim "continuity" to the January 9, 2002 filing date for the '096 application because the '916 divisional application was not deemed "filed" prior to issuance of the '574 patent or the one-year anniversary of publication of the '096 application, and a new patent application was not filed prior to the one-year anniversary of publication of the '096 application.

**March 2005: For The First Time, Defendants Send Landmark**
**Written Notice Of The Incomplete '916 Divisional Application**
**But Continue To Conceal The Malpractice From Landmark**

51.   On March 29, 2005, in further violation of their fiduciary duty to keep Landmark informed, their duty of loyalty to Landmark, and in furtherance of their efforts to intentionally deceive and/or defraud Landmark as to the nature and consequences of the malpractice committed in connection with the '916 divisional application, Defendants sent a letter to Michael Wilson of Landmark concerning the '916 divisional application, a letter that Wilson had requested Defendants provide in December 2004 (the "March 2005 Letter").

52.   Defendants' failure to send Landmark a letter properly explaining the events of June through August 2004 until March 2005—despite a request for such letter from Landmark in December 2004—further evidences Defendants' intent to conceal the malpractice from Landmark and to induce Landmark to rely on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application.

53.   In the March 2005 Letter, Defendants purported to explain why the '916 divisional application was not accorded its original filing date.  The March 2005 Letter contained a number of false and deceptive statements designed to further conceal the malpractice from Landmark.  These statements include but are not necessarily limited to the following:

a.  "[T]he ['916 divisional] application was not accorded its original filing date because of a clerical error in filing this divisional application while the matter was still being handled at Pennie & Edmonds. . . . [I]n filing the ['916] divisional application a clerical error was made in not including with the application all of the necessary papers." These statements were false and deceptive because the PTO stated in its November 30, 2004 Decision Dismissing Defendants' Petition that attorney errors, not a clerical error, caused the PTO not to accord the '916 divisional application its original filing date. Specifically, the PTO concluded that the '916 divisional application's loss of its filing date resulted from Kohler's "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice" in using an out-of-date transmittal letter that did not contain an incorporation by reference statement, failing to utilize post-card receipt, and failing to file a specification or drawings.

b.  "[B]ecause of the long period of time taken by the Patent Office in acting on the ['916 divisional] application, there was not an opportunity to correct the filing [of the '916 divisional application]." This statement was false and deceptive because Defendants knew that "the long period of time taken by the Patent Office in acting on the ['916 divisional] application" did not deprive Defendants or Pennie of "an opportunity to correct the filing." As the PTO stated in denying the Petition, an applicant (through his counsel) "must be 'vigilant and active' in complying with the conditions for obtaining a patent." Landmark is informed and believes and thereon alleges that Defendants could have taken steps before or after receiving the June 22, 2004 notice from the PTO or filing the August 23, 2004 Petition that would have effectively corrected the filing of the '916 divisional application.

54.  Landmark is informed and believes and thereon alleges that the misrepresentations in the March 2005 Letter were intended by Defendants to continue to conceal from Landmark

Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application, and in fact did continue to conceal from Landmark Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application.

### April 2005: Defendants Send Landmark An Invoice For Services Performed In July And August 2004

55.   In or around April 2005, Defendants sent Landmark an invoice for fee services rendered (the "Invoice").  The Invoice detailed Defendants' work from July 20, 2004 through August 23, 2004 in researching and preparing the Petition.

56.   Prior to the Invoice, Defendants had sent invoices to Landmark on a monthly basis.

57.   Defendants' failure to send Landmark the Invoice in or about July, August, or September 2004, soon after Defendants' services were apparently rendered, further evidences Defendants' intent to conceal the malpractice from Landmark and to induce Landmark, through reliance on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application, to continue to employ Defendants.

### May 2005: Defendants Continue To Conceal The Malpractice From Landmark

58.   In or around May 2005, Michael Wilson of Landmark met in person with Kohler at Landmark's offices in Palo Alto, California.   At this meeting, Kohler misrepresented to Wilson that a senior partner at MLB was doing everything possible to rectify the situation. Landmark is informed and believes and thereon alleges that this misrepresentation was intended by Defendants to continue to conceal from Landmark the malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application, and in fact did continue to conceal from Landmark the malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application.

