**\*\* E-filed October 21, 2009 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br>  v.<br><br>MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership and THOMAS D. KOHLER, an individual,<br><br>    Defendants.<br>_____/ | No. C08-02581 JF (HRL)<br><br>**(1) ORDER GRANTING IN PART DEFENDANT MORGAN, LEWIS & BOCKIUS LLP's MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND (2) INTERIM ORDER FOR *IN CAMERA* REVIEW OF DOCUMENTS**<br><br>**[Re: Docket No. 62]** |

Plaintiff Landmark Screens, LLC ("Landmark") hired defendant Thomas Kohler and the law firm Pennie & Edmonds LLP ("Pennie") to prosecute patents pertaining to electronic billboard technology. Several years later, Kohler joined defendant Morgan, Lewis & Bockius LLP ("MLB"). Subsequently, Landmark sued both defendants, alleging that they failed to promptly and properly advise it about a notice from the United States Patent and Trademark Office ("PTO") stating that a divisional patent application was incomplete. Landmark claims that on account of defendants' concealment and misrepresentation with respect to the notice, it lost patent rights in the divisional application claims.

MLB now moves to compel production of documents it alleges that Landmark and one of its outside counsel, The Patent Law Group, LLP ("PLG"), have improperly withheld on privilege grounds and also to compel an *in camera* review of such documents. Landmark opposes the

motion.[1] Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court grants MLB's motion in part.

## DISCUSSION

**A.　Background**

In 2002, defendant Kohler, then with Pennie, filed on behalf of Landmark an initial patent application (the " '096 application") containing seventy-two claims for electronic billboard technology. (Trinidad Decl. Ex. 1.) The PTO required Landmark to cancel most of these claims during the application's prosecution, but later granted a patent with twenty-three claims (the " '574 patent"). (Second Amended Compl. ("SAC") ¶ 16; Trinidad Decl. Ex. 2.) Kohler and Pennie also filed a divisional patent application that included the cancelled claims and that claimed the benefit of the '096 application's earlier filing date. (SAC ¶ 18; Mot. 4.)

By January 2004, Pennie had dissolved and Kohler was with MLB. On June 22, 2004, the PTO issued a notice to Pennie, MLB, and Kohler indicating that the divisional application was incomplete (the "Notice")—and thus did not yet have a filing date. Kohler responded by petitioning the PTO in August 2004 for a filing date. However, the PTO dismissed the petition in late November 2004 and confirmed that the divisional application would not receive the benefit of the '096 application's earlier filing date. In early December 2004, Kohler told Landmark that the divisional application claims had been "lost." (Mot. 4; Opp'n 3–4.) Landmark asked for a letter explaining the situation, which Kohler provided in March 2005. (Opp'n 4.) Then, in October 2005, MacPherson Kwok Chen & Heid LLP ("MPK"), now Haynes & Boone LLP, filed on behalf of Landmark a reissue application for the '574 patent in an attempt to add unclaimed matter to that patent, including the subject matter of the "lost" claims. (Mot. 5.)

In November 2005, Landmark sued Kohler, Pennie, and MLB in California state court for legal malpractice, negligence, and breach of fiduciary duty. (Trinidad Decl. Ex. 3.) After Landmark, Pennie, and Kohler (as a Pennie partner) reached a settlement through court-ordered arbitration, the state court dismissed the complaint on May 21, 2008 for lack of subject-matter

---

[1] PLG did not oppose MLB's motion to compel. However, at the motion hearing, Landmark informed the court that it had agreed to represent PLG's interests in this matter.

2

jurisdiction because the claims involved substantial issues of patent law. (Mot. 5, 7.) That same day, Landmark filed the instant litigation in federal court and later amended its complaint to include a claim for fraud. (Mot. 7.) This fraud claim, alleging that defendants fraudulently concealed material facts about the Notice, is now the only one remaining in the case.

**B.     Implied Waiver**

MLB argues that Landmark has waived by implication its attorney-client privilege and work-product immunity for documents concerning subjects it "put at issue" in the litigation. (Mot. 17.) In particular, MLB claims that Landmark has waived protection for items concerning the statute of limitations and causation.

