**E-Filed 12/15/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>                Plaintiff,<br><br>        v.<br><br>MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership; and THOMAS D. KOHLER, an individual,<br><br>                Defendants. | Case Number C 08-2581 JF (HRL)<br><br>**ORDER[1] OVERRULING OBJECTION TO DISCOVERY ORDER**<br><br>RE: Docket No. 81 |

**I. INTRODUCTION**

Plaintiff Landmark Screens, LLC ("Landmark") objects to Magistrate Judge Lloyd's order of October 21, 2009 (the "Discovery Order"), which granted in part and denied in part Defendants' motion to compel the production of documents and to compel an *in camera* review of those documents. Defendants' motion sought documents as to which Landmark allegedly had

---

[1] This disposition is not designated for publication in the official reports.

waived the attorney-client and work-product privileges.

Before Judge Lloyd issued his order, Landmark produced copies of the two principal documents in question to Defendants. However, Defendants continued to seek additional documents as to which the privileges allegedly had been waived. To the extent that it denied their motion as to these additional documents, Defendants object to the Discovery Order. Because the Court concludes that the Discovery Order was not clearly erroneous or contrary to law in light of the evidence and arguments presented by the parties, the objection will be overruled.

## II. LEGAL STANDARD

Where, as here, the magistrate judge's ruling addresses a non-dispositive matter, the district judge will modify or set aside "any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

## III. DISCUSSION

After summarizing the standards for determining the scope of asserted waivers of the attorney-client and work-product privileges, Judge Lloyd described the two documents that had been produced and addressed the limits of Landmark's waiver:

> The two memos at issue here are the Landmark Patentability Study, authored by MPK (the "MPK memo"), and the Analysis of U.S. Patent Application Serial No. 10/045,096 entitled 'Light-Emitting Diode Display,' of Paul O. Schiebe, authored by PLG (the "PLG memo"). These memos both address the scope and patentability of claims present in the '096 application that do not appear in the '574 patent as well as hypothetical claims not filed in that application. The opinions in the memos are based on a review of the subject matter of the '096 application and an analysis of the prior art and other references as identified in the memos. As Landmark voluntarily produced these documents in this litigation as beneficial to their claims, *fairness dictates that the waiver extend to <u>other privileged communications concerning the memos' analyses</u> of the scope and patentability of this specific unclaimed subject matter, including discussions of the selected prior art and references.* This waiver is not limited to communications involving the attorney authors because privileged communications with other attorneys may also reveal information about this subject matter.

(Discovery Order 7:7-18 (emphasis added).)

Defendants claim that Judge Lloyd erred in two ways. First, they argue that Judge Lloyd's definition of the scope of the waiver is too narrow. Second, they contend that Judge Lloyd erred

by finding that previous drafts of the MPK and PLG memoranda fall outside the scope of the waiver.

**1.   Scope of the waiver**

Under Federal Circuit law, which both parties agree applies to discovery disputes in this case, "[t]he widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 350.  Judge Lloyd found that Defendants would not be prejudiced by limiting the scope of the waiver and concluded that the waiver would not extend to "privileged communications about subjects *not* directly addressed in memos." (*Id.* at 8 (emphasis in original).)  Accordingly, Judge Lloyd reasoned that, "[w]hether any of the claims analyzed in the memos–restricted-out or hypothetical–appeared in the reissue application does not make that application a part of Landmark's subject-matter waiver.  The memos only analyze, as a separate issue, the scope and patentability of certain claims based on a review of the '096 application and the prior art." (Discovery Order 8 n.5.)

Defendants do not claim that Judge Lloyd applied the wrong standard.  Instead, Defendants' contend that Judge Lloyd's application of the standard erroneously "carves out" communications about the reissue application from the scope of the waiver. (Discover Order 7:21-22.)  Defendants maintain that the subject matter of the two memoranda should include communications about the reissue application because the memoranda "***directly address*** claims included in the reissue application." (Defs.' Disc. Obj. 6 (emphasis in original).)

