**United States District Court**
For the Northern District of California

1                                              **\*\* E-filed January 15, 2010 \*\***

2

3

4

5

6

7   NOT FOR CITATION

8   IN THE UNITED STATES DISTRICT COURT

9   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10   SAN JOSE DIVISION

11   LANDMARK SCREENS, LLC, a Delaware                 No. C08-02581 JF (HRL)
     limited liability company,

12                                                     **ORDER (1) GRANTING IN PART
                  Plaintiff,                           PLAINTIFF'S MOTION TO COMPEL
13        v.                                           AND (2) INTERIM ORDER FOR *IN
                                                       CAMERA* REVIEW OF DOCUMENTS**
14   MORGAN, LEWIS & BOCKIUS LLP, a
     limited liability partnership; and THOMAS         **[Re: Docket No. 85]**
15   D. KOHLER, an individual,

16                  Defendants.

17   _____/

18        Plaintiff Landmark Screens, LLC ("Landmark") hired defendant Thomas Kohler, then with

19   the law firm Pennie & Edmonds LLP ("Pennie"), to prosecute patents pertaining to electronic

20   billboard technology.  After Pennie dissolved, Kohler joined defendant Morgan, Lewis & Bockius

21   LLP ("MLB").  Subsequently, Landmark sued defendants and Pennie in state court, in part on

22   grounds that they failed to promptly and properly advise it of a United States Patent and Trademark

23   Office ("PTO") notice advising that Landmark's divisional patent application, filed by Pennie, was

24   incomplete.  The suit against Pennie and Kohler in his capacity as a Pennie partner settled during

25   arbitration, but the state court dismissed the suit against MLB and Kohler in his capacity as an MLB

26   partner for lack of subject-matter jurisdiction.  Plaintiff then filed a new complaint in federal court

27   against defendants asserting malpractice, negligence, breach of fiduciary duty, breach of implied

28   contract, and fraud, but the allegation of fraud is now the only remaining claim in the case.

**United States District Court**
For the Northern District of California

1    In this motion, Landmark moves to compel production of documents it alleges that MLB has

2 improperly withheld as privileged.  In the alternative, it moves for an *in camera* review of these

3 documents.  MLB opposes the motion.  Pursuant to Civil Local Rule 7-1(b), the court finds the

4 matter suitable for determination without oral argument and vacates the January 19, 2010 hearing.

5                                                   **DISCUSSION**

6 **A.     Privilege Logs**

7    For purposes of this motion, Landmark requests that this court consider not only the two

8 privilege logs that defendants have produced in this action (one for MLB and one for Pennie), but

9 also the MLB and Pennie logs produced in the earlier state court action.  Landmark asserts that

10 several documents appearing on the federal Pennie log originally appeared on the MLB state log.  It

11 points to other inconsistencies that, it argues, indicate that defendants' federal logs are suspect.

12 Defendants say that it has explained to plaintiff numerous times that a different law firm prepared

13 the state logs and that its new counsel created new logs for the federal action after reviewing the

14 documents at issue.

15    Under these circumstances, Landmark has not persuaded the court that differences between

16 the state and federal logs indicate deceit on the part of defendants.[1]  Accordingly, the court will only

17 consider the privilege logs that defendants have produced in the instant action.

18 **B.     Internal Firm Communications**

19    Landmark moves to compel nearly every document on both the MLB and Pennie privilege

20 logs on grounds that a law firm's duty of loyalty to its clients requires disclosure of the firms'

21 internal communications.  Although a law firm may assert privilege over communications with

22 outside counsel, *In re SonicBlue Inc.*, 2008 WL 170562, at *11 (Bankr. N.D. Cal. Jan. 18, 2008), its

23 fiduciary duty to avoid conflicts of interest prevents it from withholding internal communications

24 relating to the client's representation "once the law firm learns that [the] client may have a claim

25 against the firm," *Thelen Reid & Priest LLP v. Marland*, 2007 WL 578989, at *7–8 (N.D. Cal. Feb.

26 21, 2007).  "As a result, a law firm cannot assert the attorney-client privilege against a current

27 ───────────────────

28 [1] Indeed, this court already performed one *in camera* review at the parties' request based on an inconsistency between the state and federal logs and found no evidence to support Landmark's suspicions.  (Docket No. 104.)

