\*\* E-filed August 13, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br><br>  v.<br><br>MORGAN, LEWIS & BROKIUS LLP, a Limited Liability Partnership; and THOMAS D. KOHLER, an individual,<br><br>    Defendants.<br>_____/ | No. C08-02581 JF (HRL)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL AND (2) GRANTING PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE SELECTED DOCUMENTS UNDER SEAL**<br><br>**[Re: Docket Nos. 128 & 130]** |

**BACKGROUND**

Plaintiff Landmark Screens, LLC ("Landmark") retained defendant Thomas Kohler, then a partner of the law firm Pennie & Edmonds LLP ("Pennie"), to prosecute patents pertaining to Landmark's electronic billboard technology. In January 2002 and while at Pennie, Kohler filed a patent application based on the billboard technology, which was assigned Application No. 10/045,096 (the "'096 Application") but eventually issued as U.S. Patent No. 6,639,574 (the "'574 Patent"). Because of certain patent filing restrictions, Kohler filed only some of the claims in the '096 application; he subsequently filed the rest in a "divisional application" which claimed the same January 2002 filing date as the '096 application (the "'916 Divisional Application").

In June 2004, the United States Patent and Trademark Office ("PTO") notified Kohler (by then, a partner at defendant Morgan, Lewis & Bockius LLP ("Morgan Lewis")) that the '916

Divisional Application was incomplete. According to Landmark, no one told it about the notice at the time. Due to the incompleteness, the PTO eventually deemed the '916 Divisional Application filed in August 2004 and not in January 2002 like the '096 Application. Landmark alleges that Defendants intentionally concealed this notice from Landmark, which prevented it from taking "a number of steps that were available to save Landmark's patent rights as claimed or disclosed in the '916 divisional application." (Docket No. 31 ("Second Amended Complaint" or "SAC"), ¶ 35.)

After this snafu, Landmark, with new counsel, filed a "reissue application" to broaden the scope of the claims in the '574 Patent (the "Reissue Application"). The PTO eventually reissued the '574 Patent as U.S. Patent No. RE40,953 E (the "Reissue Patent").

Landmark later sued Kohler, Morgan Lewis, and Pennie in state court. The suit against Pennie and Kohler in his capacity as a Pennie partner settled during arbitration, and the state court dismissed the suit against Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner for lack of subject-matter jurisdiction. Landmark thereafter filed suit against Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner (collectively, "Defendants") in federal court, asserting malpractice, negligence, breach of fiduciary duty, breach of implied contract, and fraud. (Docket No. 31 ("Second Amended Complaint" or "SAC").) Only the fraudulent concealment claim remains, though, as the other claims were dismissed by Judge Fogel. (Docket No. 42.)

Defendants served an amended notice for Landmark's Rule 30(b)(6) witness in March 2010. (Docket No. 129 ("Ragland Decl."), Ex. 2.) When depositions were taken from late March through early May, Landmark designated several witnesses who were being deposed in their individual capacities as Rule 30(b)(6) witnesses for many of the noticed topics as well. However, on May 5 and after several witnesses had been deposed already, Landmark served objections to the amended notice and refused to designate a Rule 30(b)(6) witness for 16 of the 48 topics. (Docket No. 133 ("Kwon Decl."), Ex. E.) Defendants now move for an order to compel Landmark to designate a Rule 30(b)(6) witness for the 16 disputed topics. (Docket No. 128 ("Motion").)

## LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

1  — including the existence, description, nature, custody, condition, and location of any documents or
2  other tangible things and the identity and location of persons who know of any discoverable matter."
3  FED. R. CIV. P. 26(b)(1).

