**E-Filed 9/14/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br><br>    v.<br><br>MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership; and THOMAS D. KOHLER, an individual,<br><br>    Defendants. | Case Number 5:08-cv-02581-JF/HRL<br><br>**ORDER[1] GRANTING MOTION FOR LEAVE TO FILE SURREPLY; AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[re: document nos. 113, 119] |

    Plaintiff Landmark Screens, LLC ("Landmark") alleges that it lost divisional patent application claims as a result of the wrongful conduct of Defendants Thomas Kohler ("Kohler") and Morgan, Lewis & Bockius, LLP ("Morgan Lewis"). Kohler and Morgan Lewis seek partial summary judgment that Landmark's right to damages (if any) arising from the alleged loss of certain claims was cut off when Landmark obtained a reissue patent on November 10, 2009. The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on May 14, 2010. For the reasons discussed below, the motion will be granted.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

In November 2000, Landmark retained Kohler, then a partner at the law firm Pennie & Edmonds, LLP ("Pennie"), to secure patent rights covering Landmark's invention of an allegedly "revolutionary" outdoor light-emitting diode ("LED") electronic billboard. In January 2002, Kohler filed a patent application that was assigned Application No. 10/045,096 ("the '096 application"). The U.S. Patent and Trademark Office ("PTO") determined that the application covered four distinct inventions:[2] (1) an LED having a threshold operator; (2) calibrating a display and mapping the digital image; (3) detecting absence of a second image and inputting a default image; and (4) selecting a color gamut. The PTO required Landmark to elect claims drawn to only one invention.[3] Landmark elected the claims drawn to an LED having a threshold operator. Landmark expected to pursue the nonelected claims drawn to the other three inventions through a divisional application. In October 2003, Landmark was awarded U.S. Patent No. 6,639,574 ("the '574 patent") on the elected claims.

On August 13, 2003, Kohler filed a divisional application containing the nonelected claims, which was assigned Application No. 10/640,916 ("the divisional application"). It is undisputed that Kohler failed to include the specification in the divisional application. In early 2004, Kohler left the Pennie firm and became a partner at Morgan Lewis. In April 2004, Landmark appointed Morgan Lewis as its attorney in connection with the '574 patent and the divisional application.

On June 22, 2004, the PTO notified Kohler that the divisional application was incomplete. Kohler did not inform Landmark of the notice. On August 23, 2004, Kohler filed an adversary petition with the PTO requesting that the divisional application be granted the January

---

[2] Landmark contends that the '096 application covered more than four inventions.

[3] In general, a patent is limited to one invention. If a patent application claims more than one invention, the PTO can require the applicant to "divide up" the inventions. 35 U.S.C. § 121. The applicant then must choose one invention for the original "parent" application and pursue the remaining inventions through a "divisional" application. *Id.* A properly filed divisional application is entitled to the same filing date as the original parent application. *Id.*

2002 filing date of the original '096 application. Kohler did not inform Landmark of the filing of the adversary petition. On November 30, 2004, the PTO dismissed the adversary petition for "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes and rules of practice," and granted the divisional application a filing date of August 23, 2004.

Landmark was not entitled to patent protection for any subject matter of the divisional application that was in public use, sold or offered for sale, or disclosed in a printed publication more than one year before the filing date of the divisional application. Landmark's entire original '096 application, which contained all the claims of the divisional application, had been published by the PTO on July 10, 2003, more than one year prior to the August 23, 2004 date of the divisional application. Accordingly, the loss of the earlier filing date deprived Landmark of any patent protection for the claims of the divisional application. Landmark alleges that Kohler and Morgan Lewis fraudulently concealed the PTO's June 2004 notice of deficiency as well as Kohler's filing of the adversary petition. Landmark seeks to recover, *inter alia*, damages flowing from its loss of the claims of the divisional application.

In October 2005, Landmark retained new patent counsel, MacPherson Kwok Chen & Heid LLP ("MacPherson"). On October 28, 2005, MacPherson filed a reissue application seeking to broaden the scope of the '574 patent. On November 10, 2009, Landmark was granted patent number RE40,953 ("the reissue patent"). The reissue patent includes the twenty-three elected claims that issued as the '574 patent, and new claims 24-66.

