Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Howard R. Lloyd, Magistrate Judge

|                                  |     |                  |
|----------------------------------|-----|------------------|
| Landmark Screens, LLC,           | )   |                  |
|                                  | )   | No. C08-0258-IJF |
|           Plaintiff,             | )   |                  |
|      vs.                         | )   |                  |
|                                  | )   |                  |
| Morgan, Lewis & Bockius, LLP     | )   |                  |
| et al,                           | )   |                  |
|                                  | )   |                  |
|           Defendant.             | )   |                  |

San Jose, California
Tuesday, August 10, 2010

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES:**

For Plaintiff:

    Haynes and Boone, LLP
    2033 Gateway Place
    Suite 400
    San Jose, CA 95110
    **BY:   INCHAN ANDREW KWON**
          **ATTORNEY AT LAW**

For Defendant:

    Keker & Van Nest
    710 Sansome Street
    San Francisco, CA 94111
    **BY:   STEVEN PAUL RAGLAND**
          **ATTORNEY AT LAW**

Transcribed By:   Stacy Wegner
          Transcriptionist
          smwtyping@yahoo.com
          (859) 539-2802

1    <u>Tuesday, August 10, 2010</u>                        <u>10:31 a.m.</u>

2

3          **THE COURT:**  Okay.  Landmark Screens versus Morgan,

4    Lewis & Bockius.

5          **MR. RAGLAND:**  Good morning, Your Honor.  Steven

6    Ragland on behalf of Defendants, Morgan, Lewis & Bockius and

7    Thomas Kohler.

8          **MR. KWON:**  Good morning, Your Honor.  Inchan Kwon on

9    behalf of Plaintiff, Landmark Screens.

10          **THE COURT:**  Hello, Mr. Kwon.  Hello, Mr. Ragland.

11          **MR. KWON:**  Good morning.

12          **MR. RAGLAND:**  Good morning.

13          **THE COURT:**  All right.  This is Defendant's motion

14    to compel FRCP 30(b)(6) designations and the testimony of the

15    Plaintiff.  It's kind of a complex factual background, but I

16    don't think I need to recite it for the record.  I've seen you

17    people before.

18          Basically, the only claim remaining is one for

19    fraudulent concealment.  It's against Mr. -- what's his name -

20    - Kohler?

21          **MR. RAGLAND:**  Yes, Your Honor, against Mr. Kohler

22    and also against the firm.

23          **THE COURT:**  And against his current law firm, Morgan

24    and Lewis, claiming that he, they or -- fraudulently concealed

25    the -- the fact that the U.S. Patent Trademark Office denied a

1  divisional application, and that Kohler and Morgan Lewis is

2  delayed in advising the Plaintiff in this, and as a

3  consequence, the Plaintiff has suffered damages, which the

4  Defendants dispute.

5          So -- and -- and -- I'm going to -- so we don't get

6  bogged down in talking about it, I'm not impressed by this

7  argument that there was an implied agreement to limit

8  deposition, so we can forget about that one for purposes of

9  arguments today.

10         So Defendant wants to take the 30(b)(6) deposition

11  of Landmark, and listed a whole bunch of topics, and Landmark

12  objects to 16 of the noticed topics, claiming -- these claims

13  don't apply to all of them.  Some reasons apply to some and

14  some to others -- that they seek legal conclusions and expert

15  testimony.  That they do not specify the requested area of

16  testimony with reasonable particularity, and/or that they are

17  otherwise burdensome because they requested duplicate forms of

18  discovery.

19         First are -- I'm going to kind of lump these

20  together just to make it easier to deal with them -- topics

21  number seven and eight.  Whether and when any of the purported

22  inventions contained, incorporated or disclosed in the nine --

23  in the 096 Patent or -- or these other things were used,

24  implemented and/or embodied in the billboard.

25         Why shouldn't I allow those?

4

1      **MR. KWON:**  Your Honor, this is basically seeking a

2  legal conclusion as to what the inventions are.  I mean,

3  they're -- they're asking for a fact witness to designated by

4  Landmark to testify as to what the inventions are and whether

5  these claims are actually used or embodied.

6      And as Morgan Lewis knows, I mean, these are terms

7  of art in the patent world, and -- and we just don't think

8  it's appropriate to seek this kind of discovery through

9  30(b)(6) fact witness deposition testimony.

10      **MR. RAGLAND:**  Your Honor, may I respond?

11      **THE COURT:**  Yeah.

12      **MR. RAGLAND:**  We're not looking for expert

13  conclusions.  We're not looking for legal conclusions.  We're

14  looking for the facts.

15      Landmark claims that it was damaged to the tune of

16  millions of dollars because it lost certain patent claims.

17  What we're asking is -- Okay.  "Landmark Screens, you run a

18  billboard.  That billboard contains certain things in it.

19  What are those things?  When were they put in?  When were they

20  -- when were they not put in?"  It's factual information about

21  what Landmark actually uses of its technology.

22      And you know, if they're -- if there are legal

23  conclusions at the deposition that Landmark believes questions

24  go to, they can object at the time.  It's no excuse to refuse

25  a designated witness on this.

1          And also, I'll add, they refused to answer fully in

2     written discovery what these very facts are, and they

3     contradicted positions from prior litigation in state court

4     and in -- and in arbitration proceedings on these very topics.

5          So we're left facing a multi-million dollar claim

6     with no idea what the factual basis is for Landmark's claim

7     that it lost millions of dollars in technology rights.

8          **MR. KWON:**  Your Honor, may I respond to that?

9          **THE COURT:**  Yeah.  Okay.  But we're not going to go

10    back and forth.

11         **MR. KWON:**  Right.  No.  No.

12         **THE COURT:**  Go ahead.

13         **MR. KWON:**  I just want to point out, Your Honor,

14    they've had -- they've -- they've deposed the inventor.

15    There's only one inventor on these patents.  They've had him

16    for deposition testimony.

17         We did not attempt to stop him from testifying as to

18    his under -- his understanding of the billboard, of what he

19    invented.  They asked questions about the patent.  We didn't

20    try to stop him from testifying to those.

