KEKER & VAN NEST LLP
ELLIOT R. PETERS - #158708
SUSAN J. HARRIMAN - #111703
STEVEN P. RAGLAND - #221076
JOHN E. TRINIDAD - #250468
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:      (415) 391-5400
Facsimile:      (415) 397-7188
epeters@kvn.com
sharriman@kvn.com
sragland@kvn.com
jtrinidad@kvn.com

Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
and THOMAS D. KOHLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANDMARK SCREENS, LLC, a Delaware Limited Liability Company,<br><br>                                        Plaintiff,<br><br>        v.<br><br>MORGAN, LEWIS & BOCKIUS LLP, a limited liability partnership; and THOMAS D. KOHLER, an individual,<br><br>                                        Defendants. | Case No. 5:08-cv-2581 JF<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declaration of Steven P. Ragland and accompanying exhibits filed concurrently herewith]**<br><br>Date:       January 14, 2011<br>Time:       9:00 a.m.<br>Judge:      Honorable Jeremy Fogel<br>Place:      Courtroom 3 |

513469.01

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TO PLAINTIFF LANDMARK SCREENS, LLC AND ITS ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE** that, on January 14, 2011, at 9:00 a.m., in Courtroom 3 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, Defendants Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Thomas D. Kohler ("Kohler") (collectively "Defendants") will, and hereby do, move the Court for an Order granting summary judgment to Defendants on Plaintiff Landmark Screens, LLC's Fifth Cause of Action for Actual Fraud in the Second Amended Complaint, which is Landmark's only remaining claim against Defendants in this action.  Alternatively, Defendants will seek an Order granting partial summary judgment on grounds that plaintiff has no damages relating to Claims 32-39 of Divisional Patent Application No. 10/640,916 because those claims were not patentable.

This motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure as there are no genuine issues of material fact that prevent prompt adjudication of Landmark's one remaining claim for actual fraud and/or its request for damages on Claims 32-39.  This motion seeks entry of an Order granting Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment and is based upon the Memorandum of Points and Authorities and the declaration of Steven P. Ragland and accompanying exhibits filed herewith, the pleadings and papers on file, and such other argument and documentary evidence as may be presented at or before the hearing of this motion.

Dated:  November 15, 2010                                  KEKER & VAN NEST LLP


By: _/s/ Susan J. Harriman_____
    SUSAN J. HARRIMAN
    Attorneys for Defendants
    MORGAN, LEWIS & BOCKIUS LLP
    and THOMAS D. KOHLER

i

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

513469.01

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.  STATEMENT OF FACTS .........................................................................................2

    A.  Landmark Screens seeks patent rights for a light-emitting diode (LED) display. ....................................................................................................................2

    B.  Pennie dissolves and Kohler and other Pennie lawyers join Morgan Lewis. ......................................................................................................................2

    C.  The Patent & Trademark Office issues a Notice of Incomplete Nonprovisional Application. ..................................................................................3

    D.  Kohler puts Pennie's professional liability insurer on notice. .................................4

    E.  Kohler files a petition with PTO to obtain original filing date of divisional application. ...................................................................................................5

    F.  Kohler notifies Landmark of the Notice, the Petition and the PTO's Denial. ...................................................................................................................5

    G.  Landmark terminates Morgan Lewis and Kohler and then sues them and Kohler's prior firm Pennie & Edmonds. .........................................................7

III.  LEGAL ARGUMENT ...............................................................................................9

    A.  Landmark's Claim is Time-Barred. .......................................................................9

    B.  Claims 32-39 Were Rendered Statutorily Unpatentable, Thereby Eviscerating Landmark's Damages As To Those Claims. ...................................11

        1.  The On-Sale Bar Under Section 102(b) Would Have Precluded Patentability of Claims 32-39. ..................................................................12

        2.  The Public Use Bar Under Section 102(b) Also Would Have Precluded Patentability of Claims 32-29. ...............................................15

IV.  CONCLUSION ......................................................................................................17

513469.01

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*
299 F.3d 1336 (Fed. Cir. 2002) ...................................................13

*Am. Seating Co. v. USSC Group, Inc.*
514 F.3d 1262 (Fed. Cir. 2008) ...................................................15

*D.L. Auld Co. v. Chroma Graphics Corp.*
714 F.2d 1144 (Fed. Cir. 1983) ...................................................13

*Invitrogen Corp. v. Biocrest Mfg., L.P.*
424 F.3d 1374 (Fed. Cir. 2005) ...................................................16

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*
322 F.3d 1335 (Fed. Cir. 2003) ...................................................12

*Lydon v. Boston Sand & Gravel Co.*
175 F.3d 6 (1st Cir. 1999) .........................................................11

*Minton v. Nat'l Ass'n Sec. Dealers, Inc.*
336 F.3d 1373 (Fed. Cir. 2003) ...................................................12

*Netscape Commc'ns Corp. v. Konrad*
295 F.3d 1315 (Fed. Cir. 2002) ...................................................16

*Pfaff v. Wells Elecs., Inc.*
525 U.S. 55 (1998) ...................................................12, 13, 14, 16

*Plumtree Software, Inc. v. Datamize, LLC*
473 F.3d 1152 (Fed. Cir. 2006) ...................................................13

*Rissetto v. Plumbers and Steam Fitters Local 343*
94 F. 3d 597 (9th Cir. 1996) .......................................1, 10, 11, 14

