1

2

3

4

5

6

7                                              **E-Filed 2/7/2011**

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   LANDMARK SCREENS, LLC,              | Case Number 5:08-cv-02581-JF

13                    Plaintiff,          | ORDER[1] GRANTING DEFENDANTS'
                                          | MOTION FOR SUMMARY
14        v.                              | JUDGMENT

15   MORGAN, LEWIS & BOCKIUS, LLP, and    | [re: document no. 178 ]
     THOMAS D. KOHLER,
16
                     Defendants.
17

18

19        Defendants' motion for summary judgment was heard on January 28, 2011.  The Court

20   has considered the moving and responding papers and the oral argument presented at the hearing.

21   For the reasons discussed below, the motion will be granted.

22                               **I. BACKGROUND**

23        The following facts are undisputed:  in November 2000, Plaintiff Landmark Screens, LLC

24   ("Landmark") retained Defendant Thomas Kohler ("Kohler"), then a partner at the law firm

25   Pennie & Edmonds, LLP ("Pennie"), to secure patent rights covering Landmark's invention of an

26   outdoor light-emitting diode ("LED") electronic billboard.  In January 2002, Kohler filed a patent

27   _____

28        [1]  This disposition is not designated for publication in the official reports.

1  application that was assigned Application No. 10/045,096 ("the '096 application").  The United

2  States Patent and Trademark Office ("PTO") determined that the application covered four

3  distinct inventions, and it required Landmark to elect claims drawn to only one invention.

4  Landmark did so, expecting to pursue the nonelected claims drawn to the other inventions

5  through a divisional application.  In October 2003, Landmark was awarded U.S. Patent No.

6  6,639,574 ("the '574 patent") on the elected claims.

7       On August 13, 2003, Kohler filed a divisional application containing the nonelected

8  claims, which was assigned Application No. 10/640,916 ("the divisional application").  Kohler

9  inadvertently omitted the specification from the divisional application.  In early 2004, Kohler left

10  the Pennie firm and became a partner at Defendant Morgan, Lewis & Bockius, LLP ("Morgan

11  Lewis").  In April 2004, Landmark appointed Morgan Lewis as its counsel in connection with the

12  '574 patent and the divisional application.

13       On June 22, 2004, the PTO issued a "Notice of Incomplete Nonprovisional Application,"

14  stating that the specification was missing from the application, and that a complete specification

15  was required by 35 U.S.C. § 112.  Decl. of Steven P. Ragland, Exh. 10 (Notice).  The notice

16  stated that because the application was incomplete, it had not been accorded a filing date, and

17  that the filing date would be the date of receipt of the specification.  *Id*.  Kohler received the

18  notice, but he did not inform Landmark.  Instead, on August 23, 2004, Kohler – without

19  informing Landmark – filed an adversary petition with the PTO that included the previously

20  omitted specification and requested that the divisional application be granted its original filing

21  date of August 13, 2003.  Ragland Decl., Exh. 17 (Petition).  On November 30, 2004, the PTO

22  dismissed the adversary petition, noting that "[t]he filing date of a nonprovisional application is

23  set forth in 35 U.S.C. 111(a) as the date a specification in compliance with 35 U.S.C. 112 and

24  any drawings required under 35 U.S.C. 113 are received in the Office."  Ragland Decl., Exh. 14

25  (Decision Dismissing Petition).  The PTO concluded that even if it were possible to waive this

26  requirement, such waiver would be appropriate only in "an extraordinary situation" where

27  "justice requires a waiver of the rule."  *Id*.  In examining the circumstances before it, the PTO

28  commented that Landmark's divisional application "could have incorporated the prior

2

1   application by reference or utilized postcard receipt practice." *Id*. Instead, Kohler "used an out

2   of date transmittal letter that did not contain an incorporation by reference statement," and failed

3   to provide a "datestamped itemized postcard receipt." *Id*. The PTO concluded that

4   "[c]ircumstances resulting from applicants' failure to exercise due care, or lack of knowledge of,

5   or failure to properly apply, the patent statutes or rules of practice are not, in any event,

6   extraordinary circumstances where the interests of justice require the granting of extraordinary

7   relief." *Id*. The PTO assigned the divisional application a filing date of August 23, 2004, the

8   date that the specification was submitted. *Id*.

9        It was not until December 2004 that Kohler informed Landmark's Michael Wilson by

10  telephone that there had been a problem with the divisional application and that the divisional

11  claims had been lost. Decl. of Inchan A. Kwon, Exh. A, Wilson Depo. of 5/18/2010, 209:8-

12  210:24. Kohler told Wilson that he and others at the firm were "working on it" and trying to

13  save the claims. *Id*. 211:2-21. Wilson asked Kohler to write a letter explaining what had

14  happened. *Id*. 211:25-212:4. Kohler agreed to write the letter. *Id*. 212:4.