59.   In or around late summer or fall 2005, Landmark discovered the effects of Defendants' concealment of the June 22, 2004 notice from the PTO.  Prior to in or around late summer or fall 2005, given Defendants' continued assurances, Landmark's reposing of trust

1   and confidence in Defendants, and Landmark's lack of knowledge of patent law, Landmark

2   could not have discovered through reasonable diligence the effects of Defendants' concealment

3   of the June 22, 2004 notice from the PTO.

4        60.   Until on or about November 2, 2005, Defendants continued to represent Landmark

5   as Landmark's attorney at law in connection with Landmark's digital LED billboard inventions

6   and all appropriate patent and intellectual property filings worldwide in order to patent, protect

7   and encourage licensing of Landmark's unique and pioneering intellectual property and

8   technology concerning the electronic billboard.

9        **November 2005: Landmark Files An Action In Superior Court Against**
         **Defendants; Defendants Do Not Dispute Subject Matter Jurisdiction**

10

11       61.   On or about November 30, 2005, Landmark filed suit against Pennie, MLB, and

12  Kohler in Santa Clara County Superior Court, Case No. 1-05-CV-053568, alleging legal

13  malpractice and related claims in connection with the '096 application and the '916 divisional

14  application.

15       62.   Through Defendants' conduct and statements in the Superior Court case,

16  Defendants purposefully communicated that they did not and would not dispute the Superior

17  Court's subject matter jurisdiction. Landmark was induced by such conduct and statements into

18  not filing this case in federal court.

19       63.   In the Superior Court case, Kohler was dually represented by Pennie counsel and

20  by MLB counsel.

21       64.   On January 26, 2006, Kohler filed his Answer to Landmark's Superior Court

22  complaint.  Kohler did not assert lack of subject matter jurisdiction in his Answer.  Kohler's

23  Answer was signed by his counsel, Matthew Rawlinson, Esq. of Latham & Watkins LLP and

24  Harlan B. Watkins, Esq. of Murphy, Pearson, Bradley & Feeney.

25       65.   On January 26, 2006, MLB filed its Answer to Landmark's Superior Court

26  complaint.  MLB did not assert lack of subject matter jurisdiction in its Answer.  MLB's

27  Answer was signed by its counsel, James A. Murphy, Esq. of Murphy, Pearson, Bradley &

28  Feeney.  MLB's Answer was nearly identical to Kohler's Answer.

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,    15
BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

66.   On February 2, 2006, Pennie filed its Answer to Landmark's Superior Court complaint.   For its First Affirmative Defense in its Answer, Pennie asserted lack of subject matter jurisdiction.   Pennie's Answer was signed by its counsel, Matthew Rawlinson, Esq. of Latham & Watkins LLP, one of the counsel who also signed Kohler's Answer.

67.   Kohler's Answer and MLB's Answer each asserted all but two of the twelve Affirmative Defenses asserted by Pennie.   One of the two Affirmative Defenses asserted by Pennie but not asserted by MLB or Kohler was lack of subject matter jurisdiction.   Upon information and belief, Defendants knew that Pennie intended to assert lack of subject matter jurisdiction but Defendants deliberately chose not to assert lack of subject matter jurisdiction because Defendants did not believe the Superior Court lacked subject matter jurisdiction.

68.   By letter dated April 25, 2006, counsel for Landmark asked counsel for Pennie to explain the basis for its Affirmative Defense of lack of subject matter jurisdiction and asked Matthew Rawlinson, Esq., counsel for Pennie and Kohler, whether Pennie intended to raise the issue of subject matter jurisdiction with the Superior Court.   In the letter, counsel for Landmark also stated that "it would be a waste of judicial resources for the case to proceed without an early determination of this issue."

69.   The April 25, 2006 letter was also sent to Janet L. Everson, Esq. of Murphy, Pearson, Bradley & Feeney, who was counsel for MLB and co-counsel for Kohler.   Thus, Defendants knew that Landmark demanded an early determination of subject matter jurisdiction by the Superior Court.