In the Ninth Circuit,[2] courts apply the *Hearn* test to determine whether there is implied waiver. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). Implied waiver occurs where:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). If waiver occurs, it applies to both attorney-client privilege and work-product immunity. *Bittaker v. Woodford*, 331 F.3d 715, 722 n.6 (9th Cir. 2003). However, courts narrowly tailor implied waiver to produce only those documents necessary to ensure that the proceedings are fair. *Rambus Inc. v. Samsung Elecs. Co.*, 2007 WL 3444376, at *6 (N.D. Cal., Nov. 13, 2007).

**1.     Statute of Limitation**

MLB asserts that Landmark impliedly waived protection over communications concerning the statute of limitations because, it says, Landmark alleges facts tolling the statute of limitation for

///

---

[2] In cases where jurisdiction is based on a federal question, the law of the circuit will apply to questions of privilege rather than state law. *United States v. Zolin*, 491 U.S. 554, 562 (1989). Federal jurisdiction in this case is based on the allegation that Landmark's "claims arise under federal patent law and require resolution by this court of a substantial contested question of federal patent law." (SAC ¶ 4.) *See* 28 U.S.C. § 1338 (noting that district courts have original jurisdiction over actions relating to patents).

3

its fraud claim. (Mot. 19.) Landmark counters that it is MLB that has put the statute of limitation at issue by raising it as an affirmative defense. (Opp'n 18.)

Under California law, the statute of limitation for fraud actions is three years. Cal. Code. Civ. P. § 338. This cause of action does not accrue until the plaintiff discovers "the facts constituting the fraud." *Id.* But, there is a special standard for fraudulent concealment. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). The plaintiff making such a claim must show when and how it discovered the fraud and that prior to discovery it was " 'not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.' " *Id.* (quoting *Baker v. Beech Aircraft Corp.*, 114 Cal. Rptr. 171, 175 (Ct. App. 1974)).

Judge Fogel held that Landmark's fraud claim is one for fraudulent concealment. (Order 8:2–3, Jan. 20, 2009.) As a result, Landmark's assertion of fraudulent concealment is an affirmative act that meets the first requirement of *Hearn*. Privileged information concerning the statute of limitation is relevant because Landmark will have to " 'affirmatively excuse [its] failure to discover the fraud within three years.' " *Clemens*, 534 F.3d at 1024 (quoting *Bedolla v. Logan & Frazer*, 125 Cal. Rptr. 59, 67 (Ct. App. 1975)). Furthermore, if MLB can prove that Landmark did have knowledge of the alleged fraud prior to May 20, 2005 (three years prior to the day Landmark filed suit in federal court), then Landmark's one remaining claim will be barred by the statute of limitation. Information that shows when Landmark discovered the alleged fraud would therefore be vital to MLB's defense, and the *Hearn* test is met.

Accordingly, Landmark has waived protection over communications that demonstrate when and how it learned of the alleged fraud, as well as communications that relate to whether it had actual or presumptive knowledge of facts such that it was on inquiry of such fraud between June 22, 2004 (the date of the Notice) and May 20, 2005. However, a review of Landmark's privilege log shows no documents between these dates, thus no additional production is necessary at this time.

**2. Causation**

MLB also argues that because proof of causation is a requirement for a fraud claim, Landmark has put at issue its "knowledge, intent, and conduct" after it learned of the Notice. (Reply 12.) It asserts that it has a right to learn what Landmark might have done "but for" MLB's alleged

4

1  fraud, such as whether it would have "immediately sought other counsel," what advice that counsel
2  might have suggested, and whether Landmark would have taken such advice. (Reply 11–12.)

3  Landmark counters that it has made "no claim as to what it would have done with bare
4  knowledge of the Notice alone," but rather a claim as to what it would have done had MLB notified
5  it right away. (Opp'n 16.) It also says that the only possibly relevant communications are those
6  between when the Notice issued and when MLB told it that the divisional claims were lost in
7  December 2004—a period for which there are no records listed on its privilege log. (Opp'n 17.)