Defendants also argue that Judge Lloyd erred in failing to construe the holding in *Starsight Telecast Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650 (N.D. Cal. 1994), as including within the scope of the waiver documents discussing the reissue application.  Judge Lloyd distinguished *Starsight* on several grounds: that it involved claims different from the fraudulent concealment claim here; that the scope of the waiver in that case included subsequent

applications because the applications derived from the original patent, which allegedly was invalid due to inequitable conduct; and that the continuation and continuation-in-part applications at issue in *Starsight* were fundamentally different from the reissue application at issue here. Even assuming that Defendants are correct that the first and third grounds are insufficient to distinguish *Starsight* from this case, Defendants have failed to demonstrate error with respect to the second ground. The subsequent applications in *Starsight* were included because of the possibility that they could be tainted by the alleged invalidity of the original patent. Here, however, Defendants make no argument that the original patent is invalid; rather they insist that the waiver with regard to one patent should include communications about subsequent applications because there are specifications common to both.

It is clear from the Discovery Order that Defendants simply repeat the same arguments that they made before Judge Lloyd. Given the absence of a bright line test, Judge Lloyd's explicit consideration of the relevant factors and arguments, and Defendants' failure to demonstrate that *Starsight* is controlling, the Court concludes that Judge Lloyd's definition of the scope of the waiver was neither clearly erroneous nor contrary to law.

**2.   Prior drafts of the MPK and PLG memos**

Defendants also object to Judge Lloyd's exclusion of drafts of the MPK and PLG memoranda. Defendants claim that Judge Lloyd erred in two ways relative to this exclusion. First, they argue that Judge Lloyd relied upon case law that "neither involved patent law issues nor applied Federal Circuit law." (Defs.' Disc. Obj. 7.) Second, they contend that Judge Lloyd erroneously failed to rely upon case law from this district that did involve patent issues and apply Federal Circuit law.

Defendants' arguments are unpersuasive. While Judge Lloyd did cite to one case from the Northern District of Illinois, it is far from clear that his decision rested solely upon that authority or that its reasoning or conclusion were erroneous or contrary to law. In the principal case from this district relied upon by Defendants, *Phoenix Solutions Inc. v. Wells Fargo Bank*, N.A., 254 F.R.D. 568 (N.D. Cal. 2008), Judge Patel ordered the plaintiff to produce all pre-filing drafts of patent applications because it already had disclosed certain *drafts* voluntarily. *Phoenix Solutions*,

254 F.R.D. at 577 ("This court finds the objective fact that Phoenix *voluntarily disclosed certain drafts* of patent applications *dispositive* in determining that there has been a subject matter waiver as to all drafts of those patent applications. . . . Phoenix has already produced *pre-filing drafts* of the written description portions of the patents-in-suit, not just communications relating to those drafts. Accordingly, Phoenix must produce all drafts of those applications, irrespective of whether they contain additional written comments on them." (emphasis added)). Consistent with this reasoning, Judge Patel refused to order the production of other drafts that were insufficiently related to the drafts voluntarily produced. *Id.* ("Because Phoenix's voluntary production was limited to the specification portion of the applications which contained no patent claims, however, the court will not order Phoenix to produce any pre-filing drafts of the claim themselves.")

*Phoenix Solutions* does not require that Landmark's voluntary production of the final versions of the MPK and PLG memos–that is, the versions disclosed to Landmark–mandates production of all previous, undisclosed drafts. Indeed, Judge Lloyd focused specifically on the question that Judge Patel found determinative in *Phoenix Solutions*, which was whether previous drafts had been disclosed:

> Landmark's express waiver of work-product immunity . . . does not extend to opinion work product within the subject matter of the memos that was *never disclosed to Landmark*. Nor does it extend to work-product drafts of the memos. . . Landmark's experts utilized the *final versions* of the two memos to formulate their opinions in the earlier arbitration proceeding, and presumably will do so again in the instant case. Yet expert opinions that are based in part on these memos do not rely on the *opinion work product that the memos' authors never disclosed*. Thus, Landmark is not using such *undisclosed information* as a "sword and shield" to "distort the factfinding process."

(Discovery Order 9:2-8 (emphasis added) (citing *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006) (internal citations omitted)).)

## IV.  CONCLUSION

For the foregoing reasons, Defendants' objection will be OVERRULED.

**IT IS SO ORDERED.**

DATED: 12/15/09

JEREMY FOGEL
United States District Judge

5