                                                        2

United States District Court
For the Northern District of California

1   outside client when the communications that it seeks to protect arise out of self-representation that

2   creates an impermissible conflicting relationship with that outside client." *In re SonicBlue Inc.*,

3   2008 WL 170562, at *8 (Bankr. N.D. Cal. Jan. 18, 2008). This rule also applies to documents

4   withheld on work-product doctrine grounds. *Thelen*, 2007 WL 578989, at *8.

5       *1. MLB Communications*

6       Landmark alleges that defendants were aware of a possible claim against them after

7   receiving the PTO Notice on June 22, 2004. It argues that this resulted in a conflict of interest that

8   requires them to disclose any internal communications discussing the actions defendants took in

9   response to the PTO Notice. Defendants counter that no disclosure is necessary because all of the

10  items listed on MLB's log are dated after Landmark terminated their attorney-client relationship on

11  November 2, 2005.

12      The earliest item on the MLB log is dated November 23, 2005. As a result, the documents

13  listed on MLB's log would not require disclosure under *Thelen* because Landmark was not a current

14  client when these communications took place.

15      Nonetheless, Landmark argues that many items on Pennie's log are really MLB

16  communications because they discuss potential litigation and involve MLB attorneys. In response,

17  MLB asserts that the communications are properly listed on Pennie's log because the MLB

18  attorneys involved were all former Pennie attorneys and because MLB "had nothing to do with

19  filing the Divisional Application" that resulted in the PTO Notice. (Opp'n 11, 13.)

20      A review of the Pennie log does not reveal suspect entries to suggest that they are in reality

21  internal MLB communications. The entries involve former Pennie attorneys and many discuss the

22  dissolution of a law firm. As well, nearly all involve Pennie's outside counsel, insurer, or policy

23  board. The court is not convinced that these items are MLB internal communications merely

24  because the subject includes "litigation" or because the author or recipients include former Pennie

25  attorneys who are now at MLB. Consequently, they do not lose their privileged status on this basis.

26      *2. Pennie Communications*

27      Landmark argues that even if the items listed on Pennie's log are properly Pennie

28  communications, they should still be produced because Pennie never terminated its attorney-client

3

**United States District Court**
For the Northern District of California

1   relationship in writing as required by their retainer agreement.  It claims that as a result, it was a

2   current client of Pennie when these communications took place.  MLB protests that the attorney-

3   client relationship between Pennie and Landmark ended when Pennie dissolved on December 31,

4   2003, or at the latest, when Landmark filed a Revocation and Power of Attorney with the PTO on

5   April 13, 2004 that substituted MLB for Pennie.  Still, Landmark asserts that neither of these events

6   automatically terminated the relationship.

7       For the purposes of this motion, Landmark has failed to persuade the court that an attorney-

8   client relationship with Pennie persisted into mid-July 2004—the date of the earliest items on

9   Pennie's log.  Although Landmark's Michael Wilson testified at deposition that he thought Pennie

10  was looking to merge with another law firm (and thus, perhaps, continue to exist), he also testified

11  that Kohler told him he was going to MLB and asked him if Kohler could take the Landmark file to

12  MLB—a move to which he gave oral consent.  Wilson also testified that he was not aware of

13  anyone at Pennie other than Kohler who worked on Landmark's patent issues, that he did not talk to

14  anyone at Pennie about patent issues after the dissolution date, that he did not receive any bills from

15  Pennie after the dissolution date, and that he viewed Mr. Kohler as his attorney.  (Wilson Dep. at

16  151–53, 155.)  Such actions do not support the contention that seven months later, Landmark

17  nevertheless believed it still had a current relationship with Pennie for patent matters.[2]

18      Landmark also argues that even if it were a former Pennie client, that "under California law,

19  Pennie had a continuing duty of loyalty to Landmark even after termination of the attorney-client

20  relationship" to not act in a way that would injure it.  (Mot. 16–17.)  *See Styles v. Mumbert*, 79 Cal.