4  However, "[o]n motion or on its own, the court must limit the frequency or extent of
5  discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery
6  sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is
7  more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
8  opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the
9  proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in
10 controversy, the parties' resources, the importance of the issues at stake in the action, and the
11 importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

## DISCUSSION

A.  <u>Whether There Existed An Implied Agreement To Limit Depositions</u>

In opposing Defendants' motion, Landmark first claims the parties had an "implicit agreement" and/or a "mutual understanding" that they "are only entitled to take one deposition for each witness in their personal capacity or as a 30(b)(6) witness, and neither party has objected to this limitation." (Docket No. 132 ("Opp'n") at 1-3.) Landmark cites to both Defendants' and its objections to the parties' respective 30(b)(6) deposition notices, which state that the parties object to producing their Rule 30(b)(6) witnesses for separate depositions in their individual capacities, and that if a party wants to depose a witness in both their individual and corporate capacities, it should be done during the same deposition. (*Id*. at 3 (citing to Kwon Decl., Exs. D & E at 1).)

Aside from this, though, no other evidence suggests that such an "implied agreement" existed. In fact, a March 2010 letter from counsel for Defendants appears to indicate otherwise. (Ragland Decl., Ex. 9.) Without more, the Court cannot find that there was an "implied agreement" in this regard.

Landmark's argument that it is a burden to depose these individuals more than once also fails. (Opp'n at 3-5.) It is clear that the fact that a party has already taken depositions of individuals does not insulate a corporation from producing <u>the same individuals</u> as corporate representatives to

give Rule 30(b)(6) depositions on <u>the same topics</u>. *See Ice Corp. v. Hamilton Sundstrand Corp.*, No. 06-2399-JAR-DJW, 2008 WL 4724471, at *3-4 (D.Kan. Oct. 24, 2008); *Sabre v. First Dominion Capital, LLC*, No. 01-2145, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001).

B. <u>The Disputed Deposition Topics</u>

1. <u>Topic Nos. 7, 8, 11-14, and 34-35</u>

a. <u>Topic Nos. 7 and 8</u>[1]

Landmark objects to Topic Nos. 7 and 8 because they contain patent terms of art, such as "inventions," "used, implemented, and/or embodied" in Topic No. 7, which are subjects on which only expert witnesses can testify, and because they bear upon the scope of patent claims (Landmark's "understanding" in Topic No. 8), which is a matter of law for the court.[2]  (Opp'n at 9-10.) Defendants disagree with this characterization of the topics. Topic No. 7, they say, "simply seeks to question Landmark about what technology is contained in its own billboard" and Topic No. 8 "rather simply asks Landmark to explain its understanding of" what patent rights has, lost, or gained from the '574 Patent, the '916 Divisional Patent, and/or the Reissue Patent. (*Id*. at 14-15.)

Both parties cite to case law on this issue. Landmark points to several cases where courts have held that topics requiring legal conclusions are impermissible for a Rule 30(b)(6) witness. (Opp'n at 7-8 (citing, *e.g.*, *Lenz v. Universal Music Corp.*, No. C-07-03783, 2010 WL 1610074 (N.D. Cal. Apr. 20, 2010); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996)).) Defendants rely on others where courts have acknowledged the well-established rule that

---

[1] Topic No. 7 seeks testimony regarding "[w]hether and when any of the purported inventions contained, incorporated, or disclosed in the '096 PATENT APPLICATION, '574 PATENT and/or '916 DIVISIONAL APPLICATION were used, implemented and/or embodied in the BILLBOARD." Topic No. 8 seeks testimony about "LANDMARK'S understanding of the invention(s) disclosed in the '096 PATENT APPLICATION, '574 PATENT, '916 DIVISIONAL APPLICATION, REISSUE APPLICATION and/or REISSUE PATENT and whether that understanding changed over time."