Kohler and Morgan Lewis contend that the reissue patent's Independent Claim 43 and Dependent Claims 44-56 are broader than and inclusive of the divisional application's allegedly "lost" Independent Claim 1 and Dependent Claims 2-4 and 12-21. They likewise contend that the reissue patent's Independent Claim 58 and Dependent Claims 59-66 are broader than and inclusive of the divisional application's allegedly "lost" Independent Claim 42 and Dependent Claims 43-44 and 46-51. Consequently, Kohler and Morgan Lewis seek partial summary judgment that Landmark's right to damages (if any) for the "loss" of the divisional application's Independent Claim 1 (and Dependent Claims 2-4 and 12-21) and Independent Claim 42 (and

Dependent Claims 43-44 and 46-51) was cut off as of November 10, 2009, the date of the reissue patent.

## II. LEGAL STANDARD

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117 (9th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). When determining whether an issue of material fact remains for trial, the court "must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986)).

## III. DISCUSSION

**A.   Surreply**

Resolution of Defendants' motion turns in large part upon this Court's interpretation of *In re Orita*, 550 F.2d 1277 (CCPA 1977) and *In re Doyle*, 293 F.3d 1355 (Fed. Cir. 2002). Defendants did not cite *Doyle* in their moving papers, but they discuss it extensively in their reply brief. Landmark seeks leave to file a surreply to address Defendants' discussion of *Doyle.* After considering Landmark's motion, Defendants' opposition thereto, and the proposed surreply, the Court concludes that Landmark's motion to file a surreply is an appropriate response to arguments made by Defendants for the first time in their reply brief, and that consideration of the surreply will aid the Court in disposing of the pending motion for partial summary judgment. Accordingly, Landmark's motion to file a surreply will be granted.

**B.   Abstention**

On November 30, 2005, Landmark filed suit against Kohler, Pennie, and Morgan Lewis in the Santa Clara Superior Court, alleging legal malpractice, negligence, and breach of fiduciary duty. Landmark arbitrated its claims against Pennie and Kohler in his capacity as a Pennie partner, and it settled those claims in March 2008. In April 2008, Morgan Lewis and Kohler in his capacity as a Morgan Lewis partner demurred to Landmark's state court complaint on the

4

ground that the superior court lacked subject matter jurisdiction. The superior court sustained the demurrer and dismissed the action. On March 29, 2010, the California Court of Appeal affirmed the judgment of dismissal. Landmark's petitions for rehearing and for review were denied on April 28, 2010 and July 14, 2010, respectively.

In its papers and at the hearing, Landmark requested that this Court abstain from determining Defendants' motion for partial summary judgment during the pendency of the state court appeal. The Court indicated at the hearing that it was not inclined to abstain. Because the state appellate process is now complete, Landmark's request is moot.

**C.     Effect Of The Reissue Patent**

As noted above, Kohler and Morgan Lewis assert that certain claims of the reissue patent are broader than and inclusive of certain "lost" claims of the divisional application, and thus that Landmark's right to damages for those "lost" claims was cut off as of the date of the reissue patent. Landmark argues that as a matter of law, claims that are lost as a result of a deficient divisional application cannot be recovered by means of a reissue patent. Defendants agree with Landmark's statement of the law, but they assert that while a reissue patent may not be sought for the express purpose of recovering claims lost as a result of a deficient divisional application, a reissue patent may broaden the scope of the patented invention(s) such that the reissue patent reads on previously "lost" divisional application claims.

The reissue statute reads in relevant part as follows:

> Whenever any patent is, through *error* without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or *by reason of the patentee claiming more or less than he had a right to claim in the patent*, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251 (emphasis added).

*Orita* and *Doyle* are of particular interest in interpreting § 251 in the context of the instant case. In *Orita*, the Court of Customs and Patent Appeals addressed whether the failure to file a divisional application in response to a restriction requirement is an "error" sufficient to justify a

reissue patent under § 251.  The applicants in *Orita* agreed to the restriction requirement imposed by the examiner and cancelled the nonelected claims.  However, they admittedly "forgot" to file a timely divisional application covering the nonelected claims.  *Orita*, 550 F.2d at 1279.  Following issuance of the patent on the elected claims, the applicants requested reissue, seeking to add claims that were substantially identical to the nonelected claims of the original application.  The court upheld the denial of the reissue application, holding that the applicant knowingly acquiesced in the restriction requirement and thus could not argue later that omitting the nonelected claims was "error" within the meaning of the reissue statute.  *Id*. at 1280.  The court held that while the applicants "undoubtedly erred by failing to file a timely divisional application in order to obtain a divisional patent," there was no error in the patent that issued on their elected claims:  "Patentees claimed exactly what they had a right to claim in the patent, no more nor less, and [the applicants'] failure to timely re-file does not change this fact."  *Id*.