21         We, frankly, think all they're seeking with these

22    topics is legal conclusions.  They don't want the facts.  They

23    want to somehow get some sort of binding admission from us

24    about what these things are, and we just don't think that's

25    appropriate.  We haven't even done expert discovery yet.  That

1    -- that hasn't even been scheduled.

2          And -- and to the extent that -- I mean, they keep

3    saying they're looking for facts, but we still don't really

4    know what these facts are that they're looking for.  You know,

5    they -- as I said, they -- they've -- there aren't that many

6    factnesses -- relevant factnesses to this case, Your Honor.

7          They've -- they've had -- they've -- they've had

8    everybody.  There's two principals to the entity.  There's one

9    inventor.  There was one employee of one subsidiary.  They've

10   had the financial officer testify.

11         And we designated on -- I -- I -- I believe

12   approximately 30, 35 30(b)(6) topics for it out of the 40 odd

13   -- nearly 50 topics that they designated, and we properly

14   objected to these because we think that they've had an

15   opportunity to get the discovery that they want, and all they

16   really are seeking at this point is further legal conclusions

17   or -- or expert testimony about these topics.

18         **MR. RAGLAND**:  Your Honor, if I may very briefly just

19   respond directly to what -- what was just said?

20         **THE COURT**:  And Mr. Kwon is going to want to very

21   briefly.

22         **MR. RAGLAND**:  Okay.  If -- if the Court doesn't -- I

23   -- I can pass, but there were just two things I wanted --

24         **THE COURT**:  If you have something new and (Inaudible

25   - - due to simultaneous colloquy.)

1      **MR. RAGLAND**:  Yes.  Yes, very -- very quickly.

2  First, they're -- the fact that the inventor was deposed is

3  not controlling here because he's not a party and there's a

4  long line of authority that says that doesn't (inaudible) the

5  30(b)(6).

6          Also, a very specific fact, which we lay out on

7  paper, is that we want to know -- previously Landmark claimed

8  that certain -- certain of its technology were put into use in

9  December of 2000 in its billboard.  That was in prior

10 litigation.

11         Now, they're saying, "No.  No.  No.  No.  That's not

12 the case."  All they've told us is they weren't put in use in

13 December 2000.  It was sometime thereafter.  Those are facts.

14 We need to know when they actually put this stuff in their

15 billboard to justify their claim of damages.

16     **THE COURT**:  Well, why does asking you what -- when

17 you put the patented stuff in the billboard involve legal

18 conclusions?

19         **MR. RAGLAND**:  Well --

20     **THE COURT**:  Was it something you wanted patented,

21 but apparently didn't get patented, I guess (inaudible).

22     **MR. KWON**:  Well, Your Honor, as you -- as you know,

23 patent law is sort of a complex intertwining of factual and

24 legal issues.

25         **THE COURT**:  Yeah, I agree with that.

1    **MR. KWON**:  And -- and the  -- and the -- and the

2    problem here is what they're asking the inventor is -- I mean,

3    what -- what they should be asking the inventor is what was

4    his understanding of what was in the billboard at a given

5    time, which I don't believe they've asked specifically, but

6    what --

7    **THE COURT**:  (Inaudible - - due to simultaneous

8    colloquy.) they ask you in 30(b)(6)?

9    **MR. KWON**:  Well again, Your Honor -- I mean, the

10   30(b)(6) topic is seeking us to basically come up with a --

11   it's essentially contention that they're seeking.  They're

12   seeking our contention as to when these inventions were put in

13   the board at what time.

14   **THE COURT**:  Well, when does the contention become a

15   fact?  I guess I'm unclear on how you draw the line.

16   **MR. KWON**:  Well, I mean -- Your Honor, our position

17   is -- first of all, we -- we've been in litigation for close

18   to five years.  Many --

19   **THE COURT**:  Now --

20   **MR. KWON**:  We -- we --

21   **THE COURT**:  -- have I seen you that long?

22   **MR. KWON**:  Not -- not -- not before you, Your Honor.

23   **THE COURT**:  Oh, okay.

24   **MR. KWON**:  But the parties have been in litigation

25   over this issue --

1        THE COURT:  Okay.

2        MR. KWON:  -- for close to five years.

3        THE COURT:  I see.

4        MR. KWON:  So we're not talking -- we're not talking

5   out of a vacuum of discovery here.  I mean, it's not as if we

6   haven't had significant discovery go on before.  And in fact,

7   we've had previous expert testimony before about some of these

8   issues.

9        I don't -- I mean, our -- our position is to the

10  extent that any -- to the extent that they're requiring us to

11  designate a fact witness to say, "Well, you know, the

12  inventions were in use at this -- such and such time," that's

13  a question that basically involves, not only a combination of

14  the facts of what they thought they had invented and what they

15  had put into the board, which is perfectly legitimate, but

16  it's also asking us to basically come up with an

17  interpretation of the claims involved and -- and say, "Well,

18  this is the invention.  This is the invention and this is with

19  -- this was used at a certain time."

20        THE COURT:  All right.

21        MR. KWON:  And it's also asking --

22        THE COURT:  I understand what you're saying.

23        Mr. Ragland, what -- what -- what Mr. Kwon is saying

24  is that necessarily, in order to answer that question, it

25  would involve the -- it would involve a legal conclusion as to

1  what the claims in the patent mean for a patent application.

2  I'm not sure which we're talking about anymore.  And so isn't

3  that the sort of legal stuff?

4         I mean, it's quite different than your imagery of

5  taking the thing and putting it in the billboard.  I mean,

6  that's a little simplistic.

7         **MR. RAGLAND:**  Well -- well, Your Honor -- I mean, we

8  are asking specifically what things were on the billboard.

9  That is one piece of this that's very important.

10        **THE COURT:**  Yeah, but the -- the thing -- the things

11 are actually claims, aren't they?