*Roderick v. Massetti & Assoc., Inc.*
No. C 04-2436, 2006 WL 1883328 (N.D. Cal. July 7, 2006)...............11

*Russell v. Rolfs*
893 F.2d 1033 (9th Cir. 1990) ...............................................10, 14

*Turner v. Lundquist*
377 F.2d 44 (9th Cir. 1967) .........................................................9

## State Cases

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*
162 Cal. App. 4th 858 (2008) ......................................................11

*Miller v. Bechtel Corp.*
33 Cal. 3d 868 (1983) ...............................................................9

*Norgart v. Upjohn Co.*
21 Cal. 4th 383 (1999) ..............................................................9

*OCM Principal Opp. Fund v. CIBC World Markets Corp.*
157 Cal. App. 4th 835 (2007) ......................................................11

*Snow v. A.H. Robins Co., Inc.*
165 Cal. App. 3d 120 (1985) ........................................................9

iii

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

### Federal Statutes

35 U.S.C. § 102(b) ..................................................................................12, 13, 15, 16, 17

### State Statutes

California Code of Civil Procedure § 338(d) ...................................................................9

iv

513469.01

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Thomas D. Kohler ("Kohler") move for summary judgment on the actual fraud claim against them on grounds that the claim is time-barred.  During its earlier arbitration proceedings against Pennie & Edmonds LLP ("Pennie"), Plaintiff Landmark Screens, LLC ("Landmark") repeatedly admitted that it was on notice of its claims by March 29, 2005,[1] more than three years before Landmark filed its initial federal complaint on May 21, 2008.  Now that its prior admissions interfere with its fraud claim, Landmark is attempting to change its story.  Judicial estoppel, however, precludes a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position.  *Rissetto v. Plumbers and Steam Fitters Local 343*, 94 F. 3d 597, 600 (9th Cir. 1996).  Based on its prior admissions, Landmark's actual fraud claim is time-barred, and the Court should enter summary judgment in favor of Morgan Lewis and Kohler.

Alternatively, Morgan Lewis and Kohler move for a partial summary judgment on grounds that Landmark has no damages stemming from the alleged loss of patent claims 32-39 of Divisional Patent Application No. 10/640,916 because those claims were rendered statutorily unpatentable.  Landmark's  prior admissions in the proceedings against Pennie again establish the factual predicate for this motion.  Landmark admitted that the filing of its initial patent applications more than one year after Landmark's electronic billboard went into operation "rendered a number of Landmark's pioneering inventions unpatentable and caused the loss of any patent rights Landmark could have obtained for these inventions."  Ragland Decl., Ex. 1 (Trial Brief, p. 6).  Claims 32-39 are barred by the on-sale bar and the public use doctrine because the invention went on sale and was in public use more than one year prior to the application date for the U.S. patent.

For these reasons, and as more fully discussed below, Morgan Lewis and Kohler respectfully request that the Court grant summary judgment in their favor or, alternatively, that

---

[1] *See, e.g.,* initial Complaint, Docket No. 1, ¶30; Declaration of Steven P. Ragland ("Ragland Decl."), Ex. 1 (Trial Brief, pp. 14 and 15) and Ex. 2 (Landmark's Objections and Response to Pennie's First Set of Interrogatories, No. 1).

1

the Court grant partial summary judgment as to Landmark's damages related to the alleged loss of patent claims 32-39.

## II.  STATEMENT OF FACTS

### A.  Landmark Screens seeks patent rights for a light-emitting diode (LED) display.

The parties' interactions began in November 2000, when Landmark retained Thomas Kohler and the Pennie law firm to pursue patent rights for an alleged invention related to a light-emitting diode (LED) display.[2]  Kohler filed an initial U.S. patent application on Landmark's behalf ("the '096 Application") on January 9, 2002.[3]  The PTO published the '096 Application on July 10, 2003.[4]

The '096 Application contained 72 claims.[5]  During the patent prosecution process, the PTO restricted out claims 1-25 and 32-55 from the '096 Application.[6]  Kohler, on behalf of Landmark, cancelled the restricted claims, and re-filed them on August 13, 2003 as part of a divisional application.[7]  On October 28, 2003, the PTO granted Patent No. 6,639,574 ("the '574 Patent") for the claims in the original '096 Application that had not been restricted out (claims 26-31 and claims 56-72).[8]

### B.  Pennie dissolves and Kohler and other Pennie lawyers join Morgan Lewis.

Pennie ceased practicing law in December 2003, and Kohler joined Morgan Lewis in

---

[2] *See* Second Amended Complaint ("SAC"), Docket No. 31, ¶13.

[3] *Id.,* ¶15.

[4] *Id.,* ¶17.

[5] Docket No. 114-1 ('574 Patent File Wrapper), at 22-32.  Defendants previously submitted the file histories for the patents and patent applications in conjunction with their April 9, 2010 Motion for Partial Summary Judgment.  The file wrappers for U.S. Patent No. 6,639,574 ('574 Patent); Divisional Application No. 10/640,916 ('916 Divisional Application); and U.S. Patent No. RE40953 (Reissue Patent) were exhibits to Docket No. 114 (Declaration of Wendy J. Thurm).  To avoid burdening the Court with additional copies of these voluminous exhibits, Defendants cite the docket numbers for these previously-filed exhibits rather than re-submitting them here.

[6] *Id.* at 138.

[7] SAC, ¶¶16, 18.