15       On March 29, 2005, Kohler sent the requested letter via facsimile to both Wilson and

16  John Mozart, Landmark's principal owner. Kwon Decl., Exh. J (letter & fax receipts). Kohler

17  also mailed a hard copy of the letter to Wilson along with a copy of the PTO's notice of

18  incompleteness, the adversary petition, and the PTO's order dismissing the petition. Ragland

19  Decl., Exh. 9, Kohler Depo. of 3/18/2010, 247:23-249:14. In the letter, Kohler stated that the

20  divisional application had not been granted its original filing date "because of a clerical error."

21  *Id*. He went on to say that, "[w]hile we do not know for certain, there is the potential that it may

22  not be possible to obtain some or all of the claims in this application. . . ." *Id*. Kohler then

23  disclosed that he had filed a petition "seeking to have the Patent Office revisit the question and

24  grant the original filing date of August 13, 2003," and included with the petition "all of the

25  papers necessary to complete the application." *Id*. Kohler advised Landmark that the petition

26  had been denied, and that the divisional application had been assigned a filing date of August 23,

27  2004. *Id*. He admitted that the August 23, 2004 filing date created a problem, but he stated that

28  it still might be possible to obtain some of the claims. *Id*.

1    On May 3, 2005, Kohler met with Wilson and others to discuss the situation. Kwon

2    Decl., Exh. A, Wilson Depo. of 5/18/2010, 271:5- 273:22.  At that meeting, Kohler stated that

3    Morgan Lewis was still working on getting the lost divisional claims back, and that he would get

4    back to Wilson.  *Id*. 272:9-14, 277:25.  Kohler never called Wilson back.  *Id*. 278:1-279:5.

5    In November 2005, Wilson called Kohler and asked him to transfer Landmark's files to

6    its new patent counsel, MacPherson Kwok Chen & Heid LLP ("MacPherson").  On November

7    30, 2005, Landmark filed suit against Pennie, Morgan Lewis, and Kohler in the Santa Clara

8    Superior Court, alleging claims for legal malpractice, negligence, and breach of fiduciary duty.[2]

9    On September 26, 2006, the superior court ordered Landmark, Pennie, and Kohler (in his

10   capacity as a Pennie partner) to arbitration and stayed the case against Morgan Lewis and Kohler

11   (in his capacity as a Morgan Lewis partner).  In March 2008, Landmark reached settlement with

12   Pennie and Kohler (in his capacity as a Pennie partner).  The superior court then dismissed the

13   remaining claims against Morgan Lewis and Kohler (in his capacity as a Morgan Lewis partner)

14   for lack of subject matter jurisdiction.

15   Landmark filed the instant action in this Court on May 21, 2008, alleging legal

16   malpractice and related claims.  Two weeks later, Landmark amended its complaint to add a

17   claim for fraud.  As a result of the Court's rulings on several motions brought by Defendants,

18   Landmark's only remaining claim is for actual fraud.  In its operative second amended complaint

19   ("SAC"), Landmark alleges that Kohler and Morgan Lewis "concealed from Landmark the June

20   22, 2004 notice from the PTO, the malpractice committed in connection with the filing of the

21   '916 divisional application, and Defendants' improper course of action to attempt to correct the

22   malpractice."  SAC ¶ 111.  Landmark alleges that it was damaged by Defendants' fraud as

23   follows:

24       120.  Defendants' failure to timely and fully notify Landmark of the incomplete
         nature of the '916 divisional application caused damages to Landmark.  **Had**
25       **Defendants fully and timely notified Landmark of the incomplete nature of**
         **the '916 divisional application and the June 22, 2004 notice from the PTO,**
26

27   ───────────────
          [2] Significantly, Landmark did not allege a claim for actual fraud in its state-court
28   complaint.

4

**Landmark would have instructed Defendants or other counsel to take the steps outlined in detail in paragraphs 35 to 42 above** which would have resulted in the '916 divisional application or the new patent application being granted a filing date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

121.  Had they not been lost, Landmark's patent rights would have covered at least the following inventions claimed or disclosed in the '916 divisional application:  (a) methods for displaying an image on a four-color LED display; (b) methods for displaying an image on an LED display, including calibrating a workstation display and transferring an image to an LED display over a computer network; (c) a fault-tolerant method for displaying images on an LED display; and (d) a four-color LED display system.

SAC ¶¶ 120-21 (emphasis added).  The "steps outlined in detail in paragraphs 35 to 42" that

Landmark would have taken if it had been informed of the June 22, 2004 notice from the PTO

are set forth as follows:

35.  Had Defendants fully and timely notified Landmark of the incomplete nature of the '916 divisional application and the June 22, 2004 notice from the PTO, a number of steps were available to save Landmark's patent rights as claimed or disclosed in the '916 divisional application.