70.   Neither MLB nor Kohler disputed Landmark's statement in the April 25, 2006 letter that "it would be a waste of judicial resources for the case to proceed without an early determination of [the issue of subject matter jurisdiction]."

71.   In their May 3, 2006 responses to form interrogatories propounded by Landmark in the Superior Court case, both Kohler and MLB never asserted subject matter jurisdiction as an affirmative defense, or alleged in any way that the Superior Court lacked subject matter jurisdiction over Landmark's claims.

72.    In its June 30, 2006 responses to special interrogatories propounded by Landmark in the Superior Court case, MLB never asserted subject matter jurisdiction as an affirmative defense, or alleged in any way that the Superior Court lacked subject matter jurisdiction over Landmark's claims.

73.    On June 27, 2006, Pennie and Kohler filed a Motion to Compel Arbitration and Stay Judicial Proceedings in the Superior Court case due to Pennie's and Kohler's asserted contractual right to arbitrate.

74.    On July 26, 2006, MLB filed a Notice of Joinder and Joinder to Motion to Compel Arbitration and Stay Judicial Proceedings or, in the Alternative, Motion to Abate the Action Pending Against Morgan, Lewis & Bockius Pending the Outcome of Arbitration.   In its Motion, MLB argued that it has a unity of interest with Pennie and Kohler.

75.    Upon information and belief, Defendants' asserted unity of interest with Pennie (except as to subject matter jurisdiction, which only Pennie disputed) and Kohler's dual representation by Pennie counsel and MLB counsel led Landmark to believe that Defendants had made a deliberate decision not to dispute the Superior Court's subject matter jurisdiction (unlike Pennie, which made the opposite decision).

76.    As a direct result of the aforesaid conduct and statements of Defendants, Landmark reasonably believed that Defendants did not and would not dispute the Superior Court's subject matter jurisdiction, and were thereby lulled into not filing this case in federal court.

77.    Upon information and belief, it appears to have been Defendants' intent to lull Landmark into not filing this case in federal court by communicating that Defendants did not and would not dispute the Superior Court's subject matter jurisdiction.

78.    Since at least May 31, 2006, Landmark has been unable to pursue its claims against MLB and Kohler in his capacity as an MLB partner in the Superior Court due to MLB's refusal to respond to written discovery.   MLB's refusal was based on a Motion to Stay filed by MLB, Pennie, and Kohler in the Superior Court.

**September 2006: The Superior Court Action Is Stayed**
**Pending An Arbitration Between Pennie And Landmark**

79.   On or about September 26, 2006, pursuant to the terms of the Legal Services Agreement entered into between Landmark and Pennie, the Santa Clara County Superior Court ordered arbitration as to Landmark's claims against Pennie and Landmark's claims against Kohler arising out of Pennie's representation of Kohler.  The Superior Court did not order arbitration as to Landmark's claims against MLB or Landmark's claims against Kohler arising out of MLB's representation of Landmark.

80.   The Superior Court's September 26, 2006 order stayed Landmark's case against MLB and Kohler in his capacity as an MLB partner in its entirety pending the outcome of the arbitration proceeding between Landmark and Pennie, thus further preventing Landmark from pursuing its claims against MLB and Kohler in his capacity as an MLB partner.

**March 2008: Landmark Settles With Pennie;**
**The Superior Court Stay Is Subsequently Lifted**

81.   Landmark's claims against Pennie and Kohler in his capacity as a Pennie partner were the subject of a AAA arbitration proceeding that concluded in March 2008 with a settlement between the parties.  MLB was not a party to the AAA arbitration proceeding.

82.   In connection with settlement of the AAA arbitration, Landmark provided a full release to Pennie.  However, Landmark's release of Kohler in the AAA arbitration was limited only to Kohler's acts and omissions while a partner at Pennie, and Landmark explicitly reserved its rights to pursue any and all claims arising as a result of conduct after January 1, 2004 against Defendants.