8  A required element of fraudulent concealment is that "the plaintiff must have been unaware
9  of the [material, suppressed] fact and would not have acted as he did if he had known of the
10 concealed or suppressed fact." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 7 Cal. Rptr. 2d
11 859, 864 (Ct. App. 1992). Landmark's assertion of fraudulent concealment is again the affirmative
12 act; facts concerning causation are relevant to this claim; and any privileged information that might
13 show that Landmark was aware of the Notice, and would have acted the same way had it known of
14 the Notice prior to when it filed its reissue application, is vital to MLB's defense. Accordingly, the
15 *Hearn* test is met and Landmark has impliedly waived protection over such information between
16 June 22, 2004 (the date of the Notice) and October 28, 2005 (the date of the reissue application).
17 Several documents on Landmark's privilege log fall within this date range and also have
18 descriptions suggesting that this waiver might apply.

19 **C. Express Waiver**

20 Landmark produced in this action several copies of two memos that it later claimed were
21 "inadvertently produced." (Mot. 1.) Although MLB's motion focused on compelling Landmark to
22 produce these memos, Landmark has since produced the memos to MLB.[3] However, the parties
23 continue to dispute the scope of Landmark's express waiver for the two memos. (Opp'n 2.)
24 ///
25

---

26 [3] In its opposition, Landmark claims it was "always willing" to produce the memos. (Opp'n 3.) Yet the record shows that Landmark was *not* always willing to do so. (*See, e.g.*, Kwon Decl. Exs. I, J.)
27 Indeed, Landmark even failed to produce the memos after filing its opposition in which it conceded that production was appropriate. As a result, during the motion hearing, this court ordered the
28 production of the memos (including a copy to the court, which *MLB* provided) as well as letter briefs from each side to supplement their arguments using information specific to the memos.

MLB argues that the scope of Landmark's express waiver extends to communications discussing the same subject matter as the two memos. It asserts that because Landmark is relying on the memos as proof of the scope and patentability of the divisional claims, it cannot "selectively disclose" only helpful information and withhold unfavorable information. (Reply 3.) It says that it will be unfairly prejudiced if it is denied "access to discovery that tests the credibility of the conclusions reached in the[e] memos." (MLB Letter Brief 1–2.) As a result, it argues, it has a right to all "material reviewed or relied on" to reach the memos' conclusions, including drafts. (Reply 4.)

Landmark argues that the scope of its waiver not nearly as broad as MLB alleges. In particular, it says that the disclosure of the two memos does not mean that it waived its attorney-client privilege for "*all* communications with *anyone* at *any time*." (Opp'n 2.) Instead, it asserts that any waiver should only include communications "involving the attorney authors" of the memos. (Landmark Letter Brief 2.) It further alleges that it waived only that work product it actually disclosed in this action—i.e., only the two memos. It says that it would be unfair to grant a broad subject-matter waiver because MLB can challenge the scope and patentability of Landmark's patent claims using publicly available information and because Landmark's current counsel's opinions concerning patentability are not controlling in this case.

Federal Circuit law[4] holds that waiver of attorney-client privilege "applies to all other communications relating to the same subject matter." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005). There is no "bright-line" test to determine this subject matter; instead, "courts weigh the circumstances of the disclosure, the nature of the legal advice sought, and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp.*, 412 F.3d at 1349–50.

On the other hand, the Federal Circuit finds that the waiver of work-product immunity is not as broad as that of attorney-client privilege. *In re Echostar*, 448 F.3d at 1302. Instead of waiving

---

[4] Federal Circuit law applies to discovery disputes if the materials in question "relate to an issue of substantive patent law." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). The two memos in question here relate to the scope and patentability of Landmark's claims, and Landmark is using the memos to support its allegations in this case. *See Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1286 (Fed. Cir. 2007) (citations omitted) ("[W]e surely consider claim scope to be a substantial question of patent law.").