21  Rptr. 3d 880, 883 (Ct. App. 2008).  It asserts that Pennie's failure to disclose information about the

22  PTO Notice injured it in violation of this continuing duty of loyalty, and as a result, that Pennie

23  must disclose its communications under the rationale of *Thelen*.  But *Thelen* specifically entailed in-

24  house communications concerning *current* clients and conflicts.  The court does not find that the

25  circumstances here warrant an extension of *Thelen's* holding to any duties of disclosure Pennie may

26  have had *after* the termination of the attorney-client relationship.

---

27  [2] Landmark's assertion that the attorney-client relationship persisted merely because Pennie failed to
28  provide a written termination notice would also lead to an absurd result in this case: as Landmark
    alleges that Pennie *never* provided such a notice (Reply 11), it necessarily argues that it *still* has a
    current attorney-client relationship with Pennie, despite the fact that Pennie dissolved six years ago.

4

**United States District Court**
For the Northern District of California

## C.   Crime-Fraud Exception

Landmark further moves for disclosure of documents on both the MLB and Pennie logs under the crime-fraud exception to the attorney-client privilege.  It argues that defendants' communications with inside and outside counsel that discuss "litigation," "anticipated litigation," or "potential litigation" show that they knew Landmark had a potential claim against them and sought to fraudulently conceal that information.  (Mot. 18.)  It says that accordingly, these communications must have been in furtherance of the alleged fraud.  Defendants counter that Landmark only offers conjecture and fails to provide evidence to support the application of the crime-fraud exception.  They argue that even an *in camera* review is inappropriate due to Landmark's lack of evidence. [3]

Under the crime-fraud exception, communications are not privileged if the client seeks the advice of counsel to further a criminal or fraudulent scheme and the communications are sufficiently related to and made in furtherance of that scheme.  *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, --- U.S. ----, 130 S. Ct. 599 (2009) (citations omitted).  Courts have also applied this rule to allow disclosure of attorney work product.  *See, e.g.*, *In re Grand Jury Proceedings*, 867 F.2d 539 (9th Cir. 1989).  In a civil case, the "preponderance of the evidence" standard is required for outright disclosure of communications pursuant to this exception.  *In re Napster*, 478 F.3d at 1094–95.

Landmark's argument in support of disclosure pursuant to the crime-fraud exception is, for the most part, premised on the fact that Landmark's complaint alleges actual fraud.  Nevertheless, merely repeating the facts as presented in its complaint does not show a preponderance of the evidence that the communications listed on the privilege logs were sufficiently related to and made in furtherance of fraud.  Thus, compelling outright disclosure is inappropriate under the circumstances.

That said, Landmark has also requested that the court perform an *in camera* review to determine whether the crime-fraud exception applies.  "[T]he procedural posture and consequences

---

[3] MLB also argues that Landmark is precluded from asserting the crime-fraud exception as to Pennie's documents because the issue was already litigated in arbitration during the state court proceedings.  However, the arbitration panel never rendered a final award, and the panel's decision on the motion to compel was not identical to the issue here as it was considering only the state privilege logs.  *See Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920, 923 (Cal. 1986) (providing the requirements for collateral estoppel).

5

**United States District Court**
For the Northern District of California

1  of an *in camera* inspection of . . . disputed communications are fundamentally different from those

2  of an order requiring their outright disclosure." *Id.* at 1092.  As a result, "a lesser evidentiary

3  showing is needed to trigger *in camera* review than is required ultimately to overcome the

4  privilege." *United States v. Zolin*, 491 U.S. 554, 572 (1989); *see also In re Napster*, 479 F.3d at

5  1092.

6         Instead of establishing a preponderance of the evidence, the party seeking an *in camera*

7  review must show a factual basis supporting a reasonable, good-faith belief that a review may reveal

8  evidence supporting the application of the crime-fraud exception.  *Zolin*, 491 U.S. at 572.  The

9  *Napster* court noted that an *in camera* review is not "a panacea," but recognized that the "judicious

10 use of *in camera* review, combined with a preponderance burden for terminating privilege," struck

11 an appropriate "balance between the importance of the attorney-client privilege and deterrence of its

12 abuse." *Id.* at 1096.  Accordingly, the decision to have an *in camera* review "rests in the sound

13 discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572 (1989).