[2] Landmark also makes two other arguments. First, it argues that the Reissue Patent is irrelevant "because it cannot recover Landmark's lost patent rights." (Opp'n at 10.) However, Defendants have asserted, among others, the affirmative defenses of failure to mitigate and unclean hands (Motion at 10), and parties are generally entitled to discovery relevant to their defenses, FED. R. CIV. P. 26(b)(1). Because the Reissue Application and Reissue Patent could relate to Landmark's mitigation of damages, Landmark's argument on this point fails. Second, Landmark argues that Defendants have access to the expert reports submitted by Landmark during the arbitration, and those reports detail its "lost" intellectual property rights and their use by third parties. (Opp'n at 10.) Defendants, however, point out that they were not parties to the arbitration and the expert used in the arbitration has not been designated as an expert in this case. (Docket No. 134 ("Reply") at 10.) And as explained above, the Court is not persuaded by Landmark's burdensome argument.

fact witnesses may testify about ultimate issues, even those involving legal concepts, and have failed to disallow topics merely because they contain patent law terms.  (Reply at 9-12 (citing, *e.g.*, *CellNet Data Systems, Inc. v. Itron, Inc.*, 178 F.R.D. 529, 533-34 (N.D. Cal. 1998) (although an inventor's testimony might involve statements that could be characterized as "legal conclusions," that is no basis for depriving defendant of full access to what the inventor thought the key phrases in their patent claims meant); *see also McCormick-Morgan, Inc. v. Teledyne Industries, Inc*., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991)). )

While the Court does not believe that these topics are as "simple" as Defendants contend, it is nevertheless satisfied that Topic Nos. 7 and 8 do not necessarily seek "legal conclusions" as Landmark suggests.  Accordingly, Landmark shall designate a witness on these topics.  That said, the Court cautions Defendants not to stray too far into the area of legal conclusions in its questioning during the deposition.

### b.  Topic Nos. 11-14[3]

Landmark objects to these topics because they "seek legal conclusion and expert testimony, requiring the application of substantive patent law, by requiring Landmark to designate a fact witness to testify as to whether any persons or entities 'practice' various patent claims."  (Opp'n at 12.)  Landmark also again argues that it has asserted no damages in connection with the '574 Patent, the Reissue Application, or the Reissue Patent and so they are not relevant.  (*Id*. at 13.)  As with Topic Nos. 7 and 8, the Court is satisfied that Topic Nos. 11 through 14 do not necessarily seek legal conclusions.  Furthermore, as explained above, the Court believes that the '574 Parent, the Reissue Application, and the Reissue Patent may be relevant to Defendants' mitigation of damages defense.  Accordingly, Landmark shall designate a witness on these topics as well.

### c.  Topic Nos. 34 and 35[4]

---

[3] Topic No. 11 seeks testimony regarding "LANDMARK'S knowledge of and information about any person or entity that practices or has practiced any of the claims in the '574 PATENT."  Topic No. 12 seeks testimony regarding "LANDMARK'S knowledge of and information about any person or entity that practices or has practiced any of the claims in the '916 DIVISIONAL APPLICATION."  Topic No. 13 seeks testimony regarding "LANDMARK'S knowledge of and information about any person or entity that practices or has practiced any of the claims in the REISSUE APPLICATION."  Topic No. 14 seeks testimony regarding "LANDMARK'S knowledge of and information about any person or entity that practices or has practiced any of the claims in the REISSUE PATENT."

5

Landmark argues that these topics seek legal contentions and expert testimony because "[t]here is no factual testimony that Landmark could possibly give as to actions that 'would have been' available" were it not for Defendants' alleged conduct. (Opp'n at 14.) Defendants argue that these topics concern Landmark's need to prove that it suffered "detriment proximately caused by the defendant's tortious conduct." (Motion at 9 (citing *OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 870 (2007)).) Thus, Defendants contend that "[t]o establish that it was harmed, therefore, Landmark must prove that it would have been able to correct the alleged errors in the '916 Divisional Application but-for Defendants['] alleged fraud, and ultimately obtain a patent on those claims." (*Id.*)

Indeed, Landmark's argument is odd given that it alleged in its Second Amended Complaint that a "number of steps" could have been taken "to save Landmark's patent rights" and then goes on to list four specific examples of such steps.[5] (SAC, ¶¶ 35-39.) It is reasonable for Defendants to ask Landmark about these allegations. As such, Landmark shall designate a witness on these topics.