In *Doyle*, the applicant originally filed an application that, according to the examiner, attempted to claim nine distinct inventions.  The examiner imposed a nine-way restriction requirement.  The applicant elected one group of claims and cancelled the other pending claims.  The applicant did not file a divisional application directed toward the nonelected claims during the pendency of the original patent application that ultimately issued as the '595 patent.  However, after issuance of the '595 patent, the applicant filed a request for reissue, asserting that the claims of the '595 patent were narrower than they should have been in light of the patent's disclosures and the prior art.  He sought to broaden the claims of the '595 patent by adding new claims that admittedly read on, but were broader than, the nonelected claims of the original patent application.

The examiner rejected the new claims in part based upon *Orita*.  The Federal Circuit reversed, characterizing the issue before it as follows:  "This case involves a matter of first impression:  whether failure to present a so-called linking claim, a claim broad enough to read on – or link – two or more groups of claims subject to a restriction requirement, is an error correctable by reissue."  *Doyle*, 293 F.3d at 1358.  The court answered in the affirmative.  The court noted that "[t]he so-called *Orita* doctrine . . . precludes a reissue applicant from obtaining

Case No. 5:08-cv-02581-JF/HRL
ORDER GRANTING MOTION FOR LEAVE TO FILE SURREPLY; AND GRANTING MOTION FOR PSJ
(JFLC2)

substantially identical claims to those of nonelected groups identified in an examiner's restriction requirement when such claims could not have been prosecuted in the application from which they were restricted." *Id*. at 1359.  The court concluded that *Orita* did not apply because the applicant's new claims were neither identical nor substantially similar to the nonelected claims. *Id*.  The court concluded that "Dr. Doyle's new claims are genus claims, whereas the nonelected claims are species that fall within the new genus claims.  In other words, the reissue claims are substantially broader than the claims of the nonelected groups." *Id*. at 1360.  The court noted that the applicant could have prosecuted his new claims with the elected claims because the new claims were linking claims. *Id*.  Because the applicant could have – indeed, should have – asserted the broader linking claims in the original application, the original application contained an "error" within the meaning of § 251 in that it claimed less than the applicant had a right to claim.

The instant case appears to fall squarely within the holding of *Doyle*.  A side-by-side comparison of the divisional application's "lost" Independent Claims 1 and 42 with the reissue patent's Independent Claims 43 and 58 is illustrative:

| **"Lost" Divisional Application Claim 1** | **Reissue Patent Claim 43** |
|---|---|
| A method for displaying an image on a light-emitting diode (LED) display, the display comprising a matrix of pixels, each pixel made up of at least four LEDs each capable of emitting light at an individual chromaticity, the method comprising: | A method for displaying an image on a light-emitting diode (LED) display, the display comprising a matrix of pixels, each pixel made up of at least four LEDs each capable of emitting light at an individual chromaticity, the method comprising: |
| specifying a color to be displayed at a pixel; | specifying a color to be displayed at a pixel; |
| selecting at least one desired operating characteristic for said pixel; | |
| selecting a color gamut containing said specified color and having at least one operating parameter corresponding to said at least one desired operating characteristic, said color gamut being selected from a plurality of possible color gamuts, each color gamut in said plurality being defined by a different set of said at least three LEDs of said pixel and being associated with at least one operating parameter; and | selecting a color gamut from a plurality of color gamuts, each color gamut being defined by three or more of said LEDs, according to the specified color and an operating characteristic; and |
| generating said specified color with said selected color gamut. | generating said specified color using said selected color gamut. |

| "Lost" Divisional Claim 42 | Reissue Patent Claim 58 |
|---|---|
| A light-emitting diode (LED) display system, comprising: | A light-emitting diode (LED) display system, comprising: |
| a matrix of pixels, each pixel made up of at least four LEDs each capable of emitting light at an individual chromaticity, said LEDs being combinable in at least four separate sets, each set defining a color gamut associated with at least one operating parameter; and | a matrix of pixels, each having a plurality of LEDs, each pixel emitting light of four or more different chromaticities forming a color gamut associated with an operating parameter; and |
| at least one processor controlling said pixel matrix, said processor receiving information from a user specifying a color to be displayed at a pixel and at least one desired operating characteristic for said pixel, said at least one processor | a processor controlling the matrix of pixels, the processor (a) receiving information specifying each color to be displayed on the LED display system and specifying an operating characteristic for that pixel, and |
| selecting the color gamut containing said specified color wherein said at least one operating parameter corresponds most closely to said at least one desired operating characteristic, generating a signal for creation of said specified color by said pixel with said selected color gamut. | (b) selecting the color gamut for each pixel by matching the operating parameter of the gamut to the specified operating characteristic. |