12        **MR. RAGLAND:**  Well --

13        **MR. KWON:**  That's correct, Your Honor.  I mean, they

14 -- they keep saying in their motion that they asked about

15 technology, but they never used the word technology in any of

16 these topics.  All these topics ask for is inventions and

17 claims, and these are intrinsically legal conceptions that we

18 don't think a fact witness should be designated to testify on.

19        **MR. RAGLAND:**  Well, Your Honor, Landmark claims that

20 it lost certain patent rights.  That's a factual -- there will

21 have to be facts underlying that claim in order for it to,

22 under Rule 11, file a complaint in this court -- in this

23 courtroom.

24        They have said that they lost certain claims.  They

25 must have some understanding -- and there is law that -- that

1  the party has to understand what it thinks it lost.  If it --

2  if this were a different type of thing -- yes, it involves

3  patent claims, that's true.

4       And the words that were used are not all patent

5  terms of art.  We used every explanation we could imagine of

6  what was in there -- "use, embody, incorporate" -- so that we

7  would convey the idea that we just want to know in December

8  2000, when Landmark's first Screen into place, did they have -

9  - did they network it with a computer, for example?

10      Not a patent claim, but the facts as to how the

11 technology worked and what they put in it.  They have to know

12 that.  They have to know that in order to satisfy the burden

13 of making factual allegations here, and they're not answering

14 it.  Moreover, they contradicted prior positions that they've

15 taken.

16      **THE COURT**:  Well, I don't know if that's important

17 for my purposes, is it?

18      **MR. RAGLAND**:  Well, I think it is important, Your

19 Honor, because that shows -- we need to test whether or not

20 their allegations have a factual basis or whether they're --

21 they're merely conclusory.

22      We then would be facing a trial unable to respond to

23 their damages claims.  We don't know exactly how they claim

24 their damage.  They say, "We're damaged by millions of

25 dollars.  We've lost certain patent rights."  Well, what are

1   those?  Not a matter of patent law, but what do you understand

2   to be the things that you have lost, why they're valuable, and

3   who else is using them?  These are very basic questions.

4        We not asking -- it's unlike the -- the 3M case

5   where the questions went specifically as to, you know, whether

6   something was a trademark violation or not.  We're not asking

7   whether it was patentable or not even.  We're asking, "What

8   are the specific things that you claim you lost or the

9   specific things that you understand you have and what are the

10  differences?"

11       **THE COURT:**  You know -- but Mr. Kwon, there's a case

12  that says -- a Northern District of California case -- that

13  "Although an inventor's testimony might involve statements

14  that could be characterized as 'legal conclusions,' that is no

15  basis for depriving the Defendant of full access to what the

16  inventor thought the key phrases in their patent claims

17  meant."

18       Now, is the -- is the 30(b)(6) witness different

19  than an inventor for this purpose?

20       **MR. KWON:**  I believe it is, Your Honor, and -- and

21  as I -- and I --

22       **THE COURT:**  Tell me why.

23       **MR. KWON:**  Well, as I explained before, Your Honor,

24  we presented the inventor for deposition, and they had the

25  opportunity to ask questions and -- and we didn't prevent

1    that.

2           With respect to 30(b)(6), Your Honor, I mean --

3    well, first of all, I guess from a practical consideration,

4    we're not sure what the difference is on one perspective

5    because a 30(b)(6) is going to be the person most

6    knowledgeable as to the facts known by the corporation, the

7    entity, which, as I've pointed out in the papers, Your Honor,

8    is a two-person LLC.

9           And they -- they deposed everybody already, so the

10   question of who to designate -- I mean, they could have

11   figured out who to ask questions --

12          THE COURT:  Oh, you mean there's only a choice of

13   two?

14          MR. KWON:  Exactly, Your Honor.  I mean, we're --

15   we're not talking about hiding the ball in the corporation.  I

16   mean, they know who ask questions, and they -- they -- they're

17   well aware of who knows what within our -- our corporate

18   structure.

19          THE COURT:  So -- so when is that -- why do I care

20   about that?

21          MR. KWON:  Well, Your Honor -- I mean, again, the

22   point is we -- we provided testimony through the inventor who

23   was designated on a number of other topics, including -- such

24   as -- such as when the -- when the billboard was conceived and

25   designed and how it was developed, and all sorts of things,

1 which are related to what it seems like they're asking for.

2       And -- and may I also point out, Your Honor, all

3 this stuff that they're asking now in the motion is stuff that

4 they never at all -- at any point had mentioned to us during

5 meet and confer.  I mean, this is all stuff -- I mean, they

6 clearly are aware there's a problem because they keep trying

7 to ask for things now that they didn't ask for in meet and

8 confer.

9       And -- and -- and -- and our point, Your Honor, is

10 number one, the designation by the corporation has the

11 potential to essentially put us in a position where be --

12 where -- where they're trying to trap Landmark into some kind

13 of corporate admission, which --

14     **THE COURT:**  That's -- that's what litigants do.

15 They try to -- they try to put the opponent in a box, right?

16      **MR. KWON:**  That's right, Your Honor, but again --

17     **THE COURT:**  Well, that isn't necessarily bad.

18      **MR. KWON:**  That's correct, Your Honor, but again,

19 our -- our point is this -- this a burdensome exercise.  They

20 -- they've had the opportunity to get the depo -- the

21 testimony they wanted.  They've had the inventor.  They knew

22 what he was going to know about, and -- and they asked

23 questions, in fact, Your Honor, about the inventions, which we

24 did not prevent him from testifying on.  We only objected to

25 the extent that they were seeking for a legal conclusion or

1   expert testimony.

2           **THE COURT:**  Okay.  So you're not looking for expert

3   testimony here, are you?

4           **MR. RAGLAND:**  We are not, Your Honor.  We're looking

5   for the facts that underline Landmark's claims, and some of

6   them go to -- to technology issues.  Some of them go into

7   their claim that -- that they were conceal -- certain

8   information was concealed from them.

9           We don't know what information that is,

10  specifically.  Previously, they said they knew everything in

11  March of 2005.  Now, with a three-year statute of limitations,

12  based on -- on this, they said, "No.  No.  No.  It's" --

13          **THE COURT:**  This isn't the -- this isn't the --

14          **MR. RAGLAND:**  November.