[8] *Id.,* ¶20; Docket No. 114-1 ('574 Patent File Wrapper), at 1.

2

1    January 2004 as non-equity partner in the Palo Alto office.[9]   Landmark then asked Kohler to

2    continue prosecuting its existing patent application before the PTO.   On April 13, 2004,

3    Landmark's John Mozart executed a Revocation and Power of Attorney, designating Kohler and

4    Morgan Lewis as attorneys of record for Landmark on the pending divisional application.[10]

5         Several other former Pennie attorneys also joined Morgan Lewis in the Palo Alto office

6    after Pennie dissolved, including Michael Lyons and Gary Williams, who joined as equity

7    partners; David Owens, who joined as a non-equity partner; and Dion Bregman and Shawn

8    Glidden, who joined as associates.[11]   Williams served as a practice group leader for Morgan

9    Lewis's patent law practice in the Palo Alto office.[12]   Lyons continued to serve on Pennie's

10   Policy Board, which oversaw the winding up of the dissolved firm's affairs.[13]

11   **C.    The Patent & Trademark Office issues a Notice of Incomplete Nonprovisional Application.**

12        On June 22, 2004, the PTO issued a Notice of Incomplete Nonprovisional Application,

13   stating that Landmark's divisional application was missing the required specification, and

14   therefore, had not yet been granted a filing date.[14]   Morgan Lewis received the Notice in its Palo

15   Alto office on June 24, 2004.[15]   By that date, Kohler had moved to Morgan Lewis's San

16   Francisco office, along with Glidden and Sue Keyser, Kohler's secretary.[16]

17        Kohler does not recall specifically when he saw the Notice for the first time.  When he

18   was deposed in the Pennie Arbitration, Kohler testified that he likely saw the Notice for the first

19

20   _____

21   [9] SAC, ¶21.

     [10] Docket No. 114-3 ('916 Divisional File Wrapper), at 14-15.

22   [11]  Ragland Decl., Ex. 3 (Williams Depo. (2009) at 9:1-10:12); Ex. 4 (Lyons Depo. (2009) at
23   10:12-11:21); Ex. 5 (Owens Depo. (2009) at 11:20-13:25); Ex. 6 (Bregman Depo. (2009) at
     15:9-17:8); Ex. 7 (Glidden Depo. (2009) at 15:16-23).

24   [12] *Id.*, Ex. 3 (Williams Depo. (2009) at 26:5-27:16); *see also id.* at Ex. 6 (Bregman Depo. at
     54:13-55:9).

25   [13] *Id.*, Ex. 4 (Lyons Depo. (2009) at 34:2-35:17; 71:3-16).

26   [14] Docket No. 114-3 ('916 Divisional File Wrapper), at 17.

27   [15] Ragland Decl., Ex. 8 (Kohler Depo. (2006) at 34:6-36:2; Ex. 9 (Kohler Depo. (2010) at 152:9-
     153:8); Ex. 10 (Exhibit 3 to Kohler Depos. (2006) and (2010)).

28   [16] *Id.*, Ex. 7 (Glidden Depo. at 15:24-16:15); Ex. 9 (Kohler Depo. (2010) at 149:23-24).

3

513469.01

time "in or around" June 24, 2004, the date it was received by Morgan Lewis in Palo Alto.[17] But when he was deposed in this action, Kohler was shown a document that refreshed his recollection that he likely did not see the Notice for the first time until July 8 or 9, 2004.[18]

**D.    Kohler puts Pennie's professional liability insurer on notice.**

Kohler informed Michael Lyons about the Notice so that Lyons could put Pennie's professional liability insurer on notice of a potential claim by Landmark against Pennie.[19] Even while at Morgan Lewis, Lyons continued to serve on Pennie's Policy Board, which was charged with winding-up the affairs of the dissolved firm.[20] Lyons contacted Pennie's outside counsel James Corcoran and Pennie consultant Edward Henry, who then notified Pennie's insurer.[21]

Kohler did not notify anyone on Morgan Lewis's Executive Committee or anyone in Morgan Lewis's General Counsel's Office (then known as the Attorney for the Firm) about the PTO Notice, his plan to ask the PTO to grant the divisional application its original filing date of August 13, 2003 (thus regaining continuity) or the fact that he had provided notice to Pennie's professional liability insurer of a potential claim against Pennie for errors in the divisional application. [22]

Kohler also made the decision to first try to fix the problem with the filing date for the divisional application, and then when the problem was fixed, to tell Landmark.[23] Kohler—and Kohler alone—made the decision not to notify Landmark about the PTO's Notice at that time.[24]

---

[17] Ragland Decl., Ex. 8 (Kohler Depo. (2006) at 35:21-36:8); Ex. 10 (Exhibit 3 to Kohler Depo. (2006)).

[18] *Id.*, Ex. 9 (Kohler Depo (2010) at 149:1-18; 152:9-17).

[19] *Id.*, Ex. 4 (Lyons Depo. (2009) at 73:9-18).

[20] *Id.*, Ex. 4 (Lyons Depo. (2009) at 34:2-35:17; 71:3-16).

[21] *Id.*, Ex. 4 (Lyons Depo. (2009) at 101:4-8).

[22] *Id.*, Ex. 9 (Kohler Depo. (2010) at 185:12-22); Ex. 11 (Bloom Depo. (2010) at 43:10-18); Ex. 12 (Kittredge Depo. (2010) at 31:22-33:7); Ex. 13 (D'Agostino Depo. (2010) at 12:8-22).