36.  First, the missing portions of the '916 divisional application could have been submitted to the PTO prior to July 10, 2004.[3]

37.  Second, a new patent application covering the patent rights as claimed or disclosed in the '916 divisional application could have been submitted to the PTO prior to July 10, 2004.

38.  Third, prior to July 10, 2004 an effective petition in response to the June 22, 2004 notice could have been submitted to the PTO. Such a petition would have included the missing portions of the '916 divisional application.

39.  Fourth, on or after July 10, 2004 and on or before August 23, 2004, an effective petition in response to the June 22, 2004 notice could have been submitted to the PTO.

40.  Any of these steps, individually or collectively, would have resulted in the '916 divisional application or the new patent application being granted a filing

---

[3] Pursuant to 35 U.S.C. § 102, a person is entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102 (b).  Landmark's entire original '096 application, which contained all the claims of the divisional application, was published by the PTO on July 10, 2003.  *See* Decl. of Inchan A. Kwon, Exh. T (Patent Application Publication).  Thus if the divisional application had been complete prior to July 10, 2004, the claims potentially would have been patentable.

Case No. 5:08-cv-02581-JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC2)

date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

41.  Had Defendants fully and timely notified Landmark of the incomplete nature of the '916 divisional application and the June 22, 2004 notice from the PTO, Landmark would have immediately consulted other counsel who would have advised Landmark of the steps that must be taken to save Landmark's patent rights as claimed or disclosed in the '916 divisional application.

42.  As a result of such consultation with other counsel, Landmark would have instructed Defendants or other counsel to (a) submit the missing portions of the '916 divisional application to the PTO prior to July 10, 2004, (b) file a new patent application covering the patent rights as claimed or disclosed in the '916 divisional application prior to July 10, 2004, and (c) file prior to July 10, 2004 an effective petition (which included the missing portions of the '916 divisional application) in response to the June 22, 2004 notice or (d) file on or after July 10, 2004 and on or before August 23, 2004, an effective petition in response to the June 22, 2004 notice. Whether taken by Defendants or other counsel, such steps, individually or collectively, would have resulted in the '916 divisional application or the new patent application being granted a filing date sufficient to preserve Landmark's patent rights as claimed or disclosed in the '916 divisional application.

SAC ¶¶ 35-42.  Landmark seeks to recover, *inter alia*, damages flowing from its loss of the claims of the divisional application.  Defendants assert that Landmark's fraud claim is time-barred and, alternatively, that Landmark has not sustained damages relating to the loss of claims 32-39 of the divisional application.

## II. LEGAL STANDARD

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117 (9th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).  When determining whether an issue of material fact remains for trial, the court "must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986)).

## III. DISCUSSION

Landmark's fraud claim is governed by the three-year limitations period set forth in California Code of Civil Procedure § 338(d).  A fraud claim "is not deemed to have accrued until

6

1  the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. P.

2  Code § 338(d).  The limitations period for fraud thus incorporates the "delayed discovery rule."

3  *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920 (2009) (citing *Royal Thrift*

4  *& Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 28 (2004).  "[U\nder the delayed

5  discovery rule, a cause of action accrues and the statute of limitations begins to run when the

6  plaintiff has reason to suspect an injury and some wrongful cause." *Fox v. Ethicon Endo-*

7  *Surgery, Inc.,* 35 Cal. 4th 797, 803 (2005).  In other words, "the limitations period begins once

8  the plaintiff has notice or information of circumstances to put a reasonable person on inquiry."

9  *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110-11 (1988) (internal quotation marks and citations

10  omitted).

11       A plaintiff has reason to discover a claim when he "has reason at least to suspect a factual

12  basis for its elements," that is, the "generic elements of wrongdoing, causation, and harm." *Fox,*

13  35 Cal. 4th at 807 (internal quotation marks and citations omitted).  "Subjective suspicion is not

14  required[;] [i]fa person becomes aware of facts which would make a reasonably prudent person

15  suspicious, he or she has a duty to investigate further and is charged with knowledge of matters

16  which would have been revealed by such an investigation." *McCoy v. Gustafson,* 180 Cal. App.

17  4th 56, 108 (2009).  In cases involving a fiduciary relationship, "facts which would ordinarily

18  require investigation may not excite suspicion, and [ ] the same degree of diligence is not

19  required." *Alfaro v. Comty. Housing Improvement System & Planning Assn., Inc.,* 171 Cal. App.

20  4th 1356, 1394 (2009) (internal quotation marks and citation omitted).  Moreover, a "defendant's

21  fraud in concealing a cause of action against him will toll the statute of limitations, and that

22  tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable."