**April 2008: Defendants First Dispute Subject Matter Jurisdiction**

83.   Since at least April 2, 2008, Landmark has been further prevented from pursuing its claims against MLB and Kohler in his capacity as an MLB partner in the Superior Court due to Defendants' refusal to respond to written discovery and deposition notices.  Defendants' refusal was based on their filing a demurrer to Landmark's First Amended Complaint in the Superior Court for lack of subject matter jurisdiction, which demurrer was filed April 28, 2008. In their demurrer, Defendants primarily relied on two October 15, 2007 decisions from the U.S.

Court of Appeals for the Federal Circuit, *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld*, 504 F.3d 1262 (Fed. Cir. 2007) ("*Air Measurement*") and *Immunocept, LLC v. Fulbright & Jaworski, LLP* ("*Immunocept*"), 504 F.3d 1281 (Fed. Cir. 2007).

84.    Defendants' primary reliance on *Air Measurement* and *Immunocept* in their demurrer further indicates that prior to at least October 15, 2007, the date the *Air Measurement* and *Immunocept* decisions came out, Defendants did not intend to dispute subject matter jurisdiction.

**May 2008: The Superior Court Sustains Defendants'
Demurrer For Lack Of Subject Matter Jurisdiction**

85.    On or about May 20, 2008, the Santa Clara County Superior Court sustained Defendants' demurrer to Landmark's First Amended Complaint.  The court found it lacked subject matter jurisdiction because Landmark's claims required resolution of a substantial question of federal patent law under *Air Measurement* and *Immunocept*.

86.    Upon information and belief, the Superior Court understood, based on Defendants' representation, that if Landmark's Superior Court action were dismissed, Landmark's claims would be viable in federal court.  More specifically, Defendants represented to the Superior Court that "if [Landmark] wants to pursue this case in Federal Court, [it is] free to do so."  Evidencing its reliance on this statement, the Superior Court stated, "Now, as I take it from what has been said here, and there is nothing in the papers that has said that if it is without leave to amend that [Landmark is] without recourse and [it] couldn't go down the street to our colleagues in the Federal Court presumably."

87.    In sum, given that Pennie disputed subject matter jurisdiction in the Superior Court, Defendants knew that subject matter jurisdiction could be disputed; Defendants knew that Landmark required an early determination of any subject matter jurisdiction dispute; Defendants purposefully communicated that they did not intend to dispute subject matter jurisdiction; Landmark relied on Defendants' communicated intent not to dispute subject matter jurisdiction by not filing this action in federal court; and if Landmark's claims are dismissed as

a result of not filing this action within the one-year statute of limitations under California Code of Civil Procedure § 340.6, Landmark will be injured as a result of such reliance.

## FIRST CAUSE OF ACTION

### Legal Malpractice - Against All Defendants

88.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1- 87 above.

89.    At all times alleged above, Defendants, and each of them, failed to exercise reasonable care, skill and diligence in performing legal services for Landmark, and were negligent.

90.    Defendants' wrongful actions in failing to timely and fully inform Landmark of Pennie and Kohler's incomplete filing of the '916 divisional application and the failure to take proper steps to correct, or to at least minimize, the harm to Landmark caused by the incomplete filing of the '916 divisional application, the intentional concealment of, and the failure to fully and properly inform Landmark as to the status of, the '916 divisional application and Defendants' Petition to the PTO resulted in the loss of valuable and pioneering patent rights and has damaged Landmark.

91.    Landmark is informed and believes and thereon alleges that, had Defendants exercised proper care, skill and diligence in the foregoing matter, Landmark's valuable and pioneering divisional patent or new patent application for the electronic billboard would have been afforded a filing date sufficient to preserve and provide to Landmark valuable patent rights to Landmark's digital LED billboard inventions.

92.    As a proximate result of Defendants' negligence described herein, Landmark has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Negligence - Against All Defendants

93.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-92 above.

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

20

94.    As Landmark's patent counsel, Defendants, and each of them, had a duty to exercise reasonable skill in performing legal and other patent-related services for Defendants.

95.    In breach of this duty, Defendants, and each of them, failed to take proper steps to correct, or to at least minimize, the harm to Landmark caused by the incomplete filing of the '916 divisional application, and failed to fully and properly inform Landmark as to the status of the '916 divisional application and Defendants' Petition to the PTO, resulting in the loss of valuable and pioneering patent rights and has damaged Landmark.