6

"all work product related to the same subject matter," it "only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product." *Id.* It does not include opinion work product that was never given to the client. *Id.* at 1302–03. When the work product at issue might contain both factual and opinion work product, the court will balance the policy protecting work product with the desire to "prevent sword-and-shield litigation tactics" by which a party only discloses favorable work product. *Id.* at 1302.

The two memos at issue here are the *Landmark Patentability Study*, authored by MPK (the "MPK memo"), and the *Analysis of U.S. Patent Application Serial No. 10/045,096 entitled 'Light-Emitting Diode Display,' of Paul O. Schiebe*, authored by PLG (the "PLG memo"). These memos both address the scope and patentability of claims present in the '096 application that do not appear in the '574 patent as well as hypothetical claims not filed in that application. The opinions in the memos are based on a review of the subject matter of the '096 application and an analysis of the prior art and other references as identified in the memos. As Landmark voluntarily produced these documents in this litigation as beneficial to their claims, fairness dictates that the waiver extend to other privileged communications concerning the memos' analyses of the scope and patentability of this specific unclaimed subject matter, including discussions of the selected prior art and references. This waiver is not limited to communications involving the attorney authors because privileged communications with other attorneys may also reveal information about this subject matter.

However, MLB argues that because the memos discuss the '096 application's specification, the subject-matter waiver here also includes "all documents that discuss the '096 specification and how all claims deriving from that application should be construed," such as communications about the '574 patent, the divisional application, and—in particular—the reissue application. (MLB Letter Brief 3.) MLB relies on a case from the Ninth Circuit in support of this argument. *See generally Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650 (N.D. Cal. 1994). *Starsight* was a patent infringement suit involving an allegation that the patent's inventor failed to disclose certain prior art to the PTO. *Id.* at 651. When the inventor then produced privileged documents concerning that prior art, the court applied Ninth Circuit law to find that the waiver included continuation and continuation-in-part applications that derived from the original application. *Id.* at 655.

7

Yet *Starsight* is distinguishable from the instant case. First, this case is about fraudulent concealment, not patent infringement. Second, the challenge in *Starsight* was that the original patent was invalid due to inequitable conduct; consequently, the waiver extended to applications that might also be invalid because they derived from the original, allegedly invalid, patent. Here, MLB does not argue that the '574 patent is invalid, but rather challenges the damages Landmark may have as a result of the failed divisional application. Third, Landmark's reissue application was intended as a "correction" to the '574 patent, and as such, involved different issues than a continuation or continuation-in-part application. *See* 35 U.S.C. § 251; *see also* Manual of Patent Examining Procedure §§ 1402, 1412.01–03 (discussing the grounds for filing a reissue application and the recapture and broadening limitations on its claims).

Furthermore, MLB will not be prejudiced by limiting the scope of Landmark's waiver. The memos' authors' opinions concerning the scope and patentability of the unclaimed '096 application subject matter will not control the determination of those issues for purposes of damages. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (holding that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court"). In addition, MLB can test the credibility of the memos' analyses in the absence of communications about later filings. Accordingly, fairness does not require the extension of Landmark's express waiver of attorney-client privilege to privileged communications about subjects *not* directly addressed in the memos.[5]

Landmark's express waiver of work-product immunity also extends to factual or non-opinion work product about the subject matter of the memos, but does not extend to opinion work product within the subject matter of the memos that was never disclosed to Landmark.[6] Nor does it extend to work-product drafts of the memos. *See In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 527 (N.D. Ill. 1990) (holding that "drafts, if they are otherwise work product, do not

---

[5] Whether any of the claims analyzed in the memos—restricted-out or hypothetical—appeared in the reissue application does not make that application a part of Landmark's subject-matter waiver. The memos only analyze, as a separate issue, the scope and patentability of certain claims based on a review of the '096 application and the prior art.

[6] MLB has not argued, nor shown, that it meets the elevated requirements to reach such work product on its own. *See* Fed. R. Civ. P. 26(b)(3).

lose that status because the final document is made public," noting that "any other result would make every attorney's draft briefs subject to discovery"). Landmark's experts utilized the final versions of the two memos to formulate their opinions in the earlier arbitration proceeding, and presumably will do so again in the instant case. Yet expert opinions that are based in part on these memos do not rely on the opinion work product that the memos' authors never disclosed. Thus, Landmark is not using such undisclosed information as a "sword and shield" to "distort the factfinding process." *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006) (citations omitted). In addition, if undisclosed work product within the subject matter of the memos contains both factual and opinion work product, then the waiver only extends to the factual content.