14        The fraudulent concealment at issue in this case primarily involves the actions of Kohler, as

15 an MLB partner, concerning the PTO Notice.  Landmark asserts that Kohler received the PTO

16 Notice on June 22, 2004, but did not tell Landmark about it until early December 2004.  Landmark

17 also alleges specific acts suggesting that Kohler continued to conceal information through May

18 2005.  (Mot. 3, 8.)  Although these facts do not support a blanket *in camera* review of all the

19 documents at issue in this motion, they do support a reasonable, good-faith belief that Kohler's

20 communications with counsel during the alleged concealment period may reveal evidence

21 supporting the application of the crime-fraud exception.  Accordingly, the court will exercise its

22 discretion to conduct an *in camera* review of documents appearing on Pennie's log involving

23 Kohler's communications with outside counsel from the date of the PTO Notice through May 2005.[4]

24 **D.     Henry Communications**

25        Finally, Landmark moves to compel production of communications appearing on the Pennie

26 log involving non-attorney Edward Henry, Pennie's former Executive Director, because it asserts

27 that the communications were not primarily to seek legal advice.  MLB responds that the "primary

28

---

[4] No items on MLB's log are dated within this time period.

**United States District Court**
For the Northern District of California

1  purpose" rule only applies to communications with in-house counsel and that Henry's

2  communications presumptively are privileged because they were for the purpose of carrying out

3  privileged communications with Pennie's outside counsel and insurance company representative.

4  *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002).  Landmark

5  asserts that it has rebutted this presumption with evidence in the form of Henry's state court

6  declaration.

7       The court is unpersuaded that the documents listed in the Pennie log pertaining to Henry

8  were not for the purpose of furthering communications with outside counsel and insurers such as to

9  overcome the presumptive privilege.  In his declaration, Henry notes that he "was required to

10  provide Pennie's primary insurance carrier with status reports on all matters that could potentially

11  result in claims against Pennie."  (Henry Decl. 1.)  In its motion, Landmark admits that California

12  law recognizes that communications between an insured to his liability insurance company about a

13  potential claim is treated as a privileged communication.  (Mot. 18 n.6); *see also Scripps Health v.*

14  *Superior Court*, 135 Cal. Rptr. 2d 126, 130 (Ct. App. 2003).  Furthermore, Henry states that the

15  duties of Pennie's outside counsel, James Corcoran, included "resolving claims brought against

16  Pennie."  (Henry Decl. 1.)  This is a sufficient nexus to support MLB's assertion of privilege for

17  Henry's communications.

18                                              **CONCLUSION**

19       Based on the foregoing, IT IS ORDERED that:

20       1.  MLB shall produce to this court within fourteen days the following documents as they

21           appear on the Pennie privilege log for an *in camera* review: MLBFED0002495–97;

22           MLBFED0002510–11; MLBFED0002513–17; MLBFED0002520–25;

23           MLBFED0002561; MLBFED0002563; and MLBFED0002575–80.

24       2.  Following this court's *in camera* review, it shall order any subsequent disclosure as

25           appropriate.

26

27  Dated: January 15, 2010

28                                      _____
                                        HOWARD R. LLOYD
                                        UNITED STATES MAGISTRATE JUDGE

7

**United States District Court**
For the Northern District of California

1  **C 08-02581 Notice will be electronically mailed to:**

2  Clark S. Stone          clark.stone@haynesboone.com, sjctemp1@haynesboone.com
   Courtney Towle          ctowle@texarkanalaw.com
3  Edward John McIntyre    emcintyre@swsslaw.com, dpierson@swsslaw.com
   Elliot Remsen Peters    epeters@kvn.com, aap@kvn.com, efiling@kvn.com
4  Inchan Andrew Kwon      inchan.kwon@haynesboone.com, edward.kwok@haynesboone.com,
                           efilesjc@haynesboone.com, sjctemp1@haynesboone.com
5  John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com
   Steven Mark Levitan     steve.levitan@haynesboone.com
6  Steven Paul Ragland     sragland@kvn.com, efiling@kvn.com, jwinars@kvn.com
   Wendy Jill Thurm        wthurm@kvn.com, efiling@kvn.com, llind@kvn.com, pwm@kvn.com
7  William N. Kammer       wkammer@swsslaw.com, rtang@swsslaw.com

8

9  **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28