### 2. Topic Nos. 43-48[6]

Landmark objects to these topics because they lack "reasonable particularity" and "broadly seek, without differentiation or specification, testimony regarding 'Landmark's responses' to hundreds of discovery requests propounded on Landmark in this action and in prior litigation

---

[4] Topic No. 34 seeks testimony regarding "[a]ny and all actions that would have been available to LANDMARK with regard to the June 22, 2004 notice from the PTO, including but not limited to those alleged in SAC ¶¶35-39." Topic No. 35 seeks testimony concerning "[a]ny and all results that allegedly would have been gained from taking any and/or all of the steps discussed in Topic 34, above."

[5] Landmark alleges that (1) "the missing portions of the '916 divisional application," (2) "a new patent application covering the patent rights as claimed or disclosed in the '916 divisional application," and/or (3) an "effective petition" in response to the PTO notice, all could have been submitted to the PTO. (SAC, ¶¶ 36-39.)

[6] Topic No. 43 seeks testimony regarding "LANDMARK'S responses to MORGAN LEWIS'S First Set of Special Interrogatories (dated May 4, 2006) in the STATE COURT ACTION." Topic No. 44 seeks testimony regarding "LANDMARK'S responses to Pennie & Edmonds LLP's First Set of Special Interrogatories (dated April 7, 2006) in the STATE COURT ACTION." Topic No. 45 seeks testimony regarding "LANDMARK'S responses to Pennie & Edmonds LLP's First Set of Interrogatories (dated July 23, 2007) in the PENNIE ARBITRATION." Topic No. 46 seeks testimony regarding "LANDMARK'S responses to Pennie & Edmonds LLP's Second Set of Interrogatories (dated September 5, 2007) in the PENNIE ARBITRATION." Topic No. 47 seeks testimony regarding "LANDMARK'S claims in the PENNIE ARBITRATION, including but not limited to the claims, allegations, evidence and argument contained in LANDMARK'S Trial Brief (dated February 4, 2008)." Topic No. 48 seeks testimony regarding "LANDMARK'S responses to MORGAN LEWIS'S written discovery in this action."

proceedings by Defendants and Pennie."[7] (Opp'n at 14.) It says it would be impossible for it to prepare a witness to testify about this many discovery requests. (*Id*. at 14.)

During discussion on this issue at oral argument, Defendants agreed give up on Topic Nos. 43, 44, and 48 and to limit the testimony requested by Topic Nos. 45, 46, and 47. Specifically, Defendants agreed to limit Topic No. 45 by seeking testimony regarding only Interrogatory No. 1; to limit Topic No. 46 by seeking testimony regarding only Interrogatory Nos. 3 and 4; and to limit Topic No. 47 by seeking testimony regarding only the "Summary of the Evidence" section of Landmark's Trial Brief.

The Court believes that Defendants' newly narrowed topics no longer lack "reasonable particularity." Indeed, Defendants have specifically identified the three interrogatory responses and the section of the brief about which it intends to inquire. Thus, Landmark shall designate a witness on the narrowed Topic Nos. 45, 46, and 47 but it need not do so for Topic Nos. 43, 44, and 48.

### 3. Topic Nos. 15-16[8]

Landmark objects to these topics because they are "unduly burdensome" as they seek "duplicative and irrelevant information or information that is simply unavailable." (Opp'n at 18.)

As noted earlier, Defendants have asserted, among others, the affirmative defenses of failure to mitigate and unclean hands. This, Defendants say, puts at issue Landmark's business plans and strategy to deal with the alleged loss of the '916 Divisional Application rights as well as "whether Landmark was forthcoming with the PTO in the process of seeking and/or obtaining the intellectual property rights related to its digital billboard." (Motion at 10-11.) In support of their argument, they point out that Landmark's majority owner, John Mozart, already testified during his individual deposition that he pursued the Reissue Patent to "salvage" intellectual property rights that had been "lost." (*Id*. at 18.)