As is apparent, the divisional application claims contain limitations not present in the reissue patent claims. The Court concludes that the reissue patent claims are significantly broader than and inclusive of the "lost" divisional application claims. Specifically, the Court concludes that the reissue patent reads on the divisional application's Independent Claim 1 (and Dependent Claims 2-4 and 12-21) and Independent Claim 42 (and Dependent Claims 43-44 and 46-51). Thus any damages flowing from Landmark's loss of these divisional application claims were cut off by the reissue patent.[4]

Landmark argues that under *Orita*, the reissue claims cannot be construed as encompassing the nonelected claims that were lost as a result of the defective divisional application. Landmark takes too expansive a view of *Orita*. "*In re Orita* did not create a broad rule disallowing any reissue claims that read on nonelected subject matter." *Doyle*, 293 F.3d at 1361. Reissue is permitted when the new claims to be added are significantly broader than the nonelected claims. *Id*. at 1361-62.

---

[4] Landmark points out that the instant motion addresses only certain of the claims contained in the divisional application, and asserts that the proposed damages cut-off would not apply to other claims contained in the divisional application. Landmark is correct, of course; this order cuts off Landmark's damages only as to the claims expressly identified and discussed herein.

Landmark argues that the divisional application claims now are in the public domain and cannot be recovered. "However, the public knows, or should know, that an issued patent can be broadened by reissue . . . [t]he public is therefore on notice that at least some matter can be 'dedicated to the public' in error, and that the error, if caught in time, can be corrected by reissue." *Id*. at 1364. "[I]f the patentee succeeds in obtaining a reissue that alters the scope of her right to exclude, then the public interest is protected through intervening rights." *Id*.

**D.   Doctrine Of Intervening Rights**

The Patent Act provides in relevant part as follows:

> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252.

"This section provides that when certain conditions are present a reissue shall not abridge or affect certain rights of those who acted before the reissue was granted." *Seattle Box Co., Inc. v. Industrial Crating and Packing Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985). "Because of such pre-reissue activity, an infringer might enjoy a 'personal intervening right' to continue what would otherwise be infringing activity after reissue." *Id*. (citing 3 Chisum, Patents, § 15.02[6] (1984)). "The underlying rationale for intervening rights is that the public has the right to use what is not specifically claimed in the original patent." *Id*. "Recapture through a reissue patent of what is dedicated to the public by omission in the original patent is permissible under specific conditions, but not at the expense of innocent parties." *Id*. "Therefore, one may be able to continue to infringe a reissue patent if the court decides that equity dictates such a result." *Id*.

9

1    Landmark argues that even if the reissue patent recaptures claims lost as a result of the
2 incomplete divisional application, a prospective licensee that already was practicing those claims
3 (or that has made substantial preparation to do so) likely would be unwilling to take a license and
4 might be permitted to keep infringing the reissue patent.  Landmark argues that under such
5 circumstances, its damages would not be cut off as of the date of the reissue patent.

6    While it theoretically is correct that the doctrine of intervening rights might apply to the
7 reissue patent, Landmark presents no evidence that any prospective licensee in fact has asserted
8 or will assert the doctrine.  This is a motion for partial summary judgment.  Landmark may not
9 avoid an adverse ruling simply by presenting conjecture regarding the potential assertion of the
10 doctrine by a hypothetical licensee.

## IV. ORDER

(1)    Plaintiff's motion for leave to file a surreply is GRANTED; and

(2)    Defendants' motion for partial summary judgment is GRANTED.  Landmark's right to damages (if any) for the "loss" of the divisional application's Independent Claim 1 (and Dependent Claims 2-4 and 12-21) and Independent Claim 42 (and Dependent Claims 43-44 and 46-51) was cut off as of November 10, 2009, the date of the reissue patent.

DATED:  9/14/2010

_____
JEREMY FOGEL
United States District Judge

Case No. 5:08-cv-02581-JF/HRL
ORDER GRANTING MOTION FOR LEAVE TO FILE SURREPLY; AND GRANTING MOTION FOR PSJ
(JFLC2)