15          **THE COURT:**  -- concealment issue here.  This is --

16          **MR. RAGLAND:**  You're --

17          **THE COURT:**  What -- what's in the electronic

18  billboard that you didn't get the patent?  Maybe that's a

19  better way of putting it.

20          **MR. RAGLAND:**  That's correct, Your Honor.  Landmark

21  must have some understanding of how it was damaged, how those

22  things that it claims a loss are valuable.

23          We don't know that.  We did depose the inventor.  We

24  got some information, but first, he's not a party, and yes,

25  we're trying to trap him --

1    **THE COURT:**  (Inaudible - - due to simultaneous

2    colloquy.)

3    **MR. RAGLAND:**  -- into party admissions.  I admit

4    that.

5    **THE COURT:**  -- we don't know.  We need an expert to

6    tell us.

7    **MR. RAGLAND:**  Well, there -- they can say that at

8    the deposition, but we're not asking the expert opinion.

9    We're asking what -- whoever their most knowledgeable person

10   is as to, in December 2000 when they put their billboard up,

11   was it connected to a computer?  Was there a camera attached

12   to it?

13        Very specific information as to what they claim they

14   lost, what they would use.  It's that level.  It's not saying,

15   "Is this claim patentable?"  It's saying, "Did you use a

16   camera?  Were you connected to the internet?"  Very basic

17   things like that.

18   **THE COURT:**  Yeah.  Well, I guess they say that the -

19   - the question -- or excuse me -- the topic is framed in terms

20   of claims, which makes them nervous.

21   **MR. RAGLAND:**  Well, if they're nervous, they can

22   certainly object and instruct not to answer at the deposition.

23   We have done our best --

24   **THE COURT:**  Well --

25   **MR. RAGLAND:**  We have done our best to explain what

1  we wanted -- yeah -- what we wanted.  We want to know what was

2  in their billboard -- what they claim they lost.  They have

3  alleged that they lost certain valuable patent rights.  That

4  they would be revolutionizing the industry if they had them.

5  Okay.

6          So all we want to do is say, "What is your factual

7  basis for that?  Okay.  What else?"

8          **THE COURT:**  All right.

9          **MR. RAGLAND:**  "Okay.  What else."

10         **THE COURT:**  Okay.  Well, we could go and forth

11  (inaudible) forever.

12         Topics 11 through 14 deal with, "The knowledge and

13  information about any person or entity that practices or has

14  practiced any of the claims in the 574 Patent or the 916

15  Divisional Application, any -- anybody that's practiced any of

16  the claims in the Reissue Application or in the Reissue

17  Patent."

18         "Objection to this.  It seeks legal conclusion and

19  expert testimony."

20         It's very much like the one we just talked about.

21         **MR. RAGLAND:**  In some respects, Your Honor --

22         **THE COURT:**  I should have just lumped it with the

23  other one, rather than talk about it separately.

24         **MR. RAGLAND:**  All right.  Let me -- let me --

25         **THE COURT:**  Then I wouldn't have to listen to you

1 hash those out.

2    **MR. RAGLAND:** Let me just point out one thing, if I

3 may, Your Honor. Landmark itself saying on its website that

4 its technology is superior to its competitors.

5    **THE COURT:** What -- what do you expect it to say?

6    **MR. RAGLAND:** Well, there -- exactly, Your Honor,

7 but the position they're taking here in this motion is that

8 that is an expert conclusion or a legal conclusion. It's not.

9 It's them knowing what they do, what their competitors do, and

10 why what they do is so much better.

11    **THE COURT:** Well, you can -- a nice way you could

12 ask them, "What is the -- what are -- what's the facts behind

13 your assertion?"

14    **MR. RAGLAND:** That's --

15    **MR. KWON:** (Inaudible - - due to simultaneous

16 colloquy.)

17    **MR. RAGLAND:** That's all we want to ask, Your Honor.

18 They claim that they lost certain technology that's so

19 valuable. Okay. What are the facts? Who else is interested?

20 Is anyone else using it? Is the -- is the industry moving

21 towards for more colored LED or not?

22    **THE COURT:** Oh, you mean that --

23    **MR. KWON:** Yeah.

24    **THE COURT:** They said they lost something, and

25 you're saying, "Well, did somebody else get it?"

1    **MR. RAGLAND:**  Exactly.  "Or is someone using it?  Is

2    someone else interested in buying it from you?  Is there any

3    value in the market?"

4    **THE COURT:**  If they lost it, someone is not going to

5    buy it from them, are they?

6    **MR. RAGLAND:**  Well, they claim that they've got some

7    claims --

8    **THE COURT:**  (Inaudible - - due to simultaneous

9    colloquy.)

10   **MR. RAGLAND:**  -- some rights and they lost others,

11   Your Honor.

12   **THE COURT:**  (Inaudible - - due to simultaneous

13   colloquy.)

14   **MR. KWON:**  Your Honor, if I can just address a

15   couple of quick points?  First of all, again -- I mean, part

16   of the question here is what's the appropriate tool of

17   discovery for this.

18   I mean, they're asking us to designate a 30(b)(6)

19   fact witness, basically, prepare them, bring them out for

20   seven hours of deposition.  I mean, these are -- these are the

21   sorts of information that is typically obtained through

22   contention interrogatories, as the case law that we cited

23   points out.

24   I mean, a contention interrogatory is a much more

25   appropriate vehicle for this, because it's intrinsically,

1  again, combining these legal and factual issues in the same

2  place.  Whereas, with any of these -- if we were to designate

3  a fact witness on any of these topics, I mean, we would

4  essentially have to prepare them to testify, not only --

5          **THE COURT:**  Well, some of it -- even if you did a

6  contention interrogatory or responded to one, at some point

7  they would say, "What are the facts behind the contention?"

8          **MR. KWON:**  Yes, Your Honor.  But I mean, at least at

9  that point they would tell us what the facts are that they're

10  looking for.  At this point all we see is claims, inventions.