[23] *Id.*, Ex. 9 (Kohler Depo. (2010) at 153:9-154:6; 155:3-24).

[24] *Id.*, Ex. 8 (Kohler Depo. (2006) at 66:8-11).

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

513469.01

**E.    Kohler files a petition with PTO to obtain original filing date of divisional application.**

Kohler asked Morgan Lewis associates Shawn Glidden and Dion Bregman to assist him in responding to the PTO's Notice.[25]  On August 23, 2004, Kohler filed with the PTO a "Petition to Grant a Filing Date Pursuant to 37 C.F.R. §'s 1.183 and/or 1.53(e)."[26]  The PTO, however, did not grant Kohler's petition, but dismissed it on November 30, 2004.  In its Order, the PTO confirmed that the divisional application had been granted a filing date of August 23, 2004, the date the Petition was filed, and not August 13, 2003, the date the divisional application was originally submitted to the PTO.[27]  As a result, the divisional application lost "continuity" to the parent application.  On or about December 6, 2004, Kohler received a copy of the PTO's Order Dismissing Petition.[28]

**F.    Kohler notifies Landmark of the Notice, the Petition and the PTO's Denial.**

Shortly after receiving the PTO's Order in early December, 2004, Kohler spoke by telephone with Landmark's Michael Wilson about the problem with the divisional application and the PTO's denial of the Petition to correct the filing date.[29]  As a result of the phone call with Kohler, Wilson learned that there was a problem, some "bad news," and that "the patents were lost."[30]  Wilson was "shocked" and "concerned" and asked Kohler to write a letter to Landmark's principal owner, John Mozart, explaining what happened with the divisional application and whether there was anything more that could be done to save the patent claims described in the divisional application.[31]  As a result of that call, Wilson "knew there had been a

---

[25] Ragland Decl., Ex. 9 (Kohler Depo. (2010) at 147:23-148:12); Ex. 7 (Glidden Depo. at 32:2-8; 33:10-36:22); Ex. 6 (Bregman Depo. at 58:10-62:5).

[26] Docket No. 114-3 ('916 Divisional File Wrapper), at 18-85.

[27] *Id.*, at 88-90.

[28] Ragland Decl., Ex. 9 (Kohler Depo. (2010) at 94:3-25); Ex. 14 (Exhibit 5 to Kohler Depo. (2010)).

[29] SAC ¶49.

[30] Ragland Decl., Ex. 15 (Wilson Depo. (2007) at 82:10-83:6);  Ex. 16 (Wilson Depo. (2010) at 210:11-211:18; 219:9-11).

[31] *Id.*, Ex. 15 (Wilson Depo. (2007) at 82:10-83:6); Ex. 16 (Wilson Depo. (2010) at 213:7-21; 215:3-6).

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

513469.01

mistake."[32]

On March 29, 2005, Kohler faxed a letter to John Mozart at Landmark, as requested by Wilson.  Kohler drafted the letter himself.[33]  The next day, Kohler mailed a hard copy of the letter to Landmark and enclosed a copy of  the Petition he filed with the PTO, which included the PTO's Notice, and the PTO's Order Dismissing Petition.[34]   According to Landmark, Kohler's letter "fully informed" it of the situation with the divisional patent application.[35]

After receiving Kohler's letter, Wilson "went right in to see" John Mozart "and told him what Kohler had said."[36]  On March 31, Wilson sent Kohler's letter via facsimile to Paul Scheibe so they could arrange a meeting with Kohler.[37]  On April 4, Wilson transmitted the PTO paperwork that was enclosed with Kohler's letter to Scheibe.[38]  The meeting with Kohler was not scheduled until early May because Wilson was planning an out-of-town trip.[39]

On May 3, 2005, Kohler met with Wilson, Scheibe, and Christine Ackermann at the Mozart Development Company offices.[40]  While preparing for this meeting, Kohler realized that there likely was no recourse left to correct the problem with the divisional application because Landmark's original patent application had been published on July 10, 2003.[41]  At the May 3 meeting, Kohler explained to Wilson and Scheibe that the publication of the original application

---

[32] Ragland Decl., Ex. 16 (Wilson Depo. (2010) at 220:11-14).

[33] *Id.*, Ex. 8 (Kohler Depo. (2006) at 150:12-153:5).

[34] *Id.*, Ex. 9 (Kohler Depo. (2010) at 153:16-24; 201:6-203:25; 247:23-250:16); Ex. 17 (Exhibit 4 to Kohler Depo. (2010)).

[35] *Id.*, Ex. 1 (Trial Brief, p. 22); Docket No. 1, ¶30.

[36] *Id.*, Ex. 16 (Wilson Depo. (2010) at 215:7-10).

[37] *Id.*, Ex. 18 (Exhibit 56 to Scheibe Depo. (2010)); Ex. 16 (Wilson Depo. (2010) at 234:10-235:1).

[38] *Id.*, Ex. 16 (Wilson Depo. (2010) at 244:8-245:13); Ex. 20 (Exhibit 163B to Wilson Depo. (2010)).

[39] *Id.*, Ex. 16 (Wilson Depo. (2010) at 241:16-19); Ex. 19 (P. Scheibe Depo. (2010) at 234:17-235:14).

[40] *Id.*, Ex. 19 (P. Scheibe Depo. at 237:15-238:13).