23  *Grisham v. Philip Morris U.S.A., Inc.,* 40 Cal. 4th 623, 637 (2007).  "Whether reliance was

24  reasonable is a question of fact for the jury, and may be decided as a matter of law only if the

25  facts permit reasonable minds to come to just one conclusion." *Id*.  (internal quotation marks and

26  citation omitted).  "While resolution of the statute of limitations issue is normally a question of

27  fact, where the uncontradicted facts established through discovery are susceptible of only one

28  legitimate inference, summary judgment is proper." *Romano v. Rockwell Internat.,* 14 Cal. 4th

7

1   479, 487 (1996) (quoting *Jolly*, 44 Cal.3d at 1112).

2      It is undisputed that Kohler initially concealed the PTO's June 2004 notice from

3   Landmark, and that he also concealed his filing of an adversary petition on Landmark's behalf in

4   August 2004.  As described at length in the SAC, Landmark's theory is that had Kohler kept it

5   informed of these developments, it have taken steps to preserve the earlier filing date for its

6   divisional application or otherwise protected its rights.  The question is when Landmark knew

7   enough information to be on actual or inquiry notice of Kohler's wrongdoing.  Because

8   Landmark did not file the instant action until May 21, 2008, its fraud claim is time-barred if it

9   accrued before May 21, 2005.

10     The Court concludes that based upon this record, any reasonable trier of fact would be

11  compelled to conclude that Landmark had actual or inquiry notice of the facts giving rise to its

12  fraud claim prior to May 21, 2005.  In late March 2005, Kohler sent Wilson a letter stating that

13  there had been an error in the divisional application; that Kohler tried to correct the error by

14  filing a petition with the PTO; that the petition had been denied; and that all of the divisional

15  claims potentially were lost.  The letter was accompanied by the notice of incompleteness issued

16  by the PTO, Kohler's petition, and the PTO's order dismissing the petition.  At that point

17  Landmark had in its possession all of the facts giving rise to its fraud claim.

18     Landmark argues that the fraud continued beyond the March-April time frame, because

19  Kohler consistently represented that he and Morgan Lewis were working to save the lost

20  divisional claims.  Landmark also points to the fact that Kohler's letter of March 29, 2005

21  misleadingly stated that the rejection of the initial divisional application was the result of a

22  "clerical error" when in fact the omission of the specification was a substantive error, and that the

23  letter represented that there was "the potential" that all of the divisional claims had been lost

24  when in fact it was a certainty that they had been lost.  Finally, Landmark claims that during the

25  meeting on May 3, 2005 Kohler continued to represent that the firm was working on saving the

26  lost claims.  Landmark contends that these misrepresentations were intended to and did conceal

27  the fraud.

28     However, regardless of how he characterized the error, by April 2005 at the latest

8

1   Landmark knew that Kohler had been given notice of an error in the divisional application in

2   *June 2004* and had concealed that fact from Landmark for approximately *six months*.  Landmark

3   also knew that Kohler had filed an unsuccessful petition with the PTO without informing

4   Landmark or obtaining its consent.  These facts alone were sufficient to put Landmark at least on

5   inquiry notice.  Moreover, the PTO documents included with Kohler's letter of March 29, 2005

6   made the significance of Kohler's errors abundantly clear.  As noted above, the PTO denied the

7   relief requested by the petition in part based upon its conclusion that "[c]ircumstances resulting

8   from applicants' failure to exercise due care, or lack of knowledge of, or failure to properly

9   apply, the patent statutes or rules of practice are not, in any event, extraordinary circumstances

10  where the interests of justice require the granting of extraordinary relief."  Ragland Decl., Exh.

11  14 (Decision Dismissing Petition).

12          Landmark takes the position that Kohler promised to get back to Wilson after the May 3,

13  2005 meeting, and that given the fiduciary relationship between lawyer and client, Landmark

14  reasonably waited for Kohler's call (a call that *never* came).  Landmark's choice to let

15  Defendants attempt to rectify the damage caused by their fraud did not toll the statute of

16  limitations, which began running when Landmark had knowledge of the facts giving rise to its

17  fraud claim.  The fact that Defendants may have been able to mitigate the damage to Landmark

18  by saving some or all of the claims is legally irrelevant.

19                                          **IV. ORDER**

20          Defendants' motion for summary judgment is GRANTED.[4]

21

22

23  DATED:  February 7, 2011

24                                                  _____
                                                    JEREMY FOGEL
                                                    United States District Judge

25

26

27  _____

28  [4] In light of the foregoing disposition, the Court need not reach Landmark's additional
    arguments based upon judicial estoppel, the on-sale bar, and the public use bar.