96.    As a proximate result of Defendants' negligence described herein, Landmark has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Breach of Fiduciary Duty - Against All Defendants**

97.    Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-96 above.

98.    An attorney-client relationship is a fiduciary relationship of the very highest character.

99.    The scope of an attorney's fiduciary duties to a client are determined as a matter of law based on the California Rules of Professional Conduct together with other statutes and general principles relating to other fiduciary relationships.    As a fiduciary, an attorney's obligations include the duty of care, the duty of loyalty, and the duty to keep the client informed.

100.    By virtue of the attorney-client relationship that existed between Defendants and Landmark, Defendants, and each of them, owed to Landmark a fiduciary duty.

101.    By virtue of Landmark having placed confidence and trust in the fidelity and integrity of Defendants, and entrusting Defendants with the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent Landmark's digital LED billboard inventions and protect and make possible licensing of the inventions, a confidential relationship existed at all relevant times herein mentioned between one or more of Defendants and Landmark.

102.   In spite of having voluntarily accepted the trust and confidence of Landmark with regard to the prosecution of all appropriate patent and intellectual property filings worldwide in order to patent Landmark's digital LED billboard inventions and thus to protect and encourage licensing of the inventions, Defendants, and each of them, violated and abused the trust and confidence of Landmark by failing to properly and diligently perform legal services for Landmark and by intentionally concealing and failing to fully and properly inform Landmark of the status of the '916 divisional application and Defendants' Petition to the PTO.

103.   The above-described actions by Defendants, and each of them, were contrary to the best interests of Landmark, and were done in the absence of good faith with a reckless disregard for Defendants' fiduciary duties and Landmark's rights and with intent to defraud, under circumstances Defendants knew would damage Landmark.

104.   As a proximate result of the acts of Defendants described herein, Landmark has been damaged in an amount to be proven at trial.

105.   The above-described actions by Defendants, and each of them, were done with bad faith, malice, fraud and oppression and with reckless disregard of the likelihood that the harm would result in substantial damages to Landmark.   Accordingly, Landmark seeks an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract - Against Morgan, Lewis & Bockius LLP

106.   Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-105 above.

107.   Since at least as early as April 13, 2004, an implied-in-fact contract existed between MLB and Landmark.  Pursuant to this contract, MLB agreed to provide legal services to Landmark in connection with the patenting of Landmark's digital billboard inventions.

108.   MLB failed to timely, properly, and with due care render legal services to Landmark, in breach of its contract with Landmark.

109.   As a proximate result of the acts of MLB described herein, Landmark has been damaged in an amount to be proven at trial.

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

22

**FIFTH CAUSE OF ACTION**

**Actual Fraud - Against All Defendants**

110.  Landmark realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-109 above.

111.  Defendants concealed from Landmark the June 22, 2004 notice from the PTO, the malpractice committed in connection with the filing of the '916 divisional application, and Defendants' improper course of action to attempt to correct the malpractice.

112.  The June 22, 2004 notice from the PTO, the malpractice committed in connection with the filing of the '916 divisional application, and Defendants' improper course of action to attempt to correct the malpractice were material to Landmark's patent rights.

113.  Defendants' misrepresentations in the March 2005 Letter that (a) "the ['916 divisional] application was not accorded its original filing date because of a clerical error in filing this divisional application while the matter was still being handled at Pennie & Edmonds", (b) "in filing the ['916] divisional application a clerical error was made in not including with the application all of the necessary papers", and (c) "because of the long period of time taken by the Patent Office in acting on the ['916 divisional] application, there was not an opportunity to correct the filing [of the '916 divisional application]" were intended by Defendants to continue to conceal from Landmark Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application, and in fact did continue to conceal from Landmark Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application.

114.  Kohler's misrepresentation to Michael Wilson of Landmark in the May 2005 meeting that a senior partner at MLB was doing everything possible to rectify the situation was intended by Defendants to continue to conceal from Landmark Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application, and in fact did continue to conceal from Landmark Defendants' malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application.