## D. *In Camera* Review

Finally, MLB requests that this court perform an *in camera* review of documents on both Landmark's and PLG's privilege logs to determine what should be disclosed pursuant to this court's definition of the scope of waiver. MLB first asked for a review of all listed documents, but later reduced its request to include all items on PLG's privilege log and approximately forty percent of the documents on Landmark's privilege log. (MLB Letter Brief 3–4.) MLB argues this is necessary because the privilege logs contain "excessively vague document descriptions" and because Landmark has been "willing[] to play games." (Reply 14.) Landmark's opposition to an *in camera* review is based on MLB's first request to include all listed documents and on Landmark's assertion that documents created prior to December 2004 are not relevant to MLB's waiver claims. (Opp'n 21–22.)

The decision to have an *in camera* review "rests in the sound discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572 (1989). In making this determination, the court will consider the circumstances of the case, the volume of materials it is asked to review, the relative importance of the information to the case, and the likelihood that any evidence produced will help establish the claim. *Id.* Under the circumstances of this case, it is likely that some of the documents on both privilege logs will produce evidence to support or dispute the issue of causation or, to a lesser extent, the issue of damages. Furthermore, the court concludes that the descriptions in both

privilege logs are not sufficient for MLB to assess whether the waiver as defined might apply. To ensure that MLB receives discovery it is due, yet protect Landmark and PLG from unwarranted disclosure, an *in camera* review is appropriate.

Nonetheless, the court does not find that it needs to conduct an *in camera* review of all the documents that MLB suggests, as many of these documents are unlikely to fall within the scope of waiver. Instead, this court will perform an *in camera* review of only those documents on Landmark's log whose descriptions suggest that they might fall within the scope of either the implied or explicit waivers as described in this order. It will also review all thirty-five documents on PLG's log, although because the vast majority of entries are for undisclosed work product, they are less likely to fall within the scope of waiver. (Trinidad Decl. Ex. 24.)

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Landmark shall produce to this court within ten days the following documents as they appear on the September 2, 2009 privilege log for an *in camera* review: 2, 5–13, 44, 63, 70, 82, 90, 92–98, 100, 102, 104, 108, 111, 113, 116–20, 125–29, 140–42, 146, and 201–02.

2. PLG shall produce to this court within ten days the following documents as they appear on the July 17, 2009 privilege log for an *in camera* review: 1–35.

3. Following this court's *in camera* review, it shall order any subsequent disclosure as appropriate.

4. Furthermore, if either Landmark or PLG later discovers communications within the scope of these waivers as described above, it must produce those documents to MLB.

Dated: October 21, 2009

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C 08-02581 Notice will be electronically mailed to:**

| | |
|---|---|
| Clark S. Stone | clark.stone@haynesboone.com, sjctemp1@haynesboone.com |
| Courtney Towle | ctowle@texarkanalaw.com |
| Edward John McIntyre | emcintyre@swsslaw.com, dpierson@swsslaw.com |
| Elliot Remsen Peters | epeters@kvn.com, aap@kvn.com, efiling@kvn.com |
| Inchan Andrew Kwon | inchan.kwon@haynesboone.com, edward.kwok@haynesboone.com, efilesjc@haynesboone.com, sjctemp1@haynesboone.com |
| John Elliot Trinidad | jtrinidad@kvn.com, efiling@kvn.com |
| Steven Mark Levitan | steve.levitan@haynesboone.com |
| Steven Paul Ragland | sragland@kvn.com, efiling@kvn.com, jwinars@kvn.com |
| Wendy Jill Thurm | wthurm@kvn.com, efiling@kvn.com, llind@kvn.com, pwm@kvn.com |
| William N. Kammer | wkammer@swsslaw.com, rtang@swsslaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**