Landmark argues that its "business and financial reasons" for pursuing the Reissue Patent are "completely irrelevant" to damages. (Opp'n at 19.) It says that whether the Reissue Patent

---

[7] Rule 30(b)(6) requires that a party seeking to name an entity as a deponent under the rule "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6).
[8] Topic No. 15 seeks testimony regarding "[t]he business and financial reason(s) why LANDMARK prosecuted the REISSUE APPLICATION." Topic No. 16 seeks testimony regarding "LANDMARK'S COMMUNICATIONS with the United States Patent and Trademark Office REFERRING OR RELATING TO the REISSUE APPLICATION and/or REISSUE PATENT."

7

actually mitigates its damages depends on the proper scope of the claims of the reissue patent, which is a purely legal question and subject to a pending motion for partial summary judgment. (*Id.*)

Defendants have a right to discovery regarding its defenses. FED. R. CIV. P. 26(b)(1). Thus, testimony related to Landmark's mitigation of damages is relevant. As John Mozart already testified that the Reissue Patent was pursued to salvage lost rights, and Landmark did not object to this line of questioning as irrelevant at that time, Defendant should be able to ask Landmark about the same thing. As such, Landmark shall designate a witness on Topic No. 15.

Landmark argues that Topic No. 16 is "unreasonable and nonsensical" as it has already explained in its interrogatory responses that it had no oral communications with the PTO regarding the Reissue Application or Patent. (*Id*. at 20; Kwon Decl., ¶ Ex. S.) All of Landmark's communications with the PTO, then, would be contained in the public prosecution history files for the Reissue Patent, which has already been produced to Defendants, and any other related communications would be privileged. (Opp'n at 20.) But as Defendants correctly point out, "in responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position." *Great Am. Ins. Co. of New York v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (E.D. Pa. 2006) (internal citation omitted). As such, Landmark shall designate a witness on Topic No. 16, but it may object during the deposition should any questions seek privileged information.

C. Landmark's Administrative Motion to Seal

Landmark filed along with its opposition an administrative motion to file under seal Exhibits A and B to the Declaration of Inchan A. Kwon pursuant to Civil Local Rule 79-5. (Docket No. 130.) Exhibits A and B are selected pages from the deposition transcripts of Landmark witnesses and which were designated by Landmark as confidential pursuant to the stipulated protective order in the case. (*See* Docket No. 52.) Since these transcript pages reflect Landmark's confidential business information which is not intended for public disclosure, the Court will grant Landmark's administrative motion.

**CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to compel. Specifically, Landmark shall designate a Rule 30(b)(6) witness for Topic Nos. Topic Nos. 7, 8, 15-16, 11-14, 34-35, and 45-47 (limited as described above), but it need not designate a witness for Topic Nos. 43-44 and 48. In addition, Landmark's administrative motion to file certain documents under seal is GRANTED. Landmark shall file Exhibits A and B to the Declaration of Inchan A. Kwon in accordance with the procedures set forth in General Order No. 62.

**IT IS SO ORDERED.**

Dated: August 13, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C08-02581 JF (HRL)Notice will be electronically mailed to:**

| | |
|---|---|
| Clark S. Stone | clark.stone@haynesboone.com, sjctemp1@haynesboone.com |
| Courtney Towle | ctowle@texarkanalaw.com |
| Edward John McIntyre | emcintyre@swsslaw.com, dpierson@swsslaw.com |
| Elliot Remsen Peters | epeters@kvn.com, aap@kvn.com, efiling@kvn.com |
| Inchan Andrew Kwon | inchan.kwon@haynesboone.com, edward.kwok@haynesboone.com, efilesjc@haynesboone.com, sjctemp1@haynesboone.com |
| John Elliot Trinidad | jtrinidad@kvn.com, efiling@kvn.com |
| Steven Mark Levitan | steve.levitan@haynesboone.com |
| Steven Paul Ragland | sragland@kvn.com, dmiller@kvn.com, efiling@kvn.com, jwinars@kvn.com |
| Wendy Jill Thurm | wthurm@kvn.com, efiling@kvn.com, llind@kvn.com, pwm@kvn.com |
| William N. Kammer | wkammer@swsslaw.com, dpierson@swsslaw.com, rtang@swsslaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**