11  I mean, already I've already heard him try to narrow some of

12  these down and say, "Well, what we really want is this or what

13  we really want is that."

14          And the -- and the second point, Your Honor, is just

15  the issue of damages.  I mean, the key point -- and the fact

16  that these are somehow relevant to damages, and therefore,

17  they're entitled a 36 witness.

18          But, you know, in -- in -- in -- in this case,

19  damages is going to be intrinsically involved in the expert

20  testimony because it's -- it's involving the evaluation of

21  patent claims that never issued.  We're going to have to bring

22  someone in to basically do an analysis of -- of the industry

23  out there, who's possibly using claims, who's possibly using

24  inventions that we could have gotten, but lost because of the

25  alleged fraudulent conduct.

1     And -- and -- and these particular topics, 11, 12,

2  13, 14 -- I mean, three of them ask about patents that we

3  haven't even asserted.  The 574 Patent is not an issue for us.

4  The Reissue Patent is not -- we're not claiming anyone uses

5  these claims, so we, frankly, don't really understand what

6  they're looking for as far as these topics go.

7     **THE COURT:**  Okay.  Why do you need these topics

8  about patents that are -- that are -- they say are not an

9  issue?

10     **MR. RAGLAND:**  Well, Your Honor, because they are at

11  issue.  What happened is Landmark got certain patent rights,

12  the 574.  Then there's a divisional application that was not

13  successful.  Then there were -- then for years they pursued a

14  Reissue Patent of the original 574.  All of these involved

15  claims for four or more color -- for more LED technology.

16     So it's important what do they understand they have

17  in this bucket of the Reissue, versus this bucket of the 574,

18  both of which they got.  And then they say they lost these

19  valuable technology rights that are worth of millions of

20  dollars.  What exactly are they?  How are they different than

21  the others?  Again, not expert, but -- not legal conclusions,

22  but their understanding.

23     They claim they would have lost licensing revenue.

24  Well, "What's your basis for claiming in your complaint that

25  you would have got licensing for these lost technology pieces?

1    What's your basis for that?"

2          I don't really think that Landmark is saying they

3    have no factual basis for their claims of damages here because

4    they couldn't survive a motion to dismiss -- or rather that

5    would -- that would violate their duty to have a good faith

6    basis.  I don't think that that can be the case.

7          **THE COURT**:  Let's move on to topics 34 and 35.  34

8    is, "Actions that would have been available to Landmark with

9    regard to the June 22, 2004, notice from the PTO, including

10   but not limited to those alleged in -- in the second amended

11   complaint."

12         So that's what -- what could you have done if you

13   had known sooner --

14         **MR. RAGLAND**:  Yes, Your Honor.

15         **THE COURT**:  -- is what that's asking?

16         **MR. RAGLAND**:  Yes, Your Honor.

17         **THE COURT**:  And then number 35 is, "Any or all

18   results that allegedly would have been gained from taking any

19   of those steps that you identify in 34 above."

20         So what would you have -- what could you have done

21   if you had known -- in other words, if it hadn't been

22   concealed (inaudible)?

23         **MR. RAGLAND**:  Yes, Your Honor.

24         **THE COURT**:  And what would have happened.  There's a

25   degree of speculation there, but nevertheless, what's wrong

1   with that?

2         **MR. KWON**:  Well, Your Honor, our -- our position

3   with that is simply -- I mean, how would -- how would Landmark

4   have a fact witness to testify about this?  What's the

5   percipient fact?  I mean, the point is Landmark didn't know.

6         **THE COURT**:  Right.  But -- but don't you have to

7   show causation?  Isn't this sort of like -- you know, like may

8   -- maybe they screwed it up, but did it hurt you?

9         **MR. KWON**:  Yes.  Yeah --

10        **THE COURT**:  Well -- well, then -- well, then it

11  seems to me you'd have to show how and why.

12        **MR. KWON**:  Well, again, Your Honor, this goes back

13  to whether or not a 30(b)(6) deposition is really the

14  appropriate way to get this kind of discovery.  I mean, we've

15  made allegations -- very specific allegations in the complaint

16  about what actions could have been taken in response to --

17        **THE COURT**:  Well, then what's the harm in -- in

18  being deposed about that?

19        **MR. KWON**:  Well, I guess our -- Your Honor, I mean,

20  we're -- we're not clear what a fact witness is supposed to

21  add to the -- the topic, other than -- because any information

22  they would have had as far as what actions might have been

23  available and what results might have been gained -- I mean,

24  that -- that would all have been as a result of consultations

25  with competent counsel subsequent to the filing the lawsuit.

1      **THE COURT:**  All right.

2      **MR. RAGLAND:**  Your -- your --

3      **THE COURT:**  Let's go --

4      **MR. RAGLAND:**  May I be heard very briefly on that,

5  Your Honor?

6      **THE COURT:**  Go Ahead.  Okay.

7      **MR. RAGLAND:**  First, they do have to prove

8  approximate causation.  A deception without resulting loss is

9  not actionable fraud, and there's --

10      **THE COURT:**  Isn't that what I just suggested?

11      **MR. RAGLAND:**  Yeah.

12      **THE COURT:**  Although --

13      **MR. RAGLAND:**  Yeah.

14      **THE COURT:**  -- I couldn't think of the phrase

15  "actionable causation."

16      **MR. RAGLAND:**  Really.  And I'll just add very

17  briefly, Your Honor, these specific factual allegations,

18  Landmark added those to survive the motion to dismiss.  There

19  were two rounds of motions to dismiss.  They particularized

20  these allegations there.  They have to have a factual basis

21  for that, and that's all we're asking.

22      **THE COURT:**  All right. Let's move on.  These are

23  topics 43 through 48.  Up to this point I've kind of been

24  leaning towards the Morgan Lewis argument, but I'm not sure

25  about these.

1        43 says we want -- basically it says, "We want -- we

2    want to depose the 30(b)(6) about the -- your answers to the

3    first set of interrogatories in the state court action," which

4    proceeded this.

5        44 says, "We want to depose you of -- about your

6    answers to a different Defendant's set of special

7    interrogatories in the state court action."