[41] *Id.*, Ex. 9 (Kohler Depo. (2010) at 208:18-209:13).

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

would act as a bar to patentability of the divisional claims.[42]  Landmark's own prior use of the inventions disclosed in the divisional application claims was also discussed.[43]

Kohler told Landmark that the claims were lost and he did not believe anything else could be done to revive the divisional application.[44]  Wilson asked Kohler to check one more time.  Kohler agreed to consult with another attorney at Morgan Lewis (Gary Williams) and let Wilson know if something else was possible—even though Kohler was convinced nothing else could be done.[45]  Kohler and Wilson did not speak again until Wilson called Kohler in November 2005 to have Landmark's files transferred to another firm.[46]

Some time after the May 3 meeting, Landmark decided to "talk to another attorney."[47]  Wilson contacted a lawyer named Harold DeGraff, with whom Mozart had a pre-existing attorney-client relationship prior to May 2005.[48]  In late May or early June, DeGraff referred Wilson to three lawyers to consult regarding Landmark's potential litigation.[49]  Ultimately, Landmark retained one of the referrals DeGraff had provided—Edward Kwok of MacPherson Kwok Chen & Heid LLP (now Haynes and Boone, LPP).[50]

**G.     Landmark terminates Morgan Lewis and Kohler and then sues them and Kohler's prior firm Pennie & Edmonds.**

On November 2, 2005, Landmark terminated Morgan Lewis and Kohler, and directed them to transfer Landmark's files to the law firm of MacPherson Kwok Chen & Heid LLP.[51]  That same month, on November 30, 2005, Landmark filed a compliant in Santa Clara

[42] Ragland Decl., Ex. 9 (Kohler Depo. (2010) at 208:18-209:21; 210:7-13).

[43] *Id.*, Ex. 9 (Kohler Depo. (2010) at 210:14-211:9).

[44] *Id.*, Ex. 9 (Kohler Depo. (2010) at 104:2-23; 214:3-215:11).

[45] *Id.*, Ex. 9 (Kohler Depo. (2010) at 104:14-23).

[46] *Id.*, Ex. 9 (Kohler Depo. (2010) at 117:14-23); Ex. 16 (Wilson Depo. (2010) at 277:23-279:18).

[47] *Id.*, Ex. 16 (Wilson Depo. (2010) at 278:5-11).

[48] *Id.*, Ex. 16 (Wilson Depo. (2010) at 280:13-281:21).

[49] *Id.*, Ex. 21 (Memo from Wilson to Mozart at LMK 00034094); Ex. 16 (Wilson Depo. (2010) at 305:15-24).

[50] *Id.*, Ex. 16 (Wilson Depo. (2010) at 305:15-306:5).

[51] *See* SAC, ¶60.

7

513469.01

Superior Court against Kohler, Pennie, and Morgan Lewis, alleging legal malpractice, negligence, and breach of fiduciary duty.[52]

On September 26, 2006, the Superior Court ordered Landmark, Pennie, and Kohler (in his capacity as a Pennie partner) to arbitration.[53]  The Superior Court stayed the case against Morgan Lewis and Kohler (in his capacity as a Morgan Lewis partner) for the duration of the Pennie/Kohler Arbitration.[54]  In the course of the Arbitration, Landmark answered written discovery propounded by Pennie and submitted a trial brief that articulated its claims and positions on legal and factual issues.[55]  In March 2008, Landmark settled its claims against Pennie and Kohler (in his capacity as a Pennie partner).[56]

Following the Pennie/Kohler settlement, Landmark returned to the Superior Court to litigate "any and all claims [against Morgan Lewis and Kohler] arising as a result of the conduct after January 1, 2004."[57]  Morgan Lewis and Kohler then filed a demurrer for lack of subject matter jurisdiction.[58]  The court sustained the demurrer and dismissed the state court case without leave to amend.[59]  The California Court of Appeal for the Sixth District affirmed the trial court's order sustaining Defendants' demurrer, and the California Supreme Court denied review.[60]

Landmark filed this federal lawsuit in this Court on May 21, 2008, alleging legal malpractice and related claims.[61]  Two weeks later, Landmark amended its complaint to add a

---

[52] Ragland Decl., Ex. 22 (Complaint).

[53] SAC, ¶79.

[54] *Id.*, ¶80.

[55] *See, e.g.,* Ragland Decl., Ex. 2 (Landmark's Objections and Responses to Pennie's First Set of Interrogatories); Ex. 1 (Trial Brief).

[56] SAC, ¶81.

[57] *Id.,* ¶82.

[58] *Id.,* ¶83.

[59] *Id.,* ¶85.

[60] *See Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP,* 2010 WL 1176494; Ragland Decl., Ex. 23 (California Supreme Court *en banc* Order denying Petition for Review).  Landmark filed a petition for certiorari with the United States Supreme Court on October 12, 2010.

[61] Docket No. 1.

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

513469.01

claim for fraud and to alter some of its factual allegations.[62]  As a result of Defendants'

successive motions to dismiss, Landmark's only claim remaining in this case is one for actual

fraud.[63]

### III.    LEGAL ARGUMENT

**A.    Landmark's Claim is Time-Barred.**

Landmark's state-law fraud claim is governed by a three-year statute of limitations set

forth in California Code of Civil Procedure § 338(d).  A fraud claim accrues for statute-of-

limitations purposes when the plaintiff discovers or has reason to discover the existence of a

claim—i.e., facts that would put a reasonably prudent person on notice of a claim.  If a Plaintiff

becomes "aware of facts which would make a reasonably prudent person suspicious, she [has] a

duty to investigate further, and she [is] charged with knowledge of matters which would have

been revealed by such an investigation."  *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983);

*see also Turner v. Lundquist*, 377 F.2d 44, 48 (9th Cir. 1967) ("Failure to discover all the details

of a fraud does not prevent the statute from running.").