115. Defendants' concealment of the June 22, 2004 notice from the PTO, misrepresentations in their March 29, 2005 letter to Landmark, and misrepresentation made during Kohler's May 2005 meeting with Michael Wilson of Landmark were intended to induce reliance by Landmark.

116. Defendants' concealment of the June 22, 2004 notice from the PTO, misrepresentations in their March 29, 2005 letter to Landmark, and misrepresentation made during Kohler's May 2005 meeting with Michael Wilson of Landmark were intended, among other things, to continue to conceal the malpractice in connection with the improper filing of, and failure to correct, the '916 divisional application from Landmark.

117. Landmark is informed and believes and thereon alleges that Defendants' concealment and misrepresentations were intended by Defendants to induce Landmark (a) to extend the implied-in-fact legal services agreement with Defendants; (b) to continue to retain Defendants as prosecution counsel for the '916 divisional application and related intellectual property matters; (c) not to direct Defendants' strategy for responding to the June 22, 2004 notice from the PTO; and (d) not to consult other counsel about how to respond to the June 22, 2004 notice from the PTO.

118. Landmark actually relied on Defendants' concealment and misrepresentations by continuing to employ Defendants, by continuing to retain Defendants as prosecution counsel for the '916 divisional application and related intellectual property matters, by not being able to direct Defendants' strategy for responding to the June 22, 2004 notice from the PTO, and by not being able to consult other counsel about how to respond to the June 22, 2004 notice from the PTO, which because of Defendants' concealment Landmark was not even aware of.

119. Landmark's reliance on Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application was justified because of Kohler's practice of timely sending copies of all correspondence to and from the PTO to Landmark prior to June 22, 2004 and because Defendants held themselves out as having specialized knowledge and skill in patent prosecution and filing.

120. Defendants' failure to timely and fully notify Landmark of the incomplete nature of the '916 divisional application caused damages to Landmark.  Had Defendants fully and timely notified Landmark of the incomplete nature of the '916 divisional application and the June 22, 2004 notice from the PTO, Landmark would have instructed Defendants or other counsel to take the steps outlined in detail in paragraphs 35 to 42 above which would have resulted in the '916 divisional application or the new patent application being granted a filing date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

121. Had they not been lost, Landmark's patent rights would have covered at least the following inventions claimed or disclosed in the '916 divisional application: (a) methods for displaying an image on a four-color LED display; (b) methods for displaying an image on an LED display, including calibrating a workstation display and transferring an image to an LED display over a computer network; (c) a fault-tolerant method for displaying images on an LED display; and (d) a four-color LED display system.

122. As a proximate result of the acts of Defendants described herein, Landmark has been damaged in an amount to be proven at trial, and is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff LANDMARK SCREENS, LLC ("Landmark") prays for the following relief:

A.    That Landmark be awarded its actual damages, in an amount to be proven at trial;

B.    That Landmark be awarded its incidental and consequential damages in an amount to be proven at trial;

C.    That Landmark be awarded such exemplary and punitive damages as allowed by law;

D.    That Landmark be awarded its costs;

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

25

1       E.    That Landmark be awarded pre-judgment and post-judgment interest at the

2  maximum legal rate; and

3       F.    That Landmark be granted other and further relief as this Court may deem proper.

5  Dated:  November 3, 2008          MacPHERSON KWOK CHEN & HEID LLP

By: /s/ Clark Stone
CLARK S. STONE
Attorneys for Plaintiff
LANDMARK SCREENS, LLC

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

26

### DEMAND FOR JURY TRIAL

1

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LANDMARK

3    SCREENS, LLC hereby demands a trial by jury on all issues so triable in this action.

4

5    DATED:  November 3, 2008                    MacPHERSON KWOK CHEN & HEID LLP

6

7                                        By:  /s/ Clark Stone
                                              CLARK S. STONE
8                                             Attorneys for Plaintiff
                                              LANDMARK SCREENS, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY,
BREACH OF CONTRACT, AND ACTUAL FRAUD—Case No. 5:08-cv-2581 JF (HRL)

27