8        45 says, "We want to question the witness about

9    Landmark's answers to a first set of interrogatories in an

10   arbitration," which is also part of the background of this

11   mess.

12       And then 46, the second of set of interrogatories in

13   the arbitration.

14       And then 47 is, "We want to just question the

15   30(b)(6) about the allegations and claims in Landmark's trial

16   brief in the arbitration."  It's not really a trial brief.

17   It's an arbitration brief.

18       And then 48 is Landmark's responses to all of the

19   discovery in this action, which I'm told consists of 24

20   interrogatories and 94 requests for admissions, and not the

21   225 document production requests because they could be dealt

22   with or would be dealt with or maybe have been dealt with by

23   custodian of records.

24       (Inaudible) the beef is that you're not saying what

25   you want with reasonable particularity, and to say to the

1   30(b)(6) witness, "We want to ask you questions about all of

2   the discovery that you have responded to in the state court

3   action and in arbitration in this action" -- I guess you could

4   argue well, that's very particular -- "we know exactly what we

5   want to ask you about."  I mean, that's an awful lot of stuff.

6          **MR. RAGLAND**:  Well, Your Honor, let me just focus on

7   a couple of these.  Let's -- let's focus, if I might, on

8   topics 45 and 46.  These are two sets of interrogatories.

9   Each set only has two questions.

10         Number 45, the first question says that, "Morgan

11  Lewis fraudulently concealed the nature and extent of their

12  malpractice from on or about June 24th, 2004, until March

13  29th, 2005."  If that's the case -- if the concealment ended

14  in March 2005, Landmark is time barred for its fraud action.

15         They have taken the position in this litigation,

16  "No.  No.  No.  No.  No.  We were concealed until November

17  2005; therefore, there's no statute of limitations problem."

18         We need to ask them what happened.  We have asked

19  them written discovery and contention interrogatories, "Okay.

20  What happened between March 2005 and November 2005 that was

21  the further concealment?"

22         We haven't gotten information from them exactly what

23  happened or what happened, rather, at the date they answered

24  this interrogatory in 2007.  What happened between that and

25  2010?  What did they learn that they didn't know in 2007, when

1  they said the concealment ended in 2005 -- in March of 2005?

2        That's a very key issue, and if they can't explain

3  what happened between when they answered this interrogatory in

4  2007 for topic number 45 -- what information they learned then

5  versus now -- they have no basis for their claim and it's time

6  barred.

7        **THE COURT:**  Okay.  So you're saying there's only two

8  interrogatory questions on both 45 and 46?

9        **MR. RAGLAND:**  That's correct, Your Honor.

10       **THE COURT:**  Okay.  Well, some of these other ones --

11  I don't know if it's 43 or 44 -- maybe it's both of them -- we

12  took a look at those interrogatories and the state court

13  action, and it seems to be there were a bunch of them and they

14  were all over the map.

15       **MR. RAGLAND:**  Well, Your Honor, I would ask --

16  because I can see where the Court is leaning -- and I would

17  ask that the ones that we focus on here are 45 and 46 and the

18  trial brief, which also took positions that contradict the

19  litigation positions here.  Those are things that we don't

20  understand what Landmark learned between 2007 -- or 2008 and

21  now.

22       **THE COURT:**  So you think you've got them in some

23  inconsistencies and you want to explore that?

24       **MR. RAGLAND:**  Yes, Your Honor.

25       **THE COURT:**  Could you introduce the -- the

1  interrogatory responses from the arbitration as an exhibit in

2  this matter?

3          **MR. RAGLAND:**  You know, we've thought about that,

4  and -- and I don't know.

5          **THE COURT:**  (Inaudible - - due to simultaneous

6  colloquy.)

7          **MR. RAGLAND:**  It's a -- you know, I -- that would be

8  up to Judge Fogel ultimately.  We just don't know.

9          But we shouldn't be left guessing until trial to

10  know whether or not they're time barred.  I mean, that's a --

11  that's a summary judgment issue.

12          **THE COURT:**  Well (Inaudible - - due to simultaneous

13  colloquy.)--

14          **MR. KWON:**  Your Honor, if I might just add?

15          **THE COURT:**  Hold on.  Hold on.

16          **MR. KWON:**  Sorry.

17          **THE COURT:**  I'm not finished yet with --

18          **MR. KWON:**  Yeah.

19          **THE COURT:**  -- Mr. Ragland.  Well, how about 48,

20  which is the 24 interrogatories and the 94 requests for

21  admissions in this action?

22          **MR. RAGLAND:**  Your Honor, again, I -- I -- I think

23  that I -- I -- if it will help the Court -- if it will help

24  our position, I will narrow it to 43 --

25          **THE COURT:**  It won't help --

1     **MR. RAGLAND**:  -- or 40 -- all right.  I'm sorry.

2     **THE COURT**:  (Inaudible - - due to simultaneous

3   colloquy.)

4     **MR. RAGLAND**:  If it will please the Court?

5     **THE COURT**:  Oh, I'm always pleased.  It might

6   possibly help your position.

7     **MR. RAGLAND**:  Right.  If we can focus on 45, 46 and

8   47, again, which is just four interrogatories -- actually,

9   only number -- interrogatory number one of 45 is relevant here

10  -- 45, 46 and 47, then we will give up the others.

11    **THE COURT**:  All right.  Mr. Kwon, the Defense

12  Counsel says that you -- your client has taken inconsistent

13  positions on key factual points in earlier discovery.  They

14  want to explore these inconsistencies with your 30(b)(6).

15  What's wrong with that?

16    **MR. KWON**:  Well, Your Honor, first of all, I want to

17  dispute the characterization of what we may have or may not

18  have admitted in the previous brief.

19    **THE COURT**:  That's -- I -- I -- I'll grant you that.

20  Let's -- let's assume it's perfectly innocuous, but they think

21  it's got some -- some -- some beef.

22    **MR. KWON**:  Right.  Well, Your Honor, I mean, if --

23    **THE COURT**:  What's wrong with them exploring?