Section 338(d) codifies the common-law discovery rule for fraud claims.  Thus, the

statute of limitations for fraud is tolled whenever "plaintiff is able to show the defendant

fraudulently concealed facts which would have led him to discover his potential cause of action."

*Snow v. A.H. Robins Co., Inc.*, 165 Cal. App. 3d 120, 127-28 (1985).   But tolling ceases as soon

as the plaintiff suspects that "someone has done something wrong to him, wrong being used, not

in any technical sense, but rather in accordance with its lay understanding. . . .  [Plaintiff] must

indeed seek to learn the facts necessary to bring the cause of action in the first place—he cannot

wait for them to find him and sit on his rights; he must go and find them himself if he can and

file suit if he does." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999) (internal quotation

marks omitted).

Landmark filed its initial federal court complaint on May 21, 2008.  Landmark's fraud

---

[62] Docket No. 5.

[63] *See* Order on Motion to Dismiss, Docket No. 42, at 8-14.

513469.01

claim is time barred because it was on notice of its claim more than three years before May 21, 2008.  In fact, in its initial complaint, Landmark admitted that it was "fully informed" of the alleged harms by March 29, 2005.  Compl. ¶ 30 ("Morgan Lewis and Kohler did not fully inform Landmark of the loss of its valuable patent rights until March 29, 2005").  Landmark made identical representations in its arbitration against Pennie.  In its trial brief in those proceedings Landmark referred to "Respondents' full written disclosure of their error to Landmark on March 29, 2005."  Ragland Decl., Ex. 1 (Trial Brief, p. 14).  And Landmark in that same brief wrote: "Kohler then delayed almost *four more months*, until March 29, 2005, to send a letter fully disclosing the details of his malpractice to Landmark."  *Id.*, Ex. 1 (Trial Brief, p. 15).  Landmark also responded to written interrogatories by stating: "Respondents, with knowledge of their errors, and in concert with Morgan Lewis and Bockius ('MLB'), fraudulently concealed the nature and extent of their malpractice from Landmark from on or about June 24, 2004 until on or about March 29, 2005."  *Id*., Ex. 2 (Landmark's Objections and Responses to Pennie's First Set of Interrogatories, No. 1).  As a result of these representations Landmark ultimately extracted a multi-million dollar settlement from the Pennie law firm.

Having prevailed by way of settlement in that prior proceeding, Landmark is precluded from changing its story now.  "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).  "Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (quoting *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting)).

The courts have established various guidelines for the application of judicial estoppel.  First, federal law governs the application of judicial estoppel in federal court.  *Rissetto*, 94 F.3d at 603.  Second, the doctrine is not limited to prior statements made before a court and is

applicable to statements made in arbitration proceedings.  *See Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999); *Roderick v. Massetti & Assoc., Inc.*, No. C 04-2436, 2006 WL 1883328, at *5 (N.D. Cal. July 7, 2006).  Third, even if the prior proceeding did not end with a judgment granted in favor of the party that made the statement, the doctrine still applies if that party "obtain[s] a favorable settlement."  *Risetto*, 94 F.3d at 600.

This doctrine applies squarely here.  Landmark consistently asserted in its arbitration with Pennie—and in the early days of this case—that it was fully informed of the basis of its claims by March 29, 2005.  After making these assertions, Landmark secured a favorable multi-million dollar settlement.  Now that the fraud claim is all that remains of its present suit, Landmark apparently recognizes that this assertion has become inconvenient and has omitted it from its amended complaints.  Having already prevailed in arbitration, however, Landmark cannot now "seek a second advantage by taking an incompatible position."  *Risetto*, 94 F.3d at 600.  In other words, it cannot now take the position that it was not fully informed until after March 29, 2005.  This factual concession—which goes beyond establishing the necessary "inquiry notice" by stating that Landmark was in fact "fully" informed by March 29, 2005—dictates the conclusion that Landmark's claim for fraud is time barred.  The Court therefore should grant summary judgment in favor of Morgan Lewis and Kohler.

**B.**     **Claims 32-39 Were Rendered Statutorily Unpatentable, Thereby Eviscerating Landmark's Damages As To Those Claims.**

One of the elements of a claim for fraudulent concealment is resulting damages.  *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008).  With respect to damages specifically, the plaintiff must prove "detriment proximately caused by the defendant's tortious conduct.  Deception without resulting loss is not actionable fraud."  *OCM Principal Opp. Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 870 (2007) (internal citations and quotation marks omitted).

In this action, Landmark seeks monetary damages as compensation for patent rights that it claims it would have obtained via the divisional application if Defendants had timely disclosed the PTO's June 2004 Notice.  *See* SAC ¶41-46.  Based on its own admissions, however,

11

513469.01

Landmark could not have patented Claims 32-39 and thus has no right to damages for those allegedly lost patent rights. In its February 2008 trial brief for the Pennie arbitration, Landmark acknowledged that "[t]he filing of Landmark's initial patent application more than one year after Landmark's electronic billboard went into operation along U.S. Highway 101 rendered a number of Landmark's pioneering inventions unpatentable and caused the loss of any patent rights Landmark could have obtained for these inventions." Ragland Decl., Ex. 1 (Trial Brief, p. 6). As demonstrated below, Landmark was correct in acknowledging that its inventions were rendered unpatentable.