24    **MR. KWON**:  Well, first of all, if they had asked

25  that, we might have thought about it differently, but this,

1   again, did not come up --

2          THE COURT:  Are you changing your mind?

3          MR. KWON:  -- (Inaudible - - due to simultaneous

4   colloquy.) meet and confer.  No, Your Honor, but --

5          THE COURT:  Are you withdrawing your objection?

6          MR. KWON:  But I suspect, also, their request to

7   narrow this to 45, 46 and 47 -- I mean, it's still overbroad,

8   Your Honor.  First of all, they're still asking about

9   everything in the trial brief.  I don't believe all of that,

10  or even most of that, is relevant to what they really want

11  and, I suspect, what is all pertaining to the same issue as

12  inconsistent statements.

13         So if they want to limit it to the specific

14  inconsistent statements that they think we made --

15         THE COURT:  Yeah, but see, you don't agree that --

16  that any of them are inconsistent, so that isn't going to help

17  this.

18         MR. KWON:  Well, we might be able to agree to

19  provide testimony on specifically identified factual topics,

20  if they care to offer them, but -- but what we are avoid -- we

21  don't we can agree to is just to, you know, willy-nilly say,

22  "Well, all these responses, all these brief contentions are

23  open for 30(b)(6) fact discovery."

24         And this is stuff, Your Honor, that could have been

25  addressed in meet and confer.  If they had wanted to narrow it

1    down to something, they could have done so, and they --

2            **THE COURT:**  Oh, I --

3        **MR. KWON:**  -- they frankly didn't.

4            **THE COURT:**  -- I wouldn't agree with that.  I -- I

5    see more motions that could have been resolved, or at least

6    streamlined dramatically if counsel had done a workman like

7    job -- work person like job in meet and confer.

8            **MR. RAGLAND:**  Your Honor, I have to respond to that

9    point.  This is the second time that -- that it's been raised

10   by Landmark.  Landmark --

11           **THE COURT:**  I wasn't casting aspersions on you --

12           **MR. RAGLAND:**  I understand, Your Honor.

13           **THE COURT:**  -- in particular.

14           **MR. RAGLAND:**  I understand, Your Honor.  I just need

15   to respond to Mr. Kwon.

16           One of the problems with meet and confer is that

17   they refuse to talk to us live.  Everything has to be in

18   writing.  That makes it cumbersome and impossible and

19   (inaudible).  That's -- I just want to respond to that.  I,

20   you know, want to make it clear that we make every effort

21   possible to meet and confer.

22           But perhaps it would help if we actually look at

23   topics 45, 46 and 47, what -- they're very specific.  Exhibit

24   21 is regarding topic 45, and the very first interrogatory --

25   it's a very specific question.

1      **THE COURT:**  Okay.  I didn't bring all that out.  I

2  couldn't carry it.

3      **MR. RAGLAND:**  Very well, Your Honor.  And -- and --

4  but my point is that Landmark asked -- says, "Oh, no, we need

5  to be very specific."  Well, all we're talking about with 45

6  is one question -- one response that directly contradicts

7  another exhibit.

8      **THE COURT:**  Question number one?

9      **MR. RAGLAND:**  Yes, question number one.

10      **THE COURT:**  Okay.  Go ahead.

11      **MR. RAGLAND:**  Number 46, all we're asking for is two

12  questions, one and two.

13      **THE COURT:**  And there are only one and two on it?

14      **MR. RAGLAND:**  That is correct, Your Honor.

15      **THE COURT:**  Okay.

16      **MR. RAGLAND:**  And for 47, it's the trial brief,

17  which has a specific section titled, you know, "facts" -- or

18  you know -- I -- I can turn to it, as soon as I find exactly

19  which exhibit it is, but --

20      **THE COURT:**  You only want to inquire as to the facts

21  section of the (inaudible)?  Is that what you're talking

22  about?

23      **MR. RAGLAND:**  Yes, Your Honor.  They have a whole

24  section, "Summary of the evidence."  They make factual

25  allegations in here --

1      **THE COURT:**  Oh, so you want to inquire on the

2  summary of the evidence?

3      **MR. RAGLAND:**  Yes, Your Honor.

4      **THE COURT:**  Is that it?

5      **MR. RAGLAND:**  Yes.  Yes.  Those are the factual --

6  the factual allegations they make in the trial brief.

7      **THE COURT:**  And it's under the heading, "Summary of

8  the evidence"?

9      **MR. RAGLAND:**  "Summary of the evidence."

10     **THE COURT:**  All right.  Can we go on now?

11     **MR. RAGLAND:**  Yes, Your Honor.

12     **THE COURT:**  15 and 16, "Business and financial

13 reasons why Landmark prosecuted the Reissue Application."

14     This was after that -- you became aware of the

15 problem and you did the Reissue Application?

16     **MR. KWON:**  I believe that's correct, yes.

17     **THE COURT:**  Okay.  Because I did -- by this point,

18 I'm confused.

19     **MR. KWON:**  Right.

20     **THE COURT:**  And topic 16, "Landmark's communication

21 with the USPTO referring or relating to the Reissue

22 Application and/or the Reissue Patent."

23     What's wrong with those?

24     **MR. KWON:**  Well, number 15, Your Honor, is -- first

25 of all, it's irrelevant.  Their contention, as we understand

1  it, is that -- just to clarify, we haven't -- we have alleged

2  that we've lost certain claims in the 916 Divisional

3  Application, which was improperly filed after the original

4  application.

5         We later on filed a Reissue Application broadening

6  the Reissue on the original issue patent that we did get,

7  which claims certain additional rights that we argued

8  successfully with the Patent Office that we should have had

9  with the original patent.

10        **THE COURT:**  So you retrieved some of what was

11  allegedly lost?

12        **MR. KWON:**  We're retrieving some of what was

13  originally lost, yes, but not what we are alleging was lost in

14  this case.  Now --

15        **THE COURT:**  This is the lost forever stuff?

16        **MR. KWON:**  Well, it's -- right.  Right.  Right.