1. **The On-Sale Bar Under Section 102(b) Would Have Precluded Patentability of Claims 32-39.**

Under 35 U.S.C. § 102(b), a "person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." The date "more than one year prior to the date of the application" is called "the critical date." Here, the critical date is January 9, 2001. SAC, ¶15.

In *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), the Supreme Court set forth a two-part test to determine if the "on sale" bar is met: (1) whether the invention was the subject of a commercial offer for sale prior to the critical date; and (2) whether the invention was ready for patenting prior to the critical date. *Id.* at 67; *see also Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1347 (Fed. Cir. 2003). The "ready for patenting" condition may be "satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67-68. The applicability of the on-sale bar is a question of law based on underlying findings of fact. *Minton v. Nat'l Ass'n Sec. Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003).

Although section 102(b) refers to "inventions," the on-sale bar analysis is conducted on a claim-by-claim basis. The question for the court is whether the device sold or offered for sale met all of the limitations present in the claim under challenge. *Allen Eng'g Corp. v. Bartell*

12

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

1 | *Indus., Inc.*, 299 F.3d 1336, 1353 (Fed. Cir. 2002).

2 | Claims 32-39 are method claims that describe a method for displaying an image on a

3 | light-emitting diode display.  Method claims can be subject to the on-sale bar if the inventor or

4 | his assignee offers to perform the method—or actually performs the method—for consideration

5 | before the critical date.  *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1162-63 (Fed.

6 | Cir. 2006)(citing *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328-30 (Fed. Cir. 2001));

7 | *see also D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983)

8 | (product produced by patented method and sold before critical date renders method claim

9 | invalid).

10 | Here, Landmark's own admissions prove that Claims 32-39 are barred because the

11 | invention was on sale more than a year before the critical date.  Landmark has admitted that the

12 | billboard began displaying advertisements in December 2000—before the critical date.  Ragland

13 | Decl., Ex. 24 (Emrick Depo. (2010) at 91:19-95:7); Exs. 25 and 26 (Exhibits 12 and 13 to

14 | Emrick Depo.); *see also id.*, Ex. 27 (Plaintiff Landmark Screens, LLC's Objections and

15 | Responses to Defendant Morgan Lewis' Special Interrogatories to Plaintiff, No. 1).  Indeed,

16 | Landmark began marketing its billboard to advertising agencies as far back as February 2000.

17 | *Id.*, Ex. 16 (Wilson Depo. (2010) at 157:18-158:8); Ex. 28 (Exhibit 155 to Wilson Depo (2010)).

18 | Having offered the billboard for advertising—and displayed the ads—for consideration before

19 | January 9, 2001, Landmark's activities satisfy the first prong of the on-sale bar test for Claims

20 | 32-39.

21 | The second prong of *Pfaff* is met because Claims 32-39 were "ready for patenting" by

22 | January 9, 2001—i.e., the claims were reduced to practice or had been described in diagrams

23 | sufficient to permit one skilled in the art to perform the method.  As Landmark itself admitted,

24 | Claims 32-39 "were reduced to practice in or about December 2000 in connection with

25 | Landmark's digital LED billboard located in San Carlos, California."  Ragland Decl., Ex. 29

26 | (Landmark's Objections and Responses to Pennie's Second Set of Interrogatories, No. 3).

27 | Indeed, according to Landmark, "the application was substantially complete in March 2001 to

28 |

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

the point that it could have at least been filed as a 'provisional' patent application.  *Id.*, Ex 1. (Trial Brief, p. 20).  The inventor, Paul Scheibe had described the method orally, in writing, and with diagrams in the documents that he drafted for the billboard vendors in 1999 and 2000.  *See id.*, Ex. 19 (P. Scheibe Depo. (2010) at 58:4-59:15); Ex. 30 (Seher Depo (2010) at 183:10-187:3); Ex. 31 (Exhibit 89 to Ackermann Depo.); *see also* Ex. 32 (Exhibit 47 to P. Scheibe Depo. (2010).  Landmark's actions thus also satisfy the second prong of the *Pfaff* on-sale bar test, making Claims 32-29 unpatentable.

In the face of irrefutable evidence barring Claims 32-39, Landmark tries to create a disputed issue of fact by retracting its prior admissions.  After extracting a multi-million dollar settlement from Pennie based on its prior admissions and accusations, Landmark  attempts an about-face so that it can gain an advantage in this lawsuit.  In discovery responses, Landmark now claims that its electronic billboard did not embody at least the element of 'calibrating a work station display' as required by Claim 32 . . ."  Ragland Decl., Ex. 33 (Landmark's Objections and Responses to Kohler's First Set of Interrogatories, No. 8).  Landmark's shameless efforts to contradict its own interrogatory responses fail both as a matter of law and fact.