17  Originally -- in the -- in the -- in the previous case we

18  alleged that there were certain claims that they also didn't

19  draft in the first instance that they should have drafted, and

20  those -- you know, essentially that subject matter is open for

21  Reissue, but in any case -- so -- so their contention is that

22  this Reissue somehow mitigates or could mitigate damages

23  suffered by Landmark in this case.

24        And our contention, as was argued in the motion of

25  preliminary judgment that was heard back in June before Judge

1   Fogel, is that the Reissue is irrelevant as a matter of law.

2   I mean, by law, under the relevant authority, the Reissue

3   cannot recover any of the lost subject matter of the

4   Divisional.

5           So with that as a background, the business and

6   financial reasons why Landmark pursued the -- pursued the

7   Reissue Application is irrelevant, because what's really

8   relevant is does the Reissue, in fact, recover any of this or

9   not?

10          It doesn't really matter why Landmark might have

11  decided to go for the Reissue, in terms of the damages in this

12  case, because whether or not the Reissue can or cannot reclaim

13  any of these lost rights is a matter of law.  It's a claims

14  (inaudible) issue, Your Honor.

15          **MR. RAGLAND:**  Your Honor, we're not getting into any

16  of that.  We are getting into why the -- as it says, the

17  business and financial reasons.  These are -- these are why

18  Landmark has decided to pursue it.  At deposition, they were

19  instructed not to answer.  How that can be a privileged thing,

20  I don't know --

21          **MR. KWON:**  That's not correct, Your Honor.

22          **MR. RAGLAND:**  -- but the fact is that Landmark

23  pursued this Reissue over many years, starting October of 2005

24  before the -- before they started this -- this litigation, I

25  mean, in any -- any sense.  Why did they do that?  What do

1   they understand that they gained from the Reissue versus what

2   they lost is another -- is another issue.  It's key.  It's

3   key.  They think it's irrelevant.  We don't.

4        I've never believed that one party holds the reigns

5   of relevance or could determine relevance, especially when

6   it's information that we believe is relevant to our defenses.

7   It goes to mitigation.  It also -- their -- number 16 goes to

8   conduct before the PTO.  That goes to our affirmative defense

9   of uncleaned hands.

10       These are things that we believe are relevant.  And

11  again, the test, of course, is could lead to the -- the

12  discovery of -- of relevant evidence, not just pure relevance.

13           **MR. KWON**:  Your Honor, if I may?

14           **THE COURT**:  Yeah.

15           **MR. KWON**:  I apologize.  It's incorrect to say that

16  our -- the deponent refused to answer questions about the

17  business financial reasons.  He gave his testimony regarding

18  the business financial reasons why the Reissue was prosecuted.

19       He -- he testified in deposition that it was to

20  recover something, and beyond that was he didn't have full

21  understanding because it involved a legal issue.  And it was

22  apparently -- his testimony was that it was -- it was on the

23  advice of counsel, as well, so it's -- it's -- it's false to

24  say that he didn't provide testimony.

25       But in any event, Your Honor, again, it's -- whether

1   or not the Reissue has any relevance is a -- is a clear legal

2   issue, as we've both argued in the -- in the motion for

3   summary judgment, and whatever reasons Landmark may have had

4   for pursuing it is not really any relevant to any damages

5   issue in this case.

6          And it -- it -- and -- and it's -- frankly, it's --

7   it's something they could have asked, and they did ask, and it

8   was answered at deposition.  They just -- I don't -- we're not

9   really clear what exactly further that they want, but we don't

10  think it justifies having to prepare a -- a full new 30(b)(6)

11  deposition on this topic.

12         **MR. RAGLAND:**  Your Honor, I just need to point out -

13  - this is Exhibit 11 to the reply declaration, the deposition

14  of Michael Wilson, one of the Landmark principals -- the

15  question at page 13 -- 314:

16         "What did you discuss with Mr. Mozart" -- the other

17  Landmark principal -- "about whether or not Landmark Screens

18  should file the re -- a Reissue Patent application?"

19         Landmark counsel's says, "I'm going to object to the

20  question as seeking attorney-client privileged communication

21  and instruct the witness not to answer."

22         Your Honor, we've been trying to find out why it

23  spent -- Landmark spent three years pursuing this Reissue if

24  it didn't get back some of what they claim was lost.  We just

25  want to know what their understanding of that is, the facts --

1  the fact underlying it.  It -- we believe it's a very key

2  fact.  They claim irrelevance.  We disagree.

3      **THE COURT:**  (Inaudible - - due to simultaneous

4  colloquy.) the privilege claim at this point.

5      **MR. RAGLAND:**  I understand, Your Honor, but -- but

6  Landmark should have to designate a 30(b)(6) most

7  knowledgeable person about the business reasons why they

8  pursued it.

9      **THE COURT:**  Matter submit.

10      **MR. RAGLAND:**  Thank you, Your Honor.

11      **MR. KWON:**  May I just briefly address number 16 as

12  well, Your Honor?  Just a factual point.

13      The topic is seeking something about our

14  communications with the USPTO.  As we pointed out to them, we

15  had no other communications, other than what was in the file

16  with the PTO, so anything beyond that we are alleging is

17  privilege.

18      **THE COURT:**  All right.  Matter submitted.

19      **MR. RAGLAND:**  Thank you, Your Honor.

20          (Proceedings adjourned at 11:12 a.m.)

21

22

23

24

25

1

2

3

4

5                    **CERTIFICATE OF TRANSCRIBER**

6

7          I certify that the foregoing is a true and correct

8    transcript, to the best of my ability, of the above pages of

9    the official electronic sound recording provided to me by the

10   U. S. District Court, Northern District of California, of the

11   proceedings taken on the date and time previously stated in

12   the above matter.

13         I further certify that I am neither counsel for,

14   related to, nor employed by any of the parties to the action

15   in which this hearing was taken; and, further, that I am not

16   financially nor otherwise interested in the outcome of the

17   action.

18

19   _____   9/23/10

20         Signature of Transcriber      Date

21

22

23

24

25