As a matter of law, Landmark is estopped from retracting its prior concessions simply because they are harmful to its position in this lawsuit.  As noted above, "[j]udicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."  *Rissetto*, 94 F.3d at 600; s*ee also Russell*, 893 F.2d at 1037.  Landmark admitted during the arbitration process that claims 32-39 were reduced to practice in December of 2000.  Ragland Decl., Ex. 29 (Landmark's Objections and Responses to Pennie's Second Set of Interrogatories, No. 3).  As a result, Landmark obtained a multi-million dollar settlement from Pennie.  Now, having "gain[ed] an advantage by taking one position," Landmark seeks "a second advantage by taking an incompatible position."  *Risetto*, 94 F.3d at 600.  Landmark is precluded from doing so.

As a matter of fact, Landmark's contradictory discovery responses raise a red herring.  In proving that the claims were reduced to practice, it is irrelevant to say that the electronic

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF

513469.01

billboard itself does not embody the element of calibrating a work station – that element necessarily was completed before the digital image was transferred to the electronic billboard.  In late 2000, Silicon View advised its advertisers to fully calibrate their monitors to CIE specifications.  Ragland Decl., Ex. 34 (Ackermann Depo. (2010) at 163:13-167:2); Ex. 31 (Exhibit 89 to Ackermann Depo.).  It bragged that "if the image looks very good on a calibrated monitor within the prescribed specifications, it will be just as good on Silicon View – only much larger."  *Id.*, Ex. 31 (Exhibit 89 to Ackermann Depo.).  In its patent specification, Landmark explains that calibrating a work station "can typically be accomplished through hardware or software that performs a digital transformation to calibrate CRT or other display media."  Docket No. 114-4 ('574 Patent File Wrapper), at 28. In other words, Landmark did not teach anyone how to do that calibration.  Calibrating a work station was something that any advertiser could do because how to calibrate a color display had been known for decades.  *See, e.g., William B. Cowan*, "An inexpensive scheme for calibration of a colour monitor in terms of CIE standard coordinates," ACM SIGGRAPH Computer Graphics, V.17 n. 13, p. 315-321, July 1983; Cowan, W.B., "CIE calibration of video monitors," Tech. Rep. NRC, Pub. 25362, National Research Council of Canada, Ottawa, Ontario, 1986.

For these reasons, the on-sale bar would have prevented Landmark from patenting Claims 32-39.  Therefore, Landmark is not entitled to damages as compensation for patent rights that it could not have obtained.

> **2.   The Public Use Bar Under Section 102(b) Also Would Have Precluded Patentability of Claims 32-29.**

Section 102(b) also prohibits patenting of any invention that was in "public use . . . in this country, more than one year prior to the date of the application for patent in the United States."  "The purpose of the public use bar to patentability is to discourage 'the removal of inventions from the public domain which the public justifiably comes to believe are freely available."  *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008)(quoting *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004)).  Whether a patent is invalid for public use is a question of law based on underlying facts.  *Netscape Commc'ns*

15

*Corp. v. Konrad*, 295 F.3d 1315, 132 (Fed. Cir. 2002).

In *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374 (Fed. Cir. 2005), the Federal Circuit stated:  "A bar under § 102(b) arises where, before the critical date, the invention is in public use and ready for patenting."  *Id.* at 1379.  The ready for patenting test is the same as set forth in *Pfaff*.

On the "public use" prong, however, the court incorporated a "totality of the circumstances" test by stating:

> The proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.  Commercial exploitation is a clear indication of public use, but it likely requires more than, for example, a secret offer for sale.  Thus, the test for the public use prong includes the consideration of evidence relevant to experimentation, as well as, *inter alia*, the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and commercial exploitation.

*Id.* at 1380.

Once again, Landmark's own admissions prove that the public use bar under Section 102(b) applies to Claims 32-39.  As set forth above, Landmark admitted that Claims 32-39 were reduced to practice in or about December 2000, establishing the ready-for-patenting test.  Ragland Decl., Ex. 29 (Landmark's Objections and Responses to Pennie's Second Set of Interrogatories, No. 3).  As for public use, Landmark specifically admitted that the subject matter of Claims 32-39 "was first publicly disclosed in or about December 2000 in connection with Landmark's digital LED billboard located in San Carlos, California."  *Id.*, Ex. 29 (Landmark's Objections and Responses to Pennie's Second Set of Interrogatories, No. 4).  Among the reasons that Landmark accused Pennie of malpractice was for "filing Landmark's original patent application more than one year after Landmark's electronic billboard went into public operation . . ."  *Id.*, Ex. 1 (Trial Brief, p. 19).

These admissions bind Landmark and establish that Claims 32-39 were unpatentable under Section 102(b).  Therefore, the Court should grant partial summary judgment, ruling that Landmark is not entitled to recover damages flowing from the alleged loss of Claims 32-39.

513469.01

### IV.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment as to Landmark's sole remaining claim for actual fraud on grounds that it is time-barred.  Alternatively, the Court should grant partial summary judgment in favor of Morgan Lewis and Kohler, ruling that Landmark has no damages stemming from the alleged loss of Claims 32-39 since those claims were unpatentable.


Dated:  November 15, 2010                                   KEKER & VAN NEST LLP



                                                            By: */s/ Susan J. Harriman*
                                                                SUSAN J. HARRIMAN
                                                                Attorneys for Defendants
                                                                MORGAN, LEWIS & BOCKIUS LLP
                                                                and THOMAS D. KOHLER

NOTICE OF MOTION AND MOTION OF DEFENDANTS MORGAN, LEWIS & BOCKIUS LLP
AND THOMAS D. KOHLER FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:08-